# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

PAUL G. SHEARER,             )
                                )
       Plaintiff,           )
                                )
                                )
       vs.                    )
                                ) Case No. A18-_____ CV
RYAN ZINKE, UNITED STATES    )
DEPARTMENT OF INTERIOR, BUREAU    )
OF LAND MANAGEMENT, NATIONAL    )
PARK SERVICE.              )
                                )
       Defendants.         )
_____)

## COMPLAINT

Paul Shearer, by and through the undersigned counsel, alleges and pleads as follows:

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331.

2.      This court has personal jurisdiction over the individual defendants by virtue of 28 U.S.C. § 1391(e) because the individual defendants reside in this district and because the individual defendants are officers and employees of an agency of the United States and are being named in their official capacity.

3.      This court has jurisdiction over defendants the Department of the Interior, the Bureau of Land Management, and the National Park Service pursuant to 5 U.S.C. §

{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

702.

4. The relief requested is specifically authorized pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 701-706.

5. This matter is timely pursuant to 28 U.S.C. § 2401 because the first decision being appealed is dated February 9, 2012.

6. Jurisdiction and authorized relief also exists under 28 U.S.C. § 1346(f) and 28 U.S.C. § 2409a.

7. Pursuant to 28 U.S.C. § 1391(e) venue is proper in this court because the lands subject to this dispute are located in this district, and the events giving rise to this dispute occurred in this district.

8. An actual controversy presently exists between the parties concerning the validity of various regulations. That controversy is justiciable in character, and speedy relief is needed to preserve plaintiff's rights.

9. A declaratory judgment will terminate the uncertainty and controversy between the parties.

## PARTIES

10. Plaintiff Paul G. Shearer is a resident of the State of Oregon and maintains a residence and property in the State of Alaska.

11. Defendant Department of the Interior ("DOI") is an agency for the United States charged with overseeing public lands, including issuing the decisions appealed in this action.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

12.     Defendant Bureau of Land Management ("BLM") is an agency of the Department of the Interior.

13.     Defendant National Park Service ("NPS") is an agency of the Department of Interior.

14.     Defendant Ryan Zinke is Secretary of the Department of the Interior for the United States, and is named as a defendant in that official capacity.

## NATURE OF THE LAWSUIT

15.     Plaintiff holds all right, title, interest, and right to patent in or to certain interests in mining claims lode mining claims known as BANJO (BLM Serial No. F-54240) ("Banjo Claim"), and PASS (BLM Serial No. F-54241) ("Pass Claim") (collectively "Banjo & Pass Claims" or "Claims"), both Claims being included in U.S.M.S. 2510, and included in patent application AA-71472 described below.  Shearer acquired Banjo and Pass from previous owner and patent applicant, Michael R. Mark-Anthony.

16.     The Banjo and Pass Claims are located in the Kantishna Mining District within Denali National Park and Preserve, Alaska, and were issued under the authority of the 1872 Mining Law, 30 U.S.C. § 21 *et. seq*.  Plaintiff properly acquired his interest in the Banjo and Pass Claims from the prior owners through a series of transactions described herein.  Plaintiff's ownership of the Banjo and Pass Claims includes all necessary rights, title, and interest to bring this action and seek the relief requested.

17.     The prior owner of the Banjo and Pass Claims filed to patent both Claims

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

in 1989 with patent application AA-71472. DOI then: (1) investigated and confirmed all Federal Land Policy Management Act instruments were timely filed from 1979 through 1993; (2) confirmed the patent application was complete and met BLM requirements, and confirmed the applicant's title; and (3) approved the "First Half Final Certificate" ("FHFC") as of January 5, 1995, showing a Date of Entry of April 20, 1993. The mineral reports showing a valid mineral discovery were completed and accepted as of August 17, 1995. By 1996, DOI had completed all approvals to recommend that the Claims proceed to patent. However, DOI refused to issue the patent. Instead, DOI has waged a prolonged war to delay issuing the patent for 17 years and then invalidate the Banjo and Pass Claims.

18.     DOI has attempted at least six times to raise or re-litigate issues of validity that had already been adjudicated in favor of patent validity and title by BLM, DOI's Office of Hearings and Appeals ("OHA"), the Interior Board of Land Appeals ("IBLA"), and Alaska state courts. Rather than helping the patent applicant achieve a successful patent, NPS and BLM, and now the DOI Secretary, have repeatedly delayed processing and instead fought tooth and nail to invalidate the Claims. This included an OHA Contest DOI initiated in 2003 (the "2003 Contest"), contesting the validity of the Banjo and Pass Claims. The 2003 Contest was completely unnecessary because BLM already had a complete and approved mineral report 8 years earlier in 1995. The 2003 Contest concluded in 2011 and was adjudicated in favor of Shearer that Banjo and Pass constituted a valid mineral discovery – 16 years after DOI first reached the same

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

conclusion when issuing the first approved mineral reports.

19.     DOI, however, still refused to issue the patent. Instead, on February 9, 2012, without notice to Shearer and without any proceedings whatsoever, then DOI Secretary Salazar issued a decision rescinding the 1995 FHFC on the incorrect assumption that a 2005 Order granting partial summary judgment from an Alaska Superior Court in Fairbanks (the "2005 Fairbanks Court Order") could be used to argue that the correct interest owner did not make required claim filings in 1979 under the Federal Land Policy and Management Act of 1976 ("FLPMA"). On April 5, 2012, again without notice to Shearer or any proceedings whatsoever, DOI issued a final agency decision purporting to reject the patent application for the Banjo and Pass Claims and declaring them abandoned and void. The February 9, 2012 and April 5, 2012 decisions are collectively referred to as the "2012 DOI Decisions".

20.     Shearer appeals the 2012 DOI Decisions because: (1) DOI misinterpreted the applicable statutes and regulations, including FLPMA; (2) DOI failed to consider other evidence on record regarding the 2005 Fairbanks Court Order that establishes the correct chain of title, which in turn establishes that the correct party made the FLPMA filings in 1979 and later; (3) DOI failed to consider the complete context of all the settlement documents in its possession that controlled the scope of the 2005 Fairbanks Court Order; (4) DOI did not have authority to issue them; (5) DOI waived the right to raise the issues by not raising them in a previous 2008 Settlement between Shearer and DOI; and (6) DOI violated Shearer's due process rights and its own regulations by

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

failing to provide notice and an opportunity to be heard, and by failing to engage in any process to establish the issues of fact or analysis whatsoever, before issuing the 2012 DOI Decisions.

## FACTS GIVING RISE TO THIS LAWSUIT

### I.   HISTORY OF THE BANJO AND PASS CLAIMS

#### A.   Discovery

21.    The Banjo and Pass mining claims were located in the Kantishna Hills on July 27, 1928, and June 17, 1929, respectively, by Joseph Quigley.   The Banjo lode claim consists of 20.026 acres, and the Pass lode claim is 20.102 acres.   The Claims are rectangular, oriented lengthwise in a generally northeast-southwest direction.   The Claims are contiguous end-to-end; the northeast boundary line of the Banjo claim is the southwest boundary line of the Pass claim.

22.    In 1931, Quigley began tunneling into the Banjo lode claim and discovered a quartz-sulfide vein containing gold ore.   During tunneling, Quigley suffered major injuries from a cave-in which ended his career as an underground miner.    In 1937, Quigley and his wife, optioned the Banjo and Pass Claims to E. Fransen and C.M. Hawkins (the "1937 Option Contract").    Hawkins was one of a group who had formed the Red Top Mining Company ("Red Top") in 1935.    Fransen and Hawkins assigned their option to Red Top.

23.    Exploration on the Banjo Vein began in 1936.    By 1939, a mill and other buildings had been constructed on the Banjo lode claim.    An aerial tram was later

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

constructed to carry ore from the mine site to the Banjo Mill. An underground mine, known as the Banjo Mine, began full-scale production in May 1939. During 1939 through 1941, it produced a total of 6,259.9 troy ounces of gold, as well as 7,113.8 ounces of silver, from 13,653 tons of extracted ore—which made it the largest lode gold producer in the Kantishna Mining District. In February 1942, the Red Top president reported to the shareholders that a new working level had been developed 100 feet below the upper workings on the Banjo Vein in March 1941, and that the aerial tram had been moved down to that level the prior August. Mineral reports show the claims still have valid minerals with an excess of 6,200 tons of minable reserves.

24. In 1942, Federal Order L-208 shut down all gold mines throughout the country on the basis that gold extraction was nonessential to the war effort. As a result, Red Top ceased its operations, but maintained an active presence and employed a caretaker at the Banjo Mine. In 1969 Red Top leased mining claims to Kantishna Mines, Ltd. ("KML"). In 1972 Red Top and KML resumed operation with a second mill on another mining claim. In 1978 Red Top sold some claims to KML, but retained certain interests. Red Top held some interests as of 2001 that it conveyed to the United States. Red Top conveyed all of its remaining interests to Shearer in 2005. For a variety of reasons, the Banjo Mine never reopened after World War II.

25. Under PLO No. 5179, land encompassing the Banjo and Pass Claims was

withdrawn from mineral entry "subject to valid existing rights" on March 9, 1972.[1]  On December 2, 1980, the land upon which the Banjo and Pass Claims are situated became part of Denali National Park and Preserve by enactment of section 202(3) of the Alaska National Interest Lands Conservation Act.[2]

### B.  FLPMA Filings

26.  In 1976, Congress enacted FLPMA.  Section 314 of FLPMA required the owners of preexisting mining claims, such as the Banjo and Pass Claims, to record their claims or sites with DOI within three years of FLPMA's enactment by October 22, 1979.[3]  Section 314 also requires the owners of all mining clams to file an affidavit of annual assessment work with BLM by December 31 of each year.  Failure to timely file these required FLPMA instruments constitutes abandonment of the mining claim. However, timely filings with defects can be cured and do not lead to abandonment.

27.  From September 1, 1977 to December 30, 1988, Red Top as the prior owner of the Banjo and Pass Claims, satisfied all requirements of FLPMA and its implementing regulations,[4] including timely filing the initial certificates of location and affidavits of annual assessment work.[5]  The Banjo and Pass Claims certificates of location were recorded with BLM on July 3, 1979 by "Leo Mark Anthony for Red Top

---

[1] 37 Fed. Reg. at 5582.

[2] Pub. L. No. 96-487; 94 Stat. 2371, 2382-83; 16 U.S.C. § 410hh-1 (2006).

[3] 43 U.S.C. § 1744.

[4] 43 U.S.C. § 1744; 43 C.F.R. § 3800, *et seq*. (1979).

[5] Ex. 1; Ex. 2 at 42-71.

ASHBURN & MASON INC.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

Mining Company," thus meeting the deadline of October 21, 1979.[6] The letter accompanying the recordation explained that "title to all these claims passed from Joseph Quigley and Fannie Quigley to E. Fransen and C.M. Hawkins by an option-contract agreement" and that "title passed from E. Fransen and C.M. Hawkins to Red Top Mining Company." At the time, therefore, Red Top held an interest of record in the Banjo and Pass Claims, Leo Mark Anthony had authority to make the FLMPA filings on Red Top's behalf, and under Section 314(c) of FLPMA,[7] all owners of interests in the Banjo and Pass Claims could rely upon these FLPMA filings as sufficient for purposes of complying with Section 314 of FLPMA.

## C.  Patent Application

28.     Beginning in 1983, Michael R. Mark Anthony ("Anthony") acquired a significant percentage of the shares of Red Top. Anthony acquired the necessary right, title, and interest to the Banjo and Pass Claim, and on July 19, 1989, Anthony filed a patent application (AA-71472) for the Banjo and Pass Claims with DOI pursuant to 30 U.S.C. § 29. At this time, Anthony held all necessary right, title, and interest in the Banjo and Pass Claims, and in the application, Anthony stated that he "presently hold[s] a controlling interest in Red Top Mining Company."

29.     This patent application triggered a formal DOI investigation of the Banjo and Pass Claims that resulted in a formal determination that the claims were valid.

---

[6] Ex. 1.

[7] 43 U.S.C. § 1744(c).

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

Specifically, DOI completed a mineral examination and issued a favorable report on February 4, 1994, concluding that "[t]he subject claims are considered valid and qualify for issuance of mineral patents." The report, approved on February 28, 1994 and acknowledged by NPS in March 1994, was supplemented by an additional report in August 1995. Together these reports concluded a discovery of a valuable mineral deposit has been made upon each of the two lode mining claims, they are in conformance with the applicable statue and case law, and qualify for a mineral patent.

30. Anthony supplemented the patent application with an abstract of title in 1993 ("Abstract").[8] The Abstract was accompanied by a state court order granting summary judgment that vested 100% title of Banjo and Pass in Anthony.[9] This Abstract listed the 3 Locations, 73 Affidavits of Annual Labor from 1942 to 1993 (final date of the Abstract), 7 deeds and option, the Claimant's Lien,[10] and the 1991 court order. The Abstract included the following:

### ABSTRACTOR'S CERTIFICATE

The undersigned certifies that he has examined the indices maintained in the office of the Fairbanks District Recorder, Fourth Judicial District, State of Alaska, and the records of the United States District Court for the District of Alaska in Fairbanks, for matters affecting the title to the premises described in the CAPTION hereto, and further certifies that the foregoing Abstract is a full, true and complete abstract of records title of said premises.

A search for unsatisfied judgment liens, tax liens filed either by the Internal Revenue Service of the U.S. Treasury Department or by the

---

[8] Ex. 2.

[9] Ex. 3.

[10] Ex. 4.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

Revenue Department of the State of Alaska against the following named persons: **Joseph B. Quigley, Fannie Quigley, E. Fransen, C.M. Hawkins, Red Top Mining Company** . . . [21 additional names] . . ., has been made, and find no unsatisfied judgments or tax liens indexed against said names.[11]

31.     This Abstract referenced the search of the names of the Optionors to the original 1937 Option Contract[12] to Red Top for the Banjo and Pass and included additional copies of the deeds listed in the typed report.  The Abstract also disclosed that: "All Kantishna Records for the period between 1936 through 1940 are missing.  The Fairbanks recording office is aware of the missing records."

32.     In addition to the Abstract, Anthony provided DOI a court order and judgment from a 1991 state court partition and quiet title action, Alaska Superior Court in Fairbanks, Case No. 4FA-91-2148 (the "1991 Quiet Title Action"), confirming Anthony's title in Banjo and Pass and his stock ownership in Red Top.  Anthony's patent application was complete and met all legal requirements.  Anthony therefore obtained his 100% title of Banjo and Pass by filing a Claimants Lien for Performance of Annual Assessments and the 1991 Quiet Title Action, in full compliance with AS 09.45.260-450 and 43 CFR § 3837.30.

33.     BLM approved the Abstract.  BLM never requested any additional deeds or additional title information from Anthony prior to approval.  The court order vesting title was sufficient proof of title per BLM regulations.  If BLM had requested the

_____

[11] Ex. 2 at 88 (emphasis added).

[12] *See infra* ¶¶ 58-59 discussing Exhibit 5.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

original deed transferring title from the Quigleys to their successor Red Top, Anthony could have produced a copy as it is in the court record. If BLM had asked for proof of stock ownership he could have produced it as he did in the court record of the 1993 Quiet Title Action discussed below, which resulted in a court-approved settlement that verified "Mark Anthony's share ownership in RTMC prior to the October 15, 1989 is hereby REGOGNIZED AND CONFIRMED to have been properly obtained by Mark Anthony from the previous RTMC shareholders."[13] However it would have been inappropriate for BLM to become involved reviewing that evidence because BLM regulations specifically state that resolving disputes about acquiring a delinquent co-claimant's interest must be resolved in the court without BLM involvement.[14] Later in 1997 a letter from Tom Allen, BLM State Director, to Senator Ted Stevens, Allen confirmed that a court action resolved matters of title, allowing the final proofs and the purchase price to be submitted to BLM on April 20, 1993. At that date BLM had approved the court action that had vested title of Banjo and Pass in Anthony.

34. Based on the approved abstract of title and completed patent application, BLM issued the FHFC establishing the Date of Entry on April 20, 1993, later approved and signed by then Secretary of the Interior Bruce Babbitt on January 5, 1995. The FHFC constitutes a formal determination by the highest level of DOI establishing that the Banjo and Pass Claims could proceed to patent under all applicable law, including

---

[13] *See infra* ¶ 71 discussing Exhibit 6.

[14] 43 CFR § 3837.30.

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501

TEL 907.276.4331  •  FAX 907.277.8235

the requirement that the patent applicant had good title and a complete patent application. The issuance of a FHFC vests the applicant with "equitable title and the presumption of a right to patents" as of April 20, 1993 which is "subject to verification of a valid discovery."[15] As noted above, the approved mineral reports verified a valid mineral discovery as of 1995. As noted below, an administrative proceeding within DOI also concluded in Shearer's favor and verified that the Banjo and Pass Claims were valid mining discoveries.[16]

35.     The Banjo and Pass Claims are on the List of Mineral Patent Applications Grandfathered Under Section 113 of the Interior and Related Agencies Appropriations Act of 1994, published October 18, 1994 and provided by the BLM Headquarters Office in Washington D.C. This listing and grandfather status is a guarantee by the United States Congress that the patent for the Banjo and Pass Claims will continue to be processed by BLM.[17]

36.     BLM also issued a series of memoranda validating the Banjo and Pass Claims. On August 25, 1995 the director of the BLM Alaska State Office certified that the patent applicant for the Banjo and Pass Claims and BLM "have fully complied with the mining law - - - and implementing Departmental regulations . . . in reaching the point of issuing a mineral patent." On May 22, 1996 BLM again reported that the

---

[15] *United States v. Michael R. Mark Anthony*, 177 IBLA 110, 115 (April 15, 2009).

[16] *United States v. Michael R. Mark Anthony*, 180 IBLA 308 (2011).

[17] Ex. 7.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

Banjo and Pass applicant had qualified for issuance of a patent. BLM also reported in a memo dated May 23, 1996 that a review of the patent application had confirmed yet again that "all established policies and procedures have been complied with and there are no issues needing Bureau or Department regulations."

37. As of January 5, 1995, BLM had approved all of the completed patent application documents needed to approve the patent, showing full compliance with 30 U.S.C. § 29, 43 CFR § 3837.30, and AS 09.45.260-450.

38. On the basis of the FHFC and the favorable mineral reports, BLM approved issuance of the completed Second Half Final Certificate, and recommended that the claims proceed to patent. On May 29, 1996, the acting BLM Director concurred with issuing a mineral patent.[18] At this point, only ministerial actions remained to be taken to obtain the patents, and the applicant acquired a vested right to a patent.[19]

### D. Section 120 Taking of Kantishna Mining Claims

39. On November 14, 1997, while final review of the patent application was pending, Congress passed an Appropriations Act for the Department of the Interior that included "Section 120," a provision taking all mining claims in the Kantishna Mining District in Denali National Park and establishing a procedure to pay just compensation

---

[18] Patent should issue effective as of May 29, 1996, or earlier pursuant to 43 CFR § 3862.7–1.

[19] See, e.g. Payne v. State of New Mexico, 255 U.S. 367, 371 (1921); Mount Nickel Mines, Inc., 165 IBLA 305, 311 (2005).

to the claim owners.[20]  Specifically, Section 120 allows owners of "patented mining claims and valid unpatented mining claims (including any unpatented claim whose validity is in dispute, so long as such validity is later established in accordance with applicable agency procedures)" within the Kantishna Mining District in the boundaries of Denali National Park to consent to a taking of their claims by the Government.[21] Section 120 also provides for the payment of "just compensation . . . of any valid claims to which title has vested in the United States pursuant to [Section 120], determined as of the date of taking."[22]

40.    As noted below, Shearer acquired his first ownership of Optionor's interest in the 1937 Option Contract in 1994.  Shearer continued to purchase both Optionor and Optionee interests through to 1995, at which point he owned 100% Optionor interest, if any, in the 1937 Option Contract.  As also discussed below, the 1937 Option Contract encompassed multiple Kantishna mining claims, not just Banjo and Pass.  In February 1998, both Shearer and Red Top filed written consents to the taking of any interest in mining claims they owned as of 1998 within the 90-day period prescribed by Section 120.[23]  Shearer excepted two Kantishna mining claims that he owned in 1998, 2.5 acres on Rainy#5 and 7 acres on Doherty.  Thus, title to any interest

---

[20] Pub. L. No. 105-83, the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1998, 111 Stat. 1543, 1564-66.

[21] Pub. L. No. 105-83 § 120.

[22] *Id.*

[23] Ex. 8.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

of the remaining mining claims Shearer and Red Top owned in 1998 would have vested in the United States on February 12, 1998. Ownership of any interest that was acquired after 1998 would not have been transferred as of the date of taking on February 12, 1998. The question of whether the claims are valid (such that the patent applicant would have been entitled to a patent in the absence of the statutory taking) would have controlled any claim for compensation under Section 120 of any unpatented mining claim with a complete patent application an approved FHFC, and a mineral report showing a valid mineral discovery. However Anthony was the owner of record of Banjo and Pass in 1998 and he did not consent to the taking of Banjo and Pass. Therefore Anthony's ownership interest survived the 1998 date of taking. As noted, Anthony conveyed all of his ownership interest and rights to patent to Shearer in 2005.

41. In November 2003, Shearer filed an action seeking compensation under Section 120 for the claims he owned and consented in the United States District Court for the District of Alaska.[24] That case was stayed pending the BLM proceedings described below addressing the validity of the Banjo and Pass Claims, and then dismissed without prejudice after the 2012 DOI Decisions purporting to invalidate the Banjo and Pass Claims. Shearer has not abandoned his rights to his ownership of the Banjo and Pass Claims acquired in 2005, or his rights to any compensation for the Banjo and Pass Claims that may be owed for any interest he may have owned prior to 1998.

---

[24] *Paul G. Shearer v. United States*, No. A03-0263 CV.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

42. To date, the United States claimed that the only claims that Shearer owned and consented in 1998 was 3.05 acres of Doherty lode claim, and United States refused to pay any Section 120 compensation to Shearer for the taking of any other interests he acquired from the Optionors prior to 1998.

### E. BLM Proceedings on Claim Validity

43. In July 2003 BLM, on behalf of NPS, initiated an administrative adjudication of the validity of the Banjo and Pass Claims.[25] This proceeding focused exclusively on discovery issues, alleging that sufficient minerals had not been exposed within the boundaries of the Claims to constitute a valid discovery on the date the land was withdrawn from mineral entry. BLM did not contest any title issues when initiating this proceeding.

44. The BLM complaint named Anthony as contestee, but additionally identified intervenor Shearer and Red Top as individuals or entities who "may assert an interest in proceeds from the sale, lease or rent of the claims as set forth in the Settlement Agreement dated June 2000 between Anthony, Shearer, Red Top Mining Company and the surviving directors of Red Top Mining Company in the Alaska state court cases numbered 4FA-93-2045, S-7963, S-7973, and 4FA-98-1250[.]"[26] On August 15, 2003, Anthony filed an answer in which he admitted that he is the owner of the subject claims and denied the allegations of the complaint. On August 29, 2003, Shearer additionally

---

[25] *Michael R. Mark Anthony*, 180 IBLA at 318; *United States v. Michael R. Mark Anthony*, OHA AA-71472 (2008).

[26] *Michael R. Mark Anthony*, 180 IBLA at 318.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

filed an "Answer," separate from Anthony, in which he denied the allegations of the complaint and requested the opportunity "to participate in any hearing granted to Contestee Michael R. Mark-Anthony to present additional evidence."

45.     BLM's complaint was heard before the Office of Hearings and Appeals ("OHA") within the DOI. OHA held hearings in Anchorage, Alaska in August 2005 and June 2006, where Shearer appeared *pro se* and Anthony did not participate. On April 29, 2008, the Administrative Law Judge ("ALJ") issued a detailed and thoughtful 171-page decision analyzing the validity of the Banjo and Pass Claims and concluding that "[t]he preponderance of the evidence therefore establishes that a discovery of a valuable mineral deposit did exist within the boundaries of each of the subject claims on the withdrawal date. Therefore, the [Government's] charge to the contrary should be dismissed."[27]

46.     This proceeding, and its 13 year delay of the patent process, was based on a new mineral report that was unwarranted given the Claims already had approved 1995 mineral reports. The ALJ found that the new report had overestimated costs, failed to locate all original discovery points, reduced the original strike length in such a manner as to significantly underestimate the minable reserves so as to cause the mineral report to fail to demonstrate a valid mineral discovery. These inaccuracies were noted and corrected by ALJ who confirmed validity in the decision described above.

47.     BLM then appealed this decision to the IBLA, which affirmed the ALJ's

---

[27] *Michael R. Mark Anthony*, OHA AA-71472.

ASHBURN & MASON inc.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

decision and issued a final decision upholding the validity of the Banjo and Pass Claims on January 12, 2011.[28]

48.     In the middle of this validity contest, BLM attempted to amend its claims to challenge the patent applicant's title to the Banjo and Pass Claims in 1989, arguing that under the 2005 Fairbanks Court Order, the wrong party made the required FLPMA filings in 1979, thus rendering the claims abandoned.  BLM sought this amendment after the first hearing in 2005 concluded and immediately before the 2006 hearing was to begin.  The ALJ denied this motion on May 31, 2006 stating BLM's request to reopen title and FLPMA compliance issues was "untimely," "without merit," and "would not allow adequate time for response in advance of the [administrative] hearing as would meet basic requirements for fairness and due process."[29]

49.     BLM did not appeal the ALJ decision that denied its motion to add the title issues to the Complaint.  Instead, during its appeal of the ALJ's validity decision to IBLA, BLM attempted to raise the title issues again by filing a new protest and filing a "Motion for Partial Remand" in November 2008 asking IBLA "to partially remand this case so that BLM has the jurisdiction to adjudicate" a new protest against the mineral application.  This new protest was filed with the BLM Alaska State Office on August 1, 2008, by an attorney with the Regional Solicitor's Office acting as counsel for NPS (the

---

[28] *Michael R. Mark Anthony*, 180 IBLA at 359.
[29] Ex. 9 at 2.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON INC.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

"New Title Protest").[30]   IBLA denied the BLM motion, ruling that BLM has no authority to adjudicate title after the DOI Secretary already approved title and signed the FHFC.

50.    The New Title Protest was based on the 2005 Fairbanks Court Order, which as noted below was intended to resolve title disputes, *not* for Banjo and Pass, but for all title transfers after 2005 of any remaining mining claims that were still subject to the 1937 Option Contract, amended as of 2005.  As described below, the Banjo and Pass Claims were removed from the scope of the 1937 Option Contract by a settlement executed in 2000.  BLM nonetheless mistakenly believed the 2005 Fairbanks Court Order established that the 1937 Option Contract expired in 1979, meaning at that time Red Top was no longer the vested "owner" of Banjo and Pass Claims in 1979 and therefore Anthony who gained his interest from Red Top in 1989 did not have full possessory legal title to support his mineral patent claim.  In addition BLM alleged that Red Top Mining Company was not the proper party to make the annual FLPMA Section 314 filings in 1979 and later.   BLM argued that a claim is considered abandoned when the actual owner does not make the required FLPMA filings, ignoring that Red Top actually timely filed the instruments which at worse, contained defects that were curable.[31]

51.    On April 15, 2009 IBLA denied BLM's motion for a partial remand,

---

[30] *Id.*

[31] *Id.* at 112.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

concluding that IBLA lacked jurisdiction to adjudicate the validity of Shearer's title because the FHFC for the Banjo and Pass Claims had been signed and issued by the DOI Secretary, and only the Secretary may review that decision.[32]

## F. Decisions Revoking Certificate and Invalidating Claim

52. On February 9, 2012, without providing any notice to Shearer or conducting any administrative proceedings, DOI Secretary Ken Salazar cancelled the FHFC that was issued by Secretary Babbitt in 1995.[33] This unnoticed decision alleged that the FHFC, which certified the chain of title for the Banjo and Pass Claims, was issued erroneously because the 2005 Fairbanks Court Order suggested that title never passed to Red Top, the entity that made the FLPMA filings in 1979 for the Banjo and Pass Claims. DOI claimed that because the order suggested Red Top did not have title, it did not qualify as an "owner" under BLM regulations, and Leo Mark Anthony, as Red Top's agent, did not have authority to record the mining claims with BLM. The decision therefore purported to assert that the Banjo and Pass Claims were abandoned by operation of law as of October 22, 1979 because the FLPMA instrument that was timely filed did not list the correct owner of the claims as required by Section 314 of FLPMA.[34]

---

[32] *United States v. Michael R. Mark Anthony*, 177 IBLA at 117 ("BLM has no authority to determine that Mark Anthony did not have title to the subject claims contrary to Secretary Babbitt's acceptance of Mark Anthony's chain of title. Only the Secretary may make such a determination.").

[33] Ex. 10.

[34] *Id.* at 2.

53. This cancellation decision also asserted that the patent application itself was defective because the application relied on Red Top being the previous owner of Banjo and Pass, but the cancellation decision assumed that Red Top was not the owner under the 2005 Fairbanks Court Order. Finally, the cancellation decision also broke new ground in alleging that the title information submitted with the patent application did not state how Anthony initially acquired his stock or other interest in Red Top, which would mean the patent application was incomplete and BLM should not have continued to process it.[35] This cancellation decision came more than 32 years after the required documents were filed with the BLM under Section 314 of FLPMA by an owner of record at the time, 17 years after DOI issued the FHFC, eight years after BLM initiated the administrative validity proceeding in 2003, almost three years after IBLA declined to remand the case to allow for a title contest, and over a year since IBLA issued its final decision upholding the validity of the Banjo and Pass Claims.

54. On March 3, 2012, the DOI sought to stay the Section 120 court proceedings to allow for BLM to initiate another administrative proceeding to challenge the validity of the Banjo and Pass Claims, this time based on the argument the wrong party made the FLPMA filings in 1979. The court denied the motion stating:

> There are a number of problems with the Government's motion. First, the Secretary's decision to cancel the certificate for the Banjo and Pass Claims comes fully seventeen years after the FHFC was originally granted. It comes over eight years since the Government filed an administrative challenge to the claims, almost three years since the IBLA

---

[35] *Id.* at 2-3.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

relied on the original FHFC to uphold Shearer's chain of title, and over a year since the IBLA issued its final decision that the mining claims were themselves valid.

Now the Government wants another bite at the apple, so that it may challenge an administrative decision that relied on the Government's own allegedly erroneous certification, a certification that the Government did not correct or cancel for the fourteen years before the IBLA relied on it, nor for three years after that. The Court questions whether a unilateral government decision to "cancel" its certification of Shearer's chain of title, after title has already vested in him and been upheld in a final administrative appeal, comports with due process.[36]

55.     Instead of trying to initiate another administrative proceeding, however, DOI again acted unilaterally.   On April 5, 2012, without any notice to Shearer or conducting any administrative proceedings, Acting Assistant Secretary Marcilynn A. Burke issued a purported final agency decision declaring that the Banjo and Pass Claims were abandoned and void because of the alleged failure to comply with FLPMA, and rejecting the patent application.[37]

56.     Both of the DOI 2012 Decisions were based solely on the 2005 Fairbanks Court Order.  This Order was a summary judgment order, one paragraph in length, and entered by stipulation as part of a much larger series of settlements of a prolonged title dispute between Shearer, Anthony, and Red Top.  The intent of the settlement was to quiet title to any remaining mining claims in 2005 still covered by the 1937 Option Contract to the Optionor interest.  The only remaining claims were a subset of "[a]lso all other lode claims located in the vicinity" that did not include the Banjo and Pass

[36] Ex. 11 at 2-3.
[37] Ex. 12.

ASHBURN & MASON p.c.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

Claims. Neither 2012 DOI Decision looked beyond the 2005 Fairbanks Court Order to the rest of the title history of the Banjo or Pass Claims, let alone acknowledge or analyze the court judgments and settlements that gave rise to the 2005 Fairbanks Court Order in the first place as stated in the Order. DOI was given all of the 2000 settlement documents in 2000, and had all of the 2005 settlement documents in 2005 so it could have done the proper analysis. Moreover, DOI claims it discovered the potential Optionor interest under the 1937 Option Contract when it received the 2005 Fairbanks Court Order. However, as noted above, DOI knew about this potential Optionor interest in 1994, took the position that it was not a valid interest, and acted on that position one year later when it approved the FHFC in 1995.

### G. Ownership History of Banjo and Pass Claims From Discovery Through FLPMA Filings and Patent Application

57. On October 2, 1928, the original owner of the Banjo and Pass Claims, Joseph Quigley, recorded the Banjo Lode Claim original location notice, and on July 3, 1929, he recorded the Banjo Lode Claim amended location notice, and the Pass Lode Claim original location notice in the Kantishna Deeds and Records.[38] On April 7, 1937, Joseph Quigley and Fannie Quigley, his wife, executed a Property Settlement to each share 50% of the mining claims so they became the original two owners and Optionors.[39] Later Joseph Quigley would sell most of his 50% interest to Fowler who

---

[38] Ex. 13.
[39] Ex. 14 at 5.

sold to Deacon, adding Deacon to the Optionors.[40]

58.    On August 19, 1937, Joseph Quigley and Fannie Quigley executed a Quitclaim Escrow Deed and an Option to E. Fransen and C.M. Hawkins, who on October 15, 1937 assigned the option to Red Top.[41] These documents together are referred to as "option-contract agreement" in the 1979 FLPMA filings and two 2012 DOI Decisions, the "Quitclaim-Option" in some court documents, and the "1937 Option" in other court documents.[42] They will be referenced as the "1937 Option Contract" in this Complaint.

59.    The 1937 Option Contract listed by name 21 patented and 4 unpatented mining claims, and also included additional unnamed claims identified as "Also all other lode claims located in the vicinity . . . ." The Doherty claim was one of the unnamed claims included with that catch-all phrase. The Banjo and Pass Claims were included in the 4 named unpatented mining claims. All of the above mining claims were subject to the 1937 Option Agreement when it was first entered into in 1937 by the parties, Optionors, Joseph Quigley and Fannie Quigley, and assigned Optionee Red Top. The 1937 Option Contract changed over time as the original Optionors conveyed their interest to new Optionors, standby agreements were added, and some mining claims were removed as their title was quieted to new owners by court judgments to quiet title. Therefore, any judgment or order addressing the 1937 Option Contract on

---

[40] *Id.* at 9.

[41] Ex. 5.

[42] Ex. 1, 10, 12, and 14.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501

TEL 907.276.4331  •  FAX 907.277.8235

any given year only impacts those mining claims that are still subject to the 1937 Option Contract as of the date of the judgment or order. The 1979 Quiet Title Action discussed below removed 21 patented claims. The 1991 Quiet Title resulted in the 1993 judgment that removed the 4 unpatented mining claims, vesting title to Banjo and Pass in Anthony. By 1995 Shearer had become the sole Optionor and represented all rights and interests as the Optionor in subsequent settlement agreements. The 1993 Quiet Title Action resulted in the 2000 judgment confirming the previously vested title to Banjo and Pass in Anthony, and vesting title to Doherty 51% Red Top and 49% Shearer. By 2005 the only mining claims that remained in the 1937 Option Agreement were the remaining unnamed claims in the catch-all phrase "Also all other lode claims located in the vicinity . . .", which is why the 2012 DOI Decisions are mistaken to assume the 2005 Fairbanks Court Order affected the Banjo or Pass. This evolution of the 1937 Option Agreement is further described in the paragraphs that follow.

60. As noted below, ownership of the mining claims in the 1937 Option Contract (which originally included the Banjo and Pass Claims) has been the subject of prolonged litigation, playing out over multiple court cases. The first was a quiet title action filed in Alaska Superior Court in Fairbanks filed by KML after Red Top conveyed its interest in certain Kantishna mining claims, titled *KML v. Dunkle*, 4FA-79-194 Civil (the "1979 Quiet Title Action"). The issue in this case, as in the subsequent cases described below, was how to interpret the 1937 Option Contract. The parties each claimed ownership of the mining claims at issue through alternate chains of

title. KML argued that the 1937 Option was a contract that had been fulfilled, and therefore Red Top took title to the mining claims at issue. Defendants argued that the 1937 Option Contract was simply an option that had never been fully exercised, meaning that Red Top never obtained title.

61.  Defendants, or Optionors, sought summary judgment that the 1937 Option Contract was an option that had expired, and the court denied the motion. Soon thereafter the parties settled, with KML paying more than the full price owed under the 1937 Option Contract. As a result of the 1979 Quiet Title Action filed on January 20, 1979, with the 1937 Option Contract fully paid, KML received title to 18 mining claims, Fannie Quigley's heirs received title to three mining claims, and Red Top was the owner of the remaining mining claims covered by the 1937 Option, including Banjo and Pass.[43] In addition, the settlement stipulation confirmed that some of the Optionors retained rights as Red Top shareholders.[44] When Anthony filed the patent application for Banjo and Pass in 1989, these Optionors were still Red Top shareholders and Mr. Anthony included them in his Notice to Co-Owners of Claimants Lien filed with the patent application.[45]

62.  Subsequent to the 1979 Quiet Title Action, Anthony initiated another quiet title action in Alaska Superior Court in Fairbanks, which included Shearer as a defendant titled *Mike R. Mark Anthony v. Juanita Jensen, et al.*, Case No. 4FA-93-2045

---

[43] Ex. 15-16.
[44] Ex. 16.
[45] Ex. 4 at 9-10.

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

in 1993 (the "1993 Quiet Title Action"). Here, the issue was ownership of the Doherty Lode Claim in Kantishna. However, the result from this case would confirm, by both adjudicated decision and settlement, that Optionee Red Top owned the Banjo and Pass Claims in 1979, because the case turned on the status and interpretation of the 1937 Option Contract to determine who owned the remaining mining claims (including Doherty) if they had not been quieted by the 1979 Quiet Title Action. Note that by that time the four named unpatented mining claims in the 1937 Option Contract, including the Banjo and Pass Claims. had already been quieted by the 1991 Quiet Title action.

63.     The 1993 Quiet Title Action led to a 1996 court decision that established, among other things, that Optionee Red Top was the vested owner of all mining claims subject to the 1937 Option Contract, including the Doherty Lode Claim, as well as the Banjo and Pass Claims, by no later than September 1, 1976 and potentially earlier, depending on what legal grounds applied.[46] Specifically, the court ruled that Red Top was the vested owner of Banjo and Pass: (1) on September 1, 1953 if one applied adverse possession; (2) on September 1, 1972 if one viewed the 1937 Option Contract as a contract for sale; or (3) on September 1, 1976 if one viewed the 1937 Option Contract as an Option, which the court ruled actually expired no later than September 1, 1966.[47] The court also ruled that the statute of limitations had expired and no party

---

[46] Ex. 14 at 16-20.

[47] *Id.* at 10-20.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

could bring an action to challenge Optionee Red Top's title.[48]  This ruling also meant the Optionors described above did not have title after the vested dates above.  This is an important ruling because it is consistent with the 2005 Fairbanks Court Order that ruled the 1937 Option Contract expired no later than November 24, 1979, but it also shows that the assumption in the 2012 DOI Decisions that Red Top lost ownership in 1979 is mistaken.  The 1996 court decision confirmed Red Top was the vested owner of the Banjo and Pass Claim no later than 1977, which ownership continued until 1988 when Anthony became the owner by completing a Claimant Lien followed by a the 1993 court order and judgment in the 1991 Quiet Title Action vesting 100% title to the Banjo and Pass Claims in Anthony.

64.     Therefore, Red Top was the correct party to make the FLPMA filings for Banjo and Pass from 1977 to 1988, and Anthony was the correct party to file the patent application and FLPMA filings from 1989 to 1993.  The BLM record shows Red Top and Anthony timely filed all of the required FLPMA instruments during those time periods,[49] and all the filings received BLM approval, which endured for 19 years until the surprise challenge by the 2012 DOI Decisions, crafted behind closed doors and issued without notice or a hearing, after IBLA had rejected the protest.

65.     Earlier in this time frame, Anthony had become the sole owner of the Banjo and Pass Claims through the 1991 Quiet Title Action.  This case resulted in an

---

[48] *Id.*

[49] Ex 2.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

order and final judgment awarding Anthony sole ownership of Banjo and Pass.[50] A copy of this order was recorded on March 9, 1993, and filed with BLM on March 29, 1993.[51]

66.    The above title issues were familiar to DOI as it was processing the patent application and and approving the Abstract of Title.  On February 28, 1994, DOI knew about the Optionors alternate title chain, rejected the premise that the Optionor's title was valid, and instead agreed with the findings above that Red Top had title.  DOI stated in letters to Shearer in February and March 1994: "It has been our understanding that Quigley no longer held any interest in any of the above referenced mining claims at the time of his death in 1958," and "[e]ven though the interest of Mr. Zoppi was quieted out years ago it is none-the-less necessary for you to execute a deed to the United States in order to clear that exception."[52]

67.    Similarly DOI represented to Shearer, Red Top, and Anthony that it agreed with the findings in the 1996 memorandum decision from the 1993 Quiet Title Action.  Further, DOI indicated its agreement with the 2000 settlement of the 1993 and 1998 Quiet Title Actions set forth below which likewise confirmed Red Top's ownership of Banjo and Pass by 1977.  Shearer and the other parties in the State quiet title lawsuits listed below relied on the DOI position that the Red Top title chain was valid and have spent years maintaining the claims and resolving quiet title actions on

[50] Ex. 17.
[51] Ex. 3.
[52] Ex. 18 at 3-8.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

the property at great expense and at the express request of NPS.

**H. How Shearer Took His Interests in Banjo & Pass and the State Court Actions Disputing Title.**

68. Shearer began buying various interests in various Kantishna mining claims in 1992, starting with acquiring the Optionor's interest, if any, under the 1937 Option Contract. In the 1993 Quiet Title Action discussed above, Anthony sought to resolve title to the Doherty lode claim and joined Shearer as a defendant. Later a dispute was initiated in Alaska Superior Court in Fairbanks, Case No. 4FA-98-1250 (the "1998 Quiet Title Action") between Red Top and KML. Eventually the 1993 and 1998 Quiet Title Actions were consolidated and the parties decided to settle both cases and distribute the title to any remaining mining claims still subject to the 1937 Option Contract. As described below, Mr. Anthony eventually conveyed all of his rights and title to Banjo and Pass to Shearer in 2005.[53]

69. The quiet title actions between Shearer, Red Top, and Anthony were resolved by two settlement agreements. The first was a partial settlement in 2000 (the "2000 Settlement") resolving all issues regarding the Banjo, Pass, and Doherty and superseding the 1937 Option Contract, which therefore after 2000, no longer affected or included Banjo and Pass. The 2000 Settlement was written so that on the precise date that the settlement orders vacated previous court decisions, the Banjo and Pass Claims were no longer subject to the previous court decisions and 1937 Option Contract, but became subject only to the 2000

---

[53] Ex. 19; Ex. 20.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

Settlement Agreement that became effective on that precise date in 2000.

70.    The second settlement was a final 2005 settlement between Red Top and Shearer that resolved all remaining issues regarding the remaining mining claims still subject to the 1937 Option Contract as of 2005 (the "2005 Settlement").    The 2000 and 2005 Settlements were approved by the court and partially implemented by court order.  The 2005 Fairbanks Court Order was part of the 2005 Settlement and only impacted those few remaining mining claims (which did not include Banjo and Pass) and only affected title transaction going forward from 2005.

71.    The 2000 Settlement and the court order approving it confirmed Anthony's ownership of Red Top stock prior to October 15, 1989, and that he acquired title on February 10, 1989 (the required 90 days after last notice to shareholders on November 10, 1988) vested by the judgment in the 1991 Quiet Title Action.[54]  Pursuant to the 2000 Settlement, the court vacated the orders and judgment from the 1993 Quiet Title Action. Those orders, judgments, and the 1937 Option Contract were all superseded by the 2000 Settlement with respect to the Banjo, Pass, and Doherty mining claims.    On September 13, 2000, Shearer recorded the Order approving the 2000 Quiet Title Settlement, Quitclaim Deeds, and other related documents, in Fairbanks Recording District under Instrument No. 2000-020413-0.

72.    The 2000 Settlement resolved the ownership issues of the Doherty lode claim sufficiently to allow Shearer and Red Top to include prior claims of ownership of

_____

[54] Ex. 6; Ex. 21.

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

the Doherty in the Section 120 action for compensation described above. Specifically, it confirmed ownership of Doherty as 51% Red Top and 49% Shearer. The parties confirmed the title to Banjo and Pass Claims as 100% owned by Anthony, which is derived from the 1991 Quiet Title Action discussed above which awarded Anthony 100 percent ownership in Banjo and Pass in 1993.

73. Shearer purchased all of Anthony's rights to the Banjo and Pass Claims in 2005. This included a Release of Claims signed by Anthony with regard to the 1993 and 1998 Quiet Title Actions. Anthony quitclaimed to Shearer all of his remaining interest, whatsoever; in the Banjo and Pass Claims, recorded in the Fairbanks Recording District as Instrument No. 2005-005186-0. This included his ownership of the possessory rights under Federal mining laws. Anthony also assigned, transferred and/or surrendered to Shearer all of his rights to patent, access rights, adverse possession rights, salvage rights, mineral rights, personal property rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards, if any, for the property which he quitclaimed to Shearer by way of the document titled Clarifying and Confirming Assignment of Rights to Patent, Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards signed on January 20, 2005, and recorded as Instrument No. 2005-005185-0.

74. The 2005 Settlement also resulted in Red Top transferring to Shearer its right to an Assignment of Proceeds from any sale of the Banjo and Pass Claims.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

Page 33 of 55

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

Finally, a February 23, 2005 quitclaim deed (Instrument No. 2005-005187-0, recorded in the Fairbanks Recording District) from Red Top to Shearer transferred all of Red Top's remaining interests whatsoever in the property described in the 1937 Option Contract, which includes all the remaining mining claims, if any, still subject to the 1937 Option Contract as of 2005.[55]

75.    Red Top also assigned, transferred and/or surrendered to Shearer all of its access rights, adverse possession rights, salvage rights, mineral rights, personal property rights, condemnation and/or inverse condemnation rights, proceeds, distributions, and/or awards, if any, for the property which it quitclaimed to Shearer pursuant to the above paragraph, by way of the document titled Clarifying and Confirming Assignment of Salvage Rights, Adverse Possession Rights, Condemnation and/or Inverse Condemnation Rights, Proceeds, Distributions, and/or Awards signed on February 23, 2005, and recorded in the Fairbanks Recording District as Instrument No. 2005-005188-0.

76.    Pursuant to the 2005 settlement, on March 18, 2005, the Alaska State Superior Court filed an Order vacating the Memorandum Opinion dated December 18, 1997, issued by Superior Court Judge Charles Pengilly in civil case 4FA-93-2045.

77.    The parties' 2000 and 2005 settlements, and resulting orders set forth above, resolved all remaining issues that were brought, or could have been brought, by parties opposed to Shearer's claims of interest in the Banjo and Pass Claims.    These

---

[55] Ex. 22.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

parties included successors that represented all of the Optionors and Optionees to the 1937 Option Contract. Shearer's ownership in the Banjo and Pass Claims is no longer being disputed by the parties in those cases and Shearer can now proceed as the only owner of the Banjo and Pass Claims to file this action.

78. The 2000 Settlement addressed how the parties would identify predecessor title in the various mining claims settled (including Banjo and Pass). The 2000 Settlement included a stipulation that provides each party the right to identify which predecessor their title is derived from in order to avoid any disputes or ambiguity as to the predecessor title chain:

79. "5. All parties represent and warrant that except for the sales contract titled "Contract – Doherty" recorded in the Fairbanks Recording District in Book 980 Page 959-973 which is now being converted into this Settlement Agreement, and the Consents given by the parties under Section 120 of Public Law 105-83, all parties have not sold, assigned, transferred, conveyed or otherwise disposed of any of the named subject property from the date the Complaint was filed in civil case 4FA-93-2045 to the present. This settlement agreement represents a compromise of disputed claims without an admission of liability by any of the parties. Therefore with regard to the final interest in the subject property, or any portion thereof, held by each party after executing this Settlement Agreement, in the cases where there are multiple predecessors recorded, all parties stipulate that each party has the right to identify which predecessor their title is derived from. Therefore each party is free to assert where the ownership

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

interest originated from for their respective property, or any portion thereof. This stipulation is provided to avoid disputes as to what property is subject to the Consents."[56] In order to implement the 2005 Settlement, and pursuant to the allowing parties to identify predecessor title, the Alaska court also issued a summary judgment order stipulated as part of the settlement. This is the 2005 Fairbanks Court Order and it provided:

### ORDER GRANTING DEFENDANT SHEARER'S MOTION FOR PARTIAL SUMMARY JUDGEMENT THAT THE 1937 OPTION AGREEMENT EXPIRED, WHEN IT WAS NOT FULLY PAID, AT THE LATEST ON NOVEMBER 24, 1979, UNDER THE "WAIT AND SEE" RULE AGAINST PERPETUITIES

The Court, having considered defendant Shearer's Motion for Partial Summary Judgment filed on October 7, 2004 ("Shearer's Motion"), having considered that Red Top Mining Company has stipulated to withdraw both its Opposition to Shearer's Motion and its Cross Motion for Summary Judgment currently pending, having considered the Stipulation of the parties requesting that the Court enter judgement in favor of Shearer on Shearer's Motion, ***having concluded that the judgement and order is justified and warranted in order to allow for this case to be settled by the parties***, having concluded that there are no contested issues of material fact relating to such issue, and having concluded that defendant Shearer is entitled to judgment as a matter of law,

"IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the interest granted to the Optionees under that certain Option Agreement dated August 19, 1937, by and between Joseph B. Quigley and Fannie Quigley ("Optionors"), and E. Fransen and C. M. Hawkins ("Optionees"), which interest was assigned to Red Top Mining Company pursuant to that certain Assignment of Option dated October 15, 1937 (a) was an option interest and not the interest of a purchaser under a contract for purchase and sale; b) was not fully paid on or before November 23, 1979; and, (c)

---

[56] Ex. 23; Ex. 6.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

therefore expired no later than November 24, 1979, ***by operation of the "wait and see" Rule Against Perpetuities applicable in this case to the 1937 Option Agreement under*** <u>***Hansen v. Stroecker***</u>***, 699 P.2d 871 (Alaska 1985).***"[57]

80.     The 2005 Fairbanks Court Order must be read in light of the parties' overall settlements described above.  Under these settlements, the 2005 Fairbanks Court Order was not intended to address or have any impact on the Banjo and Pass Claims, as those had already been resolved in 2000.  The 1937 Option Contract had already been modified repeatedly by court judgments and various settlements that by 2005, the only mining claims covered by the 1937 Option Contract were "other mining claims in the vicinity," that did not include Banjo, Pass, and any other claims previously quieted by court judgments.  Also the 2000 Settlement agreement had resolved all issues regarding Banjo and Pass and superseded the 1937 Option Contract agreement, so Banjo and Pass were never subject to the 1937 Option Contract agreement after 2000.  The intent of the 2005 Fairbanks Court Order was to address these "other mining claims" and remove clouds on these claims for future transactions.  Notably, the 2005 Fairbanks Court Order was intended to have prospective effect only, and was not issued *Nunc Pro Tunc*, and critically, *could not have been issued in 1979 or 1980*, because the "wait and see" Rule Against Perpetuities invoked as the law *in that case* (former AS 34.27.010), was not enacted until 1983 and had not been extended to prior options (such as the 1937

---

[57] Ex. 24 at 3 (emphasis added).

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}
                                                                                Page 37 of 55
Case 3:18-cv-00035-HRH   Document 1   Filed 02/07/18   Page 37 of 55

ASHBURN & MASON p.c.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

Option Contract) until 1985.[58]

81.     In its 2012 DOI Decisions, DOI has seized on the 2005 Fairbanks Court Order to undo over thirty years of history, ignoring all court decisions and judgments that occurred over those thirty years, in an attempt to invalidate the Banjo and Pass Claims as of 1979.  Ironically, DOI's interpretation of the order is a stark departure from its past position on how to interpret the 1937 Option Contract and its impact on title to Banjo and Pass and other Kantishna mining claims involving Red Top, Shearer, and Anthony.  As noted, from when Anthony filed the patent application in 1989 until DOI sought to add title claims to the pending validity proceeding in 2006, DOI agreed that Anthony held title to the Banjo and Pass Claims when he filed the patent application and that Red Top was the owner of these claims when it made the FLPMA filings for Banjo and Pass.  DOI did not change position based on the 2000 Settlement and initially, did not change its position based on the 2005 Settlement.  In fact, DOI took the position in the Section 120 takings case that the 2005 Fairbanks Court Order did *not* remove clouds on title for other mining claims.[59]  DOI then changed course when it sought to amend the validity proceeding and challenge Shearer's title to Banjo and Pass based on the 2005 Fairbanks Court Order.[60]  The OHA ALJ denied that attempted motion to add title issues to the validity contest.

## II.     REASONS THE 2012 DOI DECISIONS ARE INVALID

[58] *Hansen v. Stroecker*, 699 P.2d 871 (Alaska 1985).

[59] Ex. 25 at 14.

[60] Ex. 26.

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

82. The 2012 DOI Decisions are legally defective, invalid, arbitrary, and capricious, and must be vacated for multiple reasons, including but not limited to, the reasons set forth below. Shearer reserves all rights to raise additional arguments and to introduce additional evidence in support of his claims and requests for relief in this action.

## A. The 2012 DOI Decisions Misinterpreted FLPMA

83. The 2012 DOI Decisions were premised on what the Secretary believed was a failure to comply with FLPMA because although Red Top made the required FLPMA filings on time for the Banjo and Pass Claims, the Secretary assumed that under the 2005 Fairbanks Court Order, Red Top could not have been the owner of the claims.

84. *First*, DOI is first mistaken because Red Top satisfied the FLPMA definition of "owner." BLM regulations provide that under FLPMA an "owner" means "the person who is the holder of the right to sell or transfer all or any part of the unpatented mining claim."[61] Here, Red Top was an "owner" in 1977 because at the time Red Top was a party with the authority to sell or transfer an interest in the claims. Red Top was the legal owner in 1979 under the ruling from the 1993 Quiet Title Action, but was also the only party in physical possession of the Banjo and Pass Claims during 1977 to 1979, and the only party that exercised any right to sell or transfer any nearby claims also included in the 1937 Option Contract, as described above in

---

[61] 43 C.F.R. § 3833.0-5(e) (1996).

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

paragraph 24. The 1991 Quiet Title Action that confirmed the Red Top's prior ownership was also consistent with both the rulings in the 1979 and 1993 Quiet Title actions.

85. *Second*, DOI is mistaken because even if Red Top was not an owner of the Banjo and Pass Claims in 1979, its being listed as the owner in the Section 314 FLPMA filing would only be a potential defect in the filing, and not a failure to record. Section 314 provides that "it shall not be considered a failure to file if the instrument is defective," or "if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim[.]"[62] Here, the instruments required by the statute were recorded for the Banjo and Pass Claims. Nothing in Section 314 of FLPMA required the initial filings to capture the correct ownership status of the claims at the time. Rather, Section 314(c) of FLMPA expressly allows for this "defect" to be corrected. DOI never allowed for this opportunity.

86. Further, as described above in paragraph 61, at the time of the recording, Optionee Red Top included shareholders who were also Optionors who had previously argued (and lost) that the 1937 Option Contract was an expired option, which DOI assumes would have resulted in them taking title to the Banjo and Pass Claims instead of Red Top. Here, DOI is now arguing that the effect of the 2005 Fairbanks Court Order is that these shareholders had the correct argument in the 1979 Quiet Title Action, and that they were the right "owners" of title not Red Top. However, because

---

[62] 43 U.S.C. § 1744(c).

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

these individuals were also shareholders in Red Top, the right "owners" were still part of the FLPMA filings so the filing satisfied Section 314's admonition that "it shall not be considered a failure to file . . . if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim[.]" There are no legal or equitable grounds to declare these filings invalid over thirty years later. Put another way, these Optionor Red Top shareholders who DOI is now claiming were the correct "owners" in 1979 were listed in both the 1979 and 1981 court records and 1989 BLM records with the patent application so BLM knew in 1989 that some of the correct owners were represented on the 1977 to 1988 FLPMA instruments, because the listed owner contained persons of both groups Optionors and Optionees, and therefore BLM should have known that there was no failure to file.

**B.      DOI Failed to Properly Analyze Entire Title History and Misinterpreted 2005 Fairbanks Court Order**

87.      The 2012 DOI decisions looked at the 2005 Fairbanks Court Order in isolation and ignored all other title history, including the various court actions described above, as well as the parties' settlement agreements. The decisions also disregarded DOI's prior title adjudications completed as part of its evaluation of the patent application. This failure is fatal. Further, had DOI engaged in the proper analysis considering all of the facts and evidence, it would have been compelled to conclude that Red Top was the owner of Banjo and Pass from 1977-88, that there was no FLPMA violation justifying declaring Banjo and Pass abandoned, and that Shearer now own all

right title and interest to Banjo and Pass.

88.     As described in detail above, Red Top was the legal owner and correct party to make the required FLPMA filings in 1979 through 1988. Red Top's ownership of Banjo and Pass prior to 1977 was established in the 1991 and 1993 Quiet Title Action, as well as the settlement in the 1979 Quiet Title Action.

89.     DOI also disregarded that the 2005 Fairbanks Court Order, as issued, did not allow for it to apply to issues of title resolved in the separate 1991 Quiet Title, or to issues of FLPMA filings in 1979. As explained above, the 2005 Fairbanks Order was not issued "*Nunc Pro Tunc*" (or "now for then"), meaning the 2005 Fairbanks Order is only prospective in nature, and moreover, it was issued based on operation of law established in 1985, and therefore cannot operate on any issues prior to 1985, such as the 1979 FLPMA filings, because the 1985 law did not exist in 1979 and could not have been used by the Secretary as a reason in 1979 to claim the wrong owner filed the FLPMA instruments. Additionally, the 2005 Fairbanks Order was issued only "applicable in this case to the 1937 Option Agreement" and therefore can only be used to resolve remaining issues raised in case 4FA-98-1250 and cannot be used to alter decisions in other cases, including 4FA-91-2148 and 4FA-79-194, or apply to other issues like FLPMA in 1979.

90.     In addition, DOI missed that the 2005 Fairbanks Court Order does not impact Banjo and Pass because the 1937 Option Agreement referenced in the Order was superseded by the 2000 Quiet Title Settlement, which resolved all issues that were

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

raised or could have been raised about Banjo and Pass between the parties, including how the 1937 Option Contract impacted ownership of Banjo and Pass. In addition, the 2005 Quiet Title Settlements confirmed that the Banjo and Pass Claims would not be subject to the 2005 Fairbanks Court Order's conclusion on the status of the 1937 Option Agreement, which was limited to other claims in the area.

91.    In light of the evidence set forth above, DOI's conclusion in the 2012 DOI Decisions that the patent application was invalid because Red Top did not own Banjo and Pass is mistaken.

### C.    DOI Failed to Recognize that Anthony Submitted Sufficient Evidence of Title with the Patent Application

92.    DOI is also mistaken in concluding that the patent application was incomplete because Anthony did not include information regarding his shares in Red Top. As set forth in detail above, Anthony presented all necessary title information required by law and regulation, including the Affidavit of Completed Notice of Claimant Lien, the Title Abstract, and the order and judgment from the 1991 Quiet Title Action. These documents, and all of the evidence set forth above, establish Red Top's title and Anthony's interests.

93.    In addition, DOI is estopped from raising this issue, and DOI is untimely in doing so, more than fifteen years after the patent application was filed and evaluated and the FHFC Issued.

### D.    The 2012 DOI Decisions Are Untimely and Barred by Statute of Limitations

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

94. DOI's 2012 Decisions, purporting to cancel DOI decisions dating back to 1995, are untimely under DOI regulations and applicable law. The 2012 DOI Decisions incorrectly state that DOI first learned of the potential Optionor interest under the 1937 Option Contract in 2005. But DOI actually knew of potential title issues regarding Banjo and Pass as early as 1994. DOI letters in 1994 show DOI employed professional title examiners and based on their input DOI concluded: "[i]t has been our understanding that the ownership claim of Robert Zoppi was quieted January 16, 1982," and "[i]t has been our understanding that Quigley no longer held any interest in any of the above referenced mining claims at the time of his death in 1958," and "[e]ven though the interest of Mr. Zoppi was quieted out years ago it is none-the-less necessary for you to execute a deed to the United States in order to clear that exception." Therefore in 1994, one year prior to issuing the FHFC, DOI knew about the potential Quigley Optionor interest but took the position that the Optionees Red Top and their successors had valid title. With full knowledge of the potential Optionor title, DOI issued the FHFC in 1995, then waited 11 years, until 2006, to first assert any title challenge contrary to their prior position that all parties had relied on to invest in the mining properties for over 11 years. DOI then impermissibly waited until 2008 to ask IBLA for a remand to address title issues, and then waited until 2012 to issue its decisions purporting to cancel the FHFC and invalidate the Banjo and Pass Claims, over 17 years after they first learned of, analyzed, and dismissed the Optionor interest.

95.     The 2012 DOI Decisions are untimely given the parties have relied on the past BLM approvals since 1979 to preserve the prior investments and to continue making new investments to develop the mining, maintain the four mile road to the Claims, apply for patent, complete two Mineral Exams, successfully defend the Contest for Validity in both the OHA and IBLA appeal, and finally spend considerable resources to complete the legal actions regarding the Claims.  Between 1929 and 1979, the economic investment worth preserving included: trail construction, development of mining tunnels, construction of a four mile road, the large Banjo Mill with a rock crusher, ore bin, 10 stamp mill, and shaker tables.  Resource expenditure continued from 1979 through 1995, with road maintenance, mining development, and annual assessment work.  Mining and prospecting had established over 6,200 tons of reserve at 2 ounces of gold per ton, a reserve that still exists today.  This extensive labor and reserve was documented in the 2003 validity contest.  The successive owners from 1937 to 2012 have recorded over $840,000 on expenses and liabilities that were paid.  Many of the legal expenses have occurred recently after the patent application was accepted and the FHFC approved by BLM,  and the owners making these significant investments relied on these previous approvals of BLM.  The 2012 DOI Decisions are therefore void as untimely and unfair based on owners investment in equity.

96.     The 2012 DOI Decisions are also barred by the seven and 10-year limitation period in Alaska law (AS 39.45.052; AS 09.10.030) because, among other reasons, DOI never challenged title based on Red Top's FLPMA filings from 1977-

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

1988 that recorded the Owner as "Red Top Mining Company," and no party challenged or overturned the judgments in the 1991 and 1993 Quiet Title Actions, or the 2000 Quiet Title Action and Settlement. Title was vested in Anthony by March 9, 2000, exactly seven years after he recorded and BLM accepted his title in 1993. DOI is time-barred from challenging that title now, a fact confirmed by FLPMA's recording rules.

### E.    DOI Lacked Authority to Issue the 2012 DOI Decisions

97.    DOI does not have authority to issue *sua sponte* orders cancelling a FHFC 19 years after its issuance, nor does it have authority to reopen title issues the court adjudicated and DOI approved prior to issuing the FHFC. Further, DOI may not reject the validity of the Banjo and Pass Claims given that it did not appeal to IBLA the OHA order that rejected the title issues as "untimely" and "without merit" and the final IBLA decision upholding claim validity is binding on the Government. The time for DOI to challenge title to the Banjo and Pass Claims, or to assert any defect in the Claims passed long before its issuance of the 2012 DOI Decisions.

98.    The 2012 DOI Decisions also violated BLM regulations which preclude BLM from becoming involved or attempting to adjudicate or review any evidence when "co-claimants are engaged in a dispute regarding the acquisition of a delinquent co-claimant's interests"[63] Rather, as noted, BLM may only rely on a final quiet title judgment. Here, the 2005 Fairbanks Court Order was not a final quiet title judgment and did not quiet title any specifically named property to any specifically named owner.

---

[63] 43 CFR § 3837.30.

Case 3:18-cv-00035-HRH    Document 1    Filed 02/07/18    Page 46 of 55

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

DOI's invalid and uninformed interpretation of the order in its 2012 DOI Decisions constitutes an impermissible attempt to re-litigate title issues resolved in the 1991 Quiet Title Action, as affirmed by the 1994 DOI title examination, and BLM's own title review of the patent applications by 1995. DOI is bound by the results of the 1991 Quiet Title judgment, and is time barred and estopped from revisiting BLM's title determination made prior to issuing the FHFC.

99. The 2012 DOI Decisions are also unlawful because after a FHFC issues, DOI may only consider certificate cancellation by reviewing any evidence that existed *prior to the certificate being issued.* Here, this means DOI may only cancel the FHFC for Banjo and Pass based on evidence prior to 1995. DOI may not rely on subsequent evidence that that did not exist before 1995 or could not have been discovered before 1995. The parties in 1995 had no opportunity to discover or adjudicate new evidence that did not exist until 2005 or 2012. The evidence that existed at the time -- the summary judgment order from the 1979 Quiet Title Action, the legal analysis of the historic facts in the 1996 memorandum decision from the 1993 Quiet Title Action, and all recorded documents from 1928 to 1993 in the patent Abstract of Title -- all supported Red Top being the owner from 1977 to 1988. See example in paragraph 89 where the 2005 Fairbanks Court Order was issued using the 1985 law; ***"by operation of the wait and see" Rule Against Perpetuities . . . under <u>Hansen v. Stroecker</u>, 699 P.2d***

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

*871 (Alaska 1985)"*[64], therefore the 2005 Fairbanks Court Order was operating under a law that did not exist in 1979 and cannot be used to cancel 1979 FLPMA filings.

100.   The 2012 DOI Orders also violate the terms of the 2008 settlement between Shearer and DOI in the Section 120 action described above.   Under that settlement, Shearer reserved certain rights on the Banjo and Pass Claims and DOI did not reserve any right to initiate a new protest or otherwise challenge the Banjo and Pass Claims beyond the already-pending validity claims.   Further, as noted, DOI representatives assured Shearer during those negotiations that Shearer would receive the Banjo and Pass Claims if Shearer prevailed in the pending validity proceeding, which he did, and therefore the patent would issue.

101.   DOI never appealed the OHA 2006 Order that denied adding title issues to the validity contest.   Therefore DOI is barred from attempting to raise those title issues again.   DOI first approved all title to the Banjo and Pass Claims in the 1995 FHFC. DOI's second attempt to raise issues of title was the motion denied by OHA in 2006. DOI's third attempt to raise issues of title, with the 2008 refiling of the new protest and motion for remand, was denied by IBLA in 2009.   DOI's fourth attempt to raise issues of title going back 33 years, the 2012 DOI Decisions, must similarly be denied as those title issues were already decided by DOI and the courts, and were not appealed to IBLA in 2008 (from the first OHA Order), and were denied by IBLA in 2009.

   **F.      The 2012 DOI Decisions Violated Due Process and DOI**

_____

[64] Ex. 24 at 3 (emphasis added).

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

**Regulations**

102.   Shearer did not receive notice or the opportunity to be heard prior to DOI issuing either of the 2012 DOI Decisions.   Shearer went on court record several times stating that if DOI attempted to revive the protest rejected by IBLA or attempted to tender a petition to vacate to the Secretary, Shearer would aggressively defend against any such protest to show that it is without merit.   DOI ignored Shearer's requests and rights to be heard.   Instead, DOI simply issued unilateral decisions based on no record, no proceeding, no FLPMA required hearing and no input from Shearer.   DOI failed to consider all of the recorded claim and title history and evidence described above existing in the court record.   In doing so, DOI failed to abide by its own regulations, let alone satisfy even the minimum requirements of due process.   If this court declines to adjudicate Mr. Sharer's claims, this matter should be remanded to DOI for proceedings consistent with DOI regulations and due process.

## COUNT I
## Declaratory Judgment that the 2012 DOI Decisions Are Invalid

103.   Plaintiff incorporates paragraphs 1 through 102 above as if specifically alleged or pleaded herein.

104.   As set forth in detail above, DOI did not have authority to issue the 2012 DOI Decisions.   Further, in issuing the 2012 DOI Decisions, DOI failed to consider important evidence, misinterpreted the 2005 Fairbanks Court Order, misinterpreted the applicable statutes and regulations, and failed to follow its own statutes and regulations.

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

105. Plaintiff is entitled to an order pursuant to 28 USC §§ 2201-2202, declaring and adjudging that the 2012 DOI Decisions are invalid and vacated.

## COUNT II
### Declaratory Judgment that Shearer Holds Title to Banjo and Pass

106. Plaintiff incorporates paragraphs 1 through 105 above as if specifically alleged or pleaded herein.

107. As described in detail above, Shearer currently holds title to the Banjo and Pass Claims. Shearer's title is based on an extensive written record, including title documents in the BLM records, state court adjudicated quiet title orders, judgments, and deeds, and the terms of the state court quiet title settlements.

108. Plaintiff is entitled to an order pursuant to 28 USC §§ 2201-2202 declaring and adjudging that Shearer currently holds title to the Banjo and Pass Claims.

## COUNT III
### Declaratory Judgment that Banjo and Pass Claims Are Valid, Plaintiff has a Pre-Existing Right to Patent, and DOI Should Issue Patent

109. Plaintiff incorporates paragraphs 1 through 108 above as if specifically alleged or pleaded herein.

110. As described in detail above, DOI already adjudicated the Banjo and Pass Claims as valid, Shearer holds title to the Banjo and Pass Claims, and there are no grounds to invalidate the Banjo and Pass Claims. DOI should finally issue the patents for the Banjo and Pass Claims.

111. The Banjo and Pass Claims have been held by Shearer, patent applicant,

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

and previous owners since their original location by Joseph Quigley extending back to July 27, 1928, and June 17, 1929, respectively.

112.  The Banjo and Pass Claims are on the List of Mineral Patent Applications Grandfathered under Section 113 of the Interior and Related Agencies Appropriations Act of 1994 that was issued by the BLM Headquarters Office in Washington D.C. on October 18, 1994.  This listing and grandfather status is a guarantee by the United States Congress that the patent for the Banjo and Pass Claims will continue to be processed by BLM.

113.  Plaintiff is entitled to an order pursuant to 28 USC §§ 2201-2202 declaring and adjudging that the Banjo and Pass Claims are valid, the patent applicant and his successors-in-interest have a pre-existing right to a patent to the Banjo and Pass Claims and DOI should issue the patents.

## COUNT IV
### Declaratory Judgment that Banjo and Pass Claims Are Valid and Just Compensation to Shearer for a Patented Mining Claims

114.  Plaintiff incorporates paragraphs 1 through 114 above as if specifically alleged or pleaded herein.

115.  As described in detail above, DOI has already adjudicated the Banjo and Pass Claims are valid, Shearer holds title to the Banjo and Pass Claims, and there are no grounds to invalidate the Banjo and Pass Claims.  DOI should finally issue the patents for the Banjo and Pass Claims.

116.  Plaintiff is entitled to an order pursuant to 28 USC §§ 2201-2202

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

declaring and adjudging that the Banjo and Pass Claims are valid.

117. In the alternative, if the court does not order that the patents issue, the court should issue an order that Shearer, as the owner of Banjo and Pass, is entitled to just compensation for Banjo and Pass as patented mining claims, for any consentable ownership interest that the court may determine Shearer owned in the Banjo and Pass Claims prior to February 12, 1998.

## COUNT V
## Vacating the 2012 DOI Decisions

118. Plaintiff incorporates paragraphs 1 through 118 above as if specifically alleged or pleaded herein.

119. As described in detail above, the 2012 DOI Decisions are legally flawed, arbitrary and capricious, and issued without legal and statutory authority. The court must therefore conclude the 2012 DOI Decisions are unlawful, void, and must be set aside.

## COUNT VI
## Remand

120. Plaintiff incorporates paragraphs 1 through 120 above as if specifically alleged or pleaded herein.

121. As described in detail above, the 2012 DOI Decisions are legally flawed, arbitrary and capricious, and were issued without legal and statutory authority. The court must therefore conclude the 2012 DOI Decisions are unlawful, void, and must be set aside.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

122. As described in detail above, the manner in which DOI issued the 2012 DOI Decisions failed to provide Shearer notice and an opportunity to be heard and failed to comply with DOI statutes and regulations. DOI therefore violated Shearer's due process rights.

123. Alternatively, in light of DOI's due process violation and its failure to follow its own procedures, if the court does not grant the judgment requested above, it should remand this matter to DOI for proceedings consistent with DOI regulations and due process.

## RELIEF REQUESTED

WHEREFORE, plaintiff prays for the following relief:

1. For an order declaring and adjudging that the 2012 DOI Decisions are void and unlawful;

2. For an order declaring and adjudging that Plaintiff, to the exclusion of all other parties to this action, is the owner of the Banjo and Pass Claims and holds all rights to the patents to those Claims held by the patent applicant Michael R. Mark Anthony;

3. For an order declaring and adjudging that Plaintiff and the patent applicant Michael R. Mark Anthony have a pre-existing right to patent the Banjo and Pass Claims;

4. For an order declaring and adjudging that the Secretary of DOI issue the patents for Banjo and Pass under application AA-71472, effective as of May 29, 1996,

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

(or earlier) the date the original Second Half Final Certificate was approved and filed for signatures; or effective as of May 29, 1996, the date that the Acting Director for the BLM first signed his concurrence with the issuance of the mineral patent;

5.    For an order declaring and adjudging that that the patent to be issued to applicant Michael R. Mark Anthony inure to the benefit of, and are to be held in trust for current owner Paul G. Shearer;

6.    In the alternative, for an order remanding this case to the Department of Interior for adjudication consistent with due process and applicable statutes and regulations;

7.    In the alternative, for an order declaring and adjudging that Shearer is the owner of Banjo and Pass and is entitled to just compensation for Banjo and Pass as patented mining claims;

8.    For judgment in favor of Plaintiff and against the defendants;

9.    For Plaintiff's attorney fees and costs of this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 or any other applicable statutes; and

10.    For such other relief as this court deems just and equitable.

DATED this 6th day of February, 2018, at Anchorage, Alaska.


ASHBURN & MASON, P.C.
Attorneys for Plaintiff Paul G. Shearer

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

DATED: 2|6|18                    By: _Rebecca Typson_ 1306011
                                 ⟵ Matthew T. Findley
                                    Alaska Bar No. 0504009
                                    matt@anchorlaw.com

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

COMPLAINT
*Shearer v. Department of Interior, et al.*, No. A18-_____ CV.
{11641-000-00459486;1}