IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| PAUL G. SHEARER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| RYAN ZINKE, UNITED STATES ) | |
| DEPARTMENT OF INTERIOR, BUREAU ) | |
| OF LAND MANAGEMENT, and NATIONAL ) | |
| PARK SERVICE, ) | |
| ) | No. 3:18-cv-0035-HRH |
| Defendants. ) | |
| _____ ) | |


<u>O R D E R</u>

<u>Motion to Dismiss</u>

Defendants move to dismiss plaintiff's complaint.[1]  This motion is opposed.[2]  Oral

argument was not requested and is not deemed necessary.

<u>Background</u>

Plaintiff is Paul G. Shearer.  Defendants are Ryan Zinke, the Department of Interior

("DOI"), the Bureau of Land Management ("BLM"), and the National Park Service ("NPS").

---

[1]Docket No. 8.

[2]Docket No. 18.

This case involves two unpatented mining claims, the Banjo and Pass claims, which "are located in the Kantishna Mining District within Denali National Park and Preserve, Alaska[.]"[3] Plaintiff alleges that the Banjo and Pass mining claims were discovered in the late 1920s by Joseph Quigley; and that in 1937, Quigley and his wife "optioned" the claims to E. Fransen and C.M. Hawkins.[4] Plaintiff alleges that Fransen and Hawkins subsequently "assigned their option to Red Top" Mining Company.[5]

Plaintiff alleges that Red Top developed and mined the Banjo and Pass claims from 1938 to 1942, but ceased mining the claims in 1942 due to an executive order closing gold mines because they were nonessential to the war effort.[6] Plaintiff alleges that Michael R. Mark Anthony ("Anthony") acquired Red Top's interest in the Banjo and Pass claims sometime in the 1980s and that "on July 19, 1989, [he] filed a patent application . . . for the Banjo and Pass Claims. . . ."[7] Plaintiff alleges that Anthony's ownership of the Banjo and Pass Claims was confirmed in a quiet title action Anthony commenced in state court in 1991.[8] More specifically, plaintiff alleges that Anthony's ownership of the Banjo and Pass

---

[3]Complaint at 3, ¶ 16, Docket No. 1.

[4]<u>Id.</u> at 6, ¶¶ 21-22.

[5]<u>Id.</u> at 6, ¶ 22.

[6]<u>Id.</u> at 6-7, ¶¶ 23-24.

[7]<u>Id.</u> at 9, ¶ 28.

[8]<u>Id.</u> at 11, ¶ 32.

claims was confirmed by the court when it approved a 2000 settlement agreement reached by the parties (Anthony, Red Top, and plaintiff) to the quiet title action.[9]

Plaintiff alleges that he "purchased all of Anthony's rights to the Banjo and Pass Claims in 2005."[10] In addition, plaintiff alleges that the parties to the state quiet title action reached an agreement in 2005, in which Red Top assigned or transferred any remaining rights it might have had in the Banjo and Pass claims to plaintiff.[11] Plaintiff alleges that the 2000 and 2005 settlement agreements in the quiet title action, and the court orders approving same, "resolved all remaining issues that were brought, or could have been brought, by parties opposed to [plaintiff's] claims of interest in the Banjo and Pass Claims."[12]

"On November 14, 1997, . . . Congress passed an Appropriations Act for the Department of Interior that included 'Section 120,' a provision taking all mining claims in the Kantishna Mining District in Denali National Park and establishing a procedure to pay just compensation to the claim owners."[13] "Specifically, Section 120 allows owners of 'patented mining claims and valid unpatented mining claims . . .' within the Kantishna Mining District in the boundaries of Denali National Park to consent to a taking of their

---

[9]Id. at 32, ¶ 71.

[10]Id. at 33, ¶ 73.

[11]Id. at 33-34, ¶¶ 74-75.

[12]Id. at 34, ¶ 77.

[13]Id. at 14-15, ¶ 39.

claims by the Government."[14]  "Section 120 also provides for the payment of 'just compensation . . . of any valid claims to which title has vested in the United States pursuant to [Section 120], determined as of the date of taking.'"[15]

Plaintiff alleges that in February 1998, pursuant to Section 120, he and Red Top both "filed written consents to the taking of any interest in mining claims" that they owned as of February 1998.[16]  Plaintiff alleges that he did not own any interest in the Banjo and Pass claims in February 1998 because at that point in time, Anthony "was the owner of record of [the] Banjo and Pass" claims.[17]  Because Anthony did not consent to the taking of the Banjo and Pass claims, plaintiff contends that the Banjo and Pass claims have not been taken by the United States.

In November 2003, plaintiff filed a complaint in this court "seeking compensation under Section 120 for the claims he owned" that had been taken by the United States pursuant to his 1998 consent ("Case No. 263").[18]  In his original complaint in Case No. 263, plaintiff only sought compensation for "his ownership of . . . a 3.05 acre tract[] of the Doherty patented mining claim that [he] consented to have taken pursuant to . . . Section

---

[14]Id. at 15, ¶ 39 (quoting Pub. L. No. 105-83, § 120).

[15]Id.

[16]Id. at 15, ¶ 40.

[17]Id. at 16, ¶ 40.

[18]Id. at 16, ¶ 41.

120."[19]  However, in May 2005, plaintiff filed a first amended complaint in Case No. 263.[20]

In his first amended complaint, plaintiff sought compensation for additional mining claims

(Parcels 2-21), which included the Banjo and Pass claims (Parcel 7).[21]  Plaintiff alleged that

he had consented to the taking of whatever interest in the Banjo and Pass claims the Quigley

heirs had conveyed to him and that Red Top had consented to the taking of any interest it had

in the Banjo and Pass claims on or before February 12, 1998.[22]  Plaintiff also "reserve[d] the

right to amend [the first amended] Complaint to remove the Banjo and Pass mining claims

. . . from the list of Claims consented and proceed to complete the current patent application

which is in progress on those mining claims."[23]

    In September 2005, the United States moved for partial summary judgment in Case

No. 263.[24]  The United States argued that plaintiff's consent to the taking of Parcels 2-21

"was not effective to invoke the provisions of Section 120" because plaintiff had not

---

[19]Complaint in Case No. A03-cv-0263-JKS at 5, ¶ 19, Exhibit 1, Defendants' Motion to Dismiss, Docket No. 8.

[20]First Amended Complaint in Case No. A03-cv-0263-JKS, Exhibit 4, Defendants' Motion to Dismiss, Docket No. 8.

[21]Id. at 12-13, ¶ 47.

[22]Id.

[23]Id. at 16, ¶ 64.

[24]Exhibit 5, Defendants' Motion to Dismiss, Docket No. 8.

adequately described the claims at issue.[25]  This motion was denied, except as to claims that plaintiff had agreed should be dismissed.[26]  Plaintiff had not agreed that the Banjo and Pass claims should be dismissed.

In 2007, plaintiff filed a second amended complaint in Case No. 263.[27]  In the second amended complaint, as to the Banjo and Pass claims, plaintiff again alleged that he had consented to the taking of whatever interest had been conveyed to him by the Quigley heirs and that Red Top had consented to the taking of whatever interest it had as of February 1998.[28]  And, plaintiff again reserved the right to amend his complaint as to the Banjo and Pass claims to remove them from the consent list and proceed with completing the patent application that Anthony had filed in 1989.[29]

In 2008, plaintiff and the United States reached a settlement as to most of plaintiff's claims in Case No. 263.[30]  The settlement agreement did not, however, involve the Banjo and Pass claims.[31]

---

[25]Id. at 2.

[26]Order at 5, Exhibit 6, Defendants' Motion to Dismiss, Docket No. 8.

[27]Docket No. 114 in Case No. 3:03-cv-0263-TMB.

[28]Id. at 13-14, ¶ 47.

[29]Id. at 17, ¶ 64.

[30]Order re Granting in Part Defendant's Motion to Dismiss at 1, Exhibit 7, Defendants' Motion to Dismiss, Docket No. 8.

[31]Id.

In April 2011, the United States filed a renewed motion to dismiss in Case No. 263.[32]
On January 6, 2012, the court granted the renewed motion to dismiss in part and denied it in
part.[33] Plaintiff's claim for Section 120 compensation for the Banjo and Pass claims was not
dismissed because the United States did not move to dismiss this claim.[34] However, the court
did address plaintiff's "reservation of the right to 'amend this Complaint to remove the Banjo
and Pass mining claims . . . from the list of claims consented to [under Section 120]. . . .'"[35]
The court observed that "if Shearer successfully consented to the taking of those parcels
under Section 120, title will have vested in the United States, and he cannot simply take the
property back."[36] The court further observed that it had "already ruled, over the Govern-
ment's objection, that any interest held by Shearer in [the Banjo and Pass mining claims] was
taken under Section 120 by the Government with Shearer's consent."[37] The court also stated
that it had never "held[] that Shearer had perfected his title [of the Banjo and Pass claims]
at the time he consented to their taking by the Government. The [c]ourt's ruling was merely
that Shearer [in February 1998] had consented to the taking of any title that he had in these

_____

[32]Docket No. 162 in Case No. 3:03-cv-0263-TMB.

[33]Order re Granting in Part Defendant's Motion to Dismiss at 1, Exhibit 7, Defen-
dants' Motion to Dismiss, Docket No. 8.

[34]Id. at 1.

[35]Id. at 6.

[36]Id.

[37]Id.

parcels."[38]  The court thus rejected plaintiff's "assertion of a reservation of right to withdraw consent" because the court had "already ruled on the validity of Shearer's consent to the taking of the Banjo and Pass claims . . . , and there is no reason to believe that the [c]ourt would ever revisit the ruling and find that the consent was invalid."[39]

Shortly after the court entered the order on the United States' renewed motion to dismiss in Case No. 263, the DOI issued the first of two 2012 decisions involving the validity of the Banjo and Pass claims, which had been the subject of administrative proceedings for a number of years.  As set out above, Anthony had filed a patent application for the Banjo and Pass claims in 1989,[40] and in 1995, the DOI approved the First Half Final Certificate for the claims.[41]

> Issuance of the FHFC "[c]onfirms [that] equitable title is vested in the applicant, subject to the confirmation of a discovery of a valuable mineral deposit by a mineral examiner," and "[c]ertifies that the applicant has satisfactorily complied with all of the 'paperwork' requirements of the Mining Law (title, proofs, posting requirements, purchase money)."

Independence Min. Co. v. Babbitt, 885 F. Supp. 1356, 1357-58 n.3 (D. Nev. 1995) (quoting Bureau of Land Management, Processing Mineral Patent Applications H–3860–1, Rel. No. 3–265, at VI–1 (1991)).  But, in 2003, "BLM, on behalf of NPS, initiated an administrative

---

[38]Id.

[39]Id. at 7.

[40]Complaint at 9, ¶ 28, Docket No. 1.

[41]Id. at 4, ¶ 17.

adjudication of the validity of the Banjo and Pass [c]laims."[42]  In 2011, the IBLA issued a

decision upholding the validity of the Banjo and Pass claims.[43]

On February 9, 2012, however, Secretary of Interior Ken Salazar issued a decision

cancelling the First Half Final Certificate.[44]  Salazar's decision explained that the certificate

was being cancelled because at the time that Red Top had filed the necessary Federal Land

Policy and Management Act ("FLPMA") paperwork in 1979,[45] it was not the owner of the

claims and thus the claims were deemed abandoned as of December 30, 1980, by operation

of law.[46]

On April 5, 2012, Marcilynn Burke, DOI Acting Assistant Secretary for Land and

Minerals Management, issued a final decision on the validity of the Banjo and Pass claims.

Burke declared the Banjo and Pass claims "abandoned and void as of October 22, 1979, for

failure to comply with the initial recording requirements of Section 314 of" FLPMA and

---

[42]Id. at 17, ¶ 43.

[43]Id. at 18-19, ¶ 47.

[44]Decision at 1, Exhibit 10, Complaint, Docket No. 1.

[45]FLPMA, which was enacted in 1976, "required the owners of preexisting mining
claims to record their claims . . . with DOI . . . by October 22, 1979" and required owners to
file yearly affidavits of annual assessment work.  Complaint at 8, ¶ 26, Docket No. 1.
"Failure to timely file these required FLPMA instruments constitutes abandonment of the
mining claim."  Id.  Plaintiff alleges that Red Top and Anthony timely filed all documents
required by FLPMA.  Id. at 29, ¶ 64.

[46]Decision at 2-3, Exhibit 10, Complaint, Docket No. 1.

BLM's implementing regulations.[47]  Burke then rejected Anthony's patent application because he was "not the holder of these mining claims as of the date [he] applied for patent."[48]

In May 2013, plaintiff moved for partial summary judgment in Case No. 263.[49]  On March 10, 2014, the court entered an order denying plaintiff's motion for partial summary judgment and dismissing plaintiff's claim for Section 120 compensation for the Banjo and Pass claims without prejudice.[50]  The court found that it did not have jurisdiction of plaintiff's Section 120 compensation claim for the Banjo and Pass claims because "Shearer no longer holds a valid mining claim for which he can be compensated pursuant to Section 120[.]"[51]  The court explained that

> [t]he undisputed facts show that Secretary of the Interior Babbitt issued the First Half Final Certificate ("FHFC") for the Banjo and Pass mining claims on January 5, 1995.  BLM approved issuance of the Second Half Final Certificate ("SHFC") on March 3, 1995, and the IBLA issued its final decision upholding the validity of the Banjo and Pass mining claims on January 12, 2011.  But on February 9, 2012, Secretary Salazar canceled the FHFC issued by Secretary Babbitt, and on April 5, 2012, Acting Assistant Secretary Burke determined that the Banjo and Pass mining claims were "abandoned and void" no later than

---

[47]Decision at 1, Exhibit 12, Complaint, Docket No. 1.

[48]Id. at 2.

[49]Docket No. 211 in Case No. 3:03-cv-0263-TMB.

[50]Order at 1, Docket No. 226 in Case No. 3:03-cv-0263-TMB.

[51]Id. at 7.

> December 30, 1980 and rejected [p]laintiff's patent
> application.[52]

The court also observed that in order for plaintiff to challenge the two 2012 DOI administrative decisions "invalidating his mining claims," he would have to file a claim under the Administrative Procedure Act.[53]

Plaintiff did not amend his complaint in Case No. 263 to add an APA claim. Instead, plaintiff appealed, and the Court of Appeals affirmed the dismissal of his Section 120 compensation claim for the Banjo and Pass claims.[54]

On February 7, 2018, plaintiff commenced this action. In his complaint, plaintiff asserts six claims. Count I is a claim seeking a declaratory judgment that the 2012 DOI decisions are invalid. Count II is a claim seeking a declaratory judgment that plaintiff holds title to the Banjo and Pass claims. Count III is a claim seeking a declaratory judgment that DOI should issue patents for the Banjo and Pass claims. Count IV is a claim for a declaratory judgment that plaintiff is entitled to Section 120 compensation for the Banjo and Pass claims. Counts V and VI are APA claims in which plaintiff seeks judicial review of the 2012 DOI decisions. For relief on his claims, plaintiff seeks an order declaring the 2012 DOI decisions void and unlawful, an order declaring that he is the owner of the Banjo and Pass

---

[52]Id.

[53]Id. at 8.

[54]A copy of the memorandum decision is attached as Exhibit 12 to Defendants' Motion to Dismiss, Docket No. 8.

claims, and an order directing the Secretary of Interior to issue patents for the Banjo and Pass claims or remanding this matter to the DOI.[55]  In the alternative, plaintiff seeks an order declaring that he is entitled to Section 120 compensation for the Banjo and Pass claims.[56]

Despite the labels that plaintiff has put on his claims, the court is treating this case as an administrative agency appeal.[57]  Plaintiff alleges that the 2012 DOI decisions are arbitrary and capricious because

> (1) DOI misinterpreted the applicable statutes and regulations, including FLPMA; (2) DOI failed to consider other evidence on record regarding the 2005 Fairbanks Court Order that establishes the correct chain of title, which in turn establishes that the correct party made the FLPMA filings in 1979 and later; (3) DOI failed to consider the complete context of all the settlement documents in its possession that controlled the scope of the 2005 Fairbanks Court Order; (4) DOI did not have authority to issue [the 2012 decisions]; (5) DOI waived the right to raise the issues by not raising them in a previous 2008 Settlement between Shearer and DOI; and (6) DOI violated Shearer's due process rights and its own regulations by failing to provide notice and an opportunity to be heard, and by failing to engage in any process to establish the issues of fact or analysis whatsoever, before issuing the 2012 DOI decisions.[[58]]

---

[55]Complaint at 53-54, Docket No. 1.

[56]<u>Id.</u>

[57]Docket No. 13 at 1.

[58]Complaint at 5-6, ¶ 20, Docket No. 1.

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendants now move to dismiss all of plaintiff's claims because plaintiff lacks constitutional standing and because his Section 120 compensation claim is barred by the statute of limitations.

## Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, defendants have made a factual attack. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. "The court need not presume the truthfulness of the plaintiff's allegations." Id.

"The 'irreducible constitutional minimum of standing' consists of three elements: the plaintiff must have (1) suffered an injury in fact; (2) that was caused by the defendant's challenged conduct; and (3) that would be redressed by the remedy the plaintiff seeks." Desert Water Agency v. U.S. Dep't of the Interior, 849 F.3d 1250, 1253 (9th Cir. 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Defendants argue that plaintiff lacks standing because he cannot establish that his alleged injuries are likely to be redressed by the remedy he seeks. "Determining redressability 'requires an analysis of

whether the court has the power to right or to prevent the claimed injury.'" <u>Barnum Timber Co. v. U.S. E.P.A.</u>, 633 F.3d 894, 899 (9th Cir. 2011) (quoting <u>Gonzales v. Gorsuch</u>, 688 F.2d 1263, 1267 (9th Cir. 1982)).

Defendants contend that plaintiff is seeking a reversal of the DOI decisions that the Banjo and Pass claims were abandoned by operation of law and therefore did not exist when plaintiff consented to their taking. But, defendants argue that plaintiff would not be entitled to any relief if the court were to set aside the 2012 DOI decisions because if plaintiff consented to the taking of the Banjo and Pass claims, as he has previously alleged and as this court has previously found, then he cannot possibly have any ownership interest in the Banjo and Pass claims. Defendants argue that because plaintiff consented to the taking of the Banjo and Pass claims, title to the claims is now in the United States, and the court could not declare that plaintiff is the owner of the Banjo and Pass claims or direct the Secretary of Interior to issue patents for the Banjo and Pass claims. Defendants insist that if plaintiff were to prevail on his claims to set aside the 2012 DOI decisions, any rights he may have held as to the Banjo and Pass claims have been taken by the United States and cannot be restored to him. <u>See</u> <u>Higginson v. United States</u>, 384 F.2d 504, 507 (6th Cir. 1967) ("title to property which is vested in the United States government cannot be returned to the original land owners without Congressional authorization").

Plaintiff argues that there are several problems with defendants' argument. First of all, he disputes that he ever consented to the taking of his 100% unencumbered title to the

Banjo and Pass claims, primarily because he did not acquire that title until 2005, several years after he submitted his Section 120 consent in 1998. Plaintiff also points out that in Case No. 263, the Government took the position "that the required section 120 consent for taking submitted by Shearer did not include any property other than the 3.05 acres of the Doherty lode claim"[59] and that the Transfer of Property Ownership that the Government recorded in 1998 only lists 13.6 acres of the Doherty Lode claim.[60] Plaintiff argues that this shows that the Government did not previously believe that he had consented to the taking of the Banjo and Pass claims but rather that he had only consented to the taking of the Doherty Lode claim. Plaintiff argues that he is seeking a declaration that his title to the Banjo and Pass claims is valid and that he has alleged that title to the Banjo and Pass claims never passed to the United States. He insists that he is not seeking to divest the United States of title; rather, he is seeking a declaration that title to the Banjo and Pass claims remains with him. Thus, plaintiff argues that there is relief that the court could grant to redress his injuries.

Plaintiff disputes that the court in Case No. 263 found that he had consented to the taking of the Banjo and Pass claims. Plaintiff argues that Judge Burgess merely ruled that he had consented to the taking of whatever interest he had in the Banjo and Pass claims in 1998. Because plaintiff alleges that he did not acquire a 100% interest in those claims until 2005, he argues that he could not have consented to the taking of the entirety of the Banjo

---

[59]Fourth Joint Status Report at 15, Exhibit 25, Complaint, Docket No. 1.

[60]Exhibit 8 at 1, Complaint, Docket No. 1.

and Pass claims in 1998. Plaintiff contends that if he did not hold clear title to the Banjo and Pass claims in 1998, as he alleges, then any consent he made to their taking was ineffective. Plaintiff also argues that if he held title that was encumbered or undivided, then his consent was also ineffective.

Plaintiff acknowledges that he alleged in his first and second amended complaints in Case No. 263 that he had consented to the taking of the Banjo and Pass claims. But, plaintiff argues that he is not judicially estopped from arguing to the contrary now.

Under the judicial estoppel doctrine, "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . .'" Baughman v. Walt Disney World Co., 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). Plaintiff argues that judicial estoppel would not apply here because in Case No. 263 there was no ruling regarding title to the Banjo and Pass claims and because he did not succeed on his claim for Section 120 compensation for the Banjo and Pass claims.

Defendants, however, argue that plaintiff should be judicially estopped from arguing that he did not consent to the taking of the Banjo and Pass claims. Defendants emphasize that in his first amended complaint in Case No. 263, plaintiff alleged that his "ownership in the [Banjo and Pass] Claims is no longer being disputed by the parties [and he] can now

proceed to recover from the Government Defendants just compensation for the Claims. . . ."[61]

Defendants also emphasize that plaintiff alleged that he owned "all rights, title, and interest in the mining claims" which were "enumerated below in the section titled 'Mining Claims Subject to Individual Consent Declaration of Taking.'"[62]  Given that the Banjo and Pass claims were included in the claims "enumerated below", defendants argue that there can be no dispute that plaintiff alleged in prior litigation that he owned the Banjo and Pass claims and that he consented to their taking.  Defendants also argue that there can be no dispute that Judge Burgess held that the Banjo and Pass claims were subject to the consent and were thus taken by operation of Section 120.

Plaintiff is not judicially estopped from contending in this action that he did not consent to the taking of his 100% interest in the Banjo and Pass claims.  In the previous action, plaintiff alleged, and Judge Burgess determined, that plaintiff had consented to the taking of whatever interest he had in the Banjo and Pass claims in 1998.  Plaintiff has alleged that he did not have a 100% interest in the Banjo and Pass claims until 2005.  Moreover, plaintiff was not successful in Case No. 263 as to his Section 120 compensation claim, which means that judicial estoppel does not apply here.

Plaintiff next argues that defendants are ignoring the fact that some of his claims are administrative challenges to the 2012 DOI decisions and that he has standing to bring an

---

[61]First Amended Complaint at 9-10, ¶ 37, Exhibit 4, Defendants' Motion to Dismiss, Docket No. 8.

[62]Id. at 3, ¶ 9.

APA claim, even if the only redress he can obtain is a declaration that the decisions were arbitrary and capricious. Plaintiff aptly argues that if the court were to decide that the 2012 DOI decisions were invalid, such a decision would allow him to pursue his patent claims.

As for plaintiff's Section 120 compensation claim, defendants argue that this claim is barred by the statute of limitations. Section 120 provides that actions seeking compensation pursuant to Section 120 must be brought "no later than six years after the date of the enactment of this section." Department of Interior and Related Agencies Appropriations Act, 1998, PL 105–83, § 120, 111 Stat 1543 (1997). Plaintiff did not file this action until February 2018, long after the six years would have expired.

Although defendants have couched their statute of limitations argument as a Rule 12(b)(1) jurisdictional argument, there is nothing in Section 120 that suggests that the statute of limitations is jurisdictional. "[U]nless Congress has 'clearly state[d]' that the statutory limitation is jurisdictional, 'courts should treat' a statute of limitations "'as nonjurisdictional in character.'" United States ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc., 720 F.3d 1174, 1176 (9th Cir. 2013) (quoting Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013)).

Because the statute of limitations in Section 120 is nonjurisdictional, defendants' argument that plaintiff's Section 120 claim is "barred by the statute of limitations . . . should have been raised through a Rule 12(b)(6) motion to dismiss for failure to state a claim, not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." Supermail Cargo, Inc. v. United

States, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).  "A Rule 12(b)(6) motion to dismiss on statute of limitations grounds may be granted 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  Ilaw v. Daughters of Charity Health System, Case No. 11–cv–02752–LHK, 2012 WL 381240, at *4 (N.D. Cal. Feb. 6, 2012) (quoting Morales v. City of L.A., 214 F.3d 1151, 1153 (9th Cir. 2000)).

Because the statute of limitations in Section 120 is not jurisdictional, then it is subject to equitable tolling.  Okafor v. United States, 846 F.3d 337, 340 (9th Cir. 2017).  "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  Plaintiff argues that there can be no question that he has been diligently pursuing his rights.  As for extraordinary circumstances, plaintiff argues that the only reason that the statute of limitations has run on his Section 120 compensation claim is because of the Government's efforts to delay deciding both his Section 120 claim[63] and the validity of the Banjo and Pass claims.  He emphasizes that he timely filed his original Section 120 suit and that the only reason that suit was dismissed was because of the invalid 2012 DOI decisions.

---

[63]Case No. 263 was stayed as the Banjo and Pass claims pending resolution of the adminstrative proceedings.  Docket No. 138 at 2, Case No. A03-cv-0263-JKS.

Defendants argue that plaintiff would not be entitled to equitable tolling because this doctrine "'focuses on the plaintiff's excusable ignorance of the limitations period. . . .'" Supermail Cargo, 68 F.3d at 1207 (quoting Naton v. Bank of Calif., 649 F.2d 691, 696 (9th Cir. 1981)). Here, there is no suggestion that plaintiff was not aware of the six-year statute of limitations period. Defendants point out that in Case No. 263, after the 2012 DOI decisions were issued, the Government indicated that it would not oppose plaintiff amending his complaint to add an APA claim for review of the 2012 DOI decisions.[64] Defendants argue that if plaintiff had amended his complaint in Case No. 263, then he would not have had to bring this action and there would not be any statute of limitations problem as to his Section 120 compensation claim for the Banjo and Pass claims.

If plaintiff had amended his complaint in Case No. 263 to add an APA claim and prevailed on that claim, then he could have repled his Section 120 claim and it would have related back to his original complaint, which was timely. But, that is not what he did. He instead chose to file a new lawsuit, which means that his current Section 120 claim cannot relate back to his Section 120 claim in Case No. 263. Plaintiff's Section 120 compensation claim is barred by the six-year statute of limitations, and it is dismissed.

But, as to plaintiff's other claims, and contrary to defendants' contention, there is relief that the court can grant that would redress plaintiff's injuries. Plaintiff only consented

---

[64]Joint Status Report at 8-9, Exhibit 13, Defendants' Motion to Dismiss, Docket No. 8.

-20-

to the taking of whatever interest he held in the Banjo and Pass claims as of 1998 when his consent was filed. Based on what is currently before the court, it appears that plaintiff did not own any interest in the Banjo and Pass claims in 1998. Thus, if the court were to set aside the 2012 DOI decisions, plaintiff could continue to pursue the patent application for the Banjo and Pass claims. Plaintiff has arguably suffered an injury caused by defendants which is redressable.

Conclusion

Defendants' motion to dismiss is granted in part and denied in part. The motion is granted as to Count IV of plaintiff's complaint, which seeks Section 120 compensation for the Banjo and Pass claims. Count IV is dismissed with prejudice because this claim is barred by the statute of limitations. Defendants' motion to dismiss is otherwise denied.

DATED at Anchorage, Alaska, this 9th day of November, 2018.

/s/ H. Russel Holland
United States District Judge