Matthew T. Findley
matt@anchorlaw.com
Eva R. Gardner
eva@anchorlaw.com
Ashburn & Mason, P.C.
1227 W. 9th Avenue Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
Facsimile: (907) 277-8235
Attorneys for Paul G. Shearer

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| PAUL G. SHEARER, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:18-cv-00035-HRH |
| DAVID BERNHARDT, UNITED STATES | ) Patent Application AA-71472 |
| DEPARTMENT OF INTERIOR, BUREAU | ) |
| OF LAND MANAGEMENT, AND | ) |
| NATIONAL PARK SERVICE, | ) |
| | ) |
| Defendants-Appellees. | ) |
| _____ | ) |

## <u>OPENING BRIEF OF PAUL SHEARER</u>

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................4

INTRODUCTION ......................................................................................................6

JURISDICTIONAL STATEMENT .............................................................................7

ISSUES PRESENTED ...............................................................................................7

STATEMENT OF THE CASE ....................................................................................8

    I.      BANJO AND PASS CLAIMS AND CHAIN OF TITLE. ...............................................8

    II.    FEDERAL LAWS AFFECTING THE CLAIMS .........................................................10

    III.   NUMEROUS FAIRBANKS STATE COURT RULINGS ESTABLISH THAT ANTHONY ACQUIRED VALID TITLE TO THE CLAIMS FROM RED TOP, WHICH HAD HELD VALID TITLE TO THEM SINCE AT LEAST 1976. ......................................................................12

    IV.   AS OF 1996, DOI HAD CONFIRMED THE CLAIMS WERE PATENTABLE, ACCEPTED EVIDENCE OF OWNERSHIP, ISSUED THE FHFC, AND RECOMMENDED THAT THE CLAIMS PROCEED TO PATENT. .......................................................................17

    V.    DOI LAUNCHED A CAMPAIGN ON BEHALF OF NPS TO CHALLENGE THE CLAIMS' PATENTABILITY VIA ADMINISTRATIVE PROCESS. ..........................................20

    VI.   THE SECRETARY SPONTANEOUSLY RESCINDED THE FHFC AND CANCELED THE PATENT APPLICATIONS WITHOUT NOTICE OR PROCESS. ....................................23

SUMMARY OF THE ARGUMENT .........................................................................25

ARGUMENT ...........................................................................................................26

    I.      STANDARD OF REVIEW ..................................................................................26

    II.    THE 2012 DECISIONS VIOLATED LONGSTANDING BLM PRACTICE AND WERE ISSUED WITHOUT AUTHORITY. .....................................................................26

    III.   THE 2012 DECISIONS WERE FOUNDED ON LEGALLY ERRONEOUS ASSUMPTIONS REGARDING RED TOP'S AND ANTHONY'S OWNERSHIP OF THE CLAIMS. ...............................................................................................................28

    IV.   THE 2012 DECISIONS MISAPPLIED THE REQUIREMENTS OF FLPMA. ..............30

    V.    DOI'S REVOCATION OF THE FHFC IS FATALLY FLAWED BECAUSE IT WAS UNTIMELY AND FAILED TO TAKE INTO ACCOUNT SHEARER'S LEGITIMATE RELIANCE ON THE FHFC. ...............................................................................................33

    VI.   ISSUANCE OF A WRIT OF MANDAMUS IS APPROPRIATE. ...............................35

    VII.  IN THE ALTERNATIVE, THE COURT SHOULD AWARD SHEARER JUST COMPENSATION FOR DOI'S UNCONSTITUTIONAL TAKING OF HIS PROPERTY RIGHTS. ...............................................................................................................37

OPENING BRIEF OF PAUL SHEARER                          Page 2 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 2 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

VIII.   In the Alternative, this Matter Should Be Remanded Because the 2012 Decisions Violated Shearer's Due Process Rights. ..................................38

**CONCLUSION** ...........................................................................................**40**



# TABLE OF AUTHORITIES

**Cases**

*Azurin v. Von Raab*, 803 F.2d 993 (9th Cir. 1986)..................................................35

*Barrick Goldstrike Mines, Inc. v. Babbitt*, No. CV-N-93-550 HDM (PHA), 1995 WL 408667 (D. Nev. Mar. 21, 1994) ...............................................37

*Cities of Anaheim, Riverside, Banning, Colton & Azusa, Cal. v. F.E.R.C.*, 723 F.2d 656 (9th Cir. 1984)..................................................33, 35

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .......................33, 35

*Fallini v. Hodel*, 783 F.2d 1343 (9th Cir. 1986) ..................................................37

*Freese v. United States*, 639 F.2d 754 (Ct. Cl. 1981) ..........................................38

*Gammelgaard v. Hillis Peak Enter., Inc.*, 842 P.2d 457 (Or. App. 1992) ............32

*Hickel v. Oil Shale Corp.*, 400 U.S. 48 (1970)....................................................37

*Jackson, et al. v. Robertson, et al.,* 763 F.2d 1176 (10th Cir. 1985)....................32

*Marathon Oil Co. v. Lujan*, 751 F. Supp. 1454 (D. Colo. 1990) .........................36

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..........................................................39

*N. Am. Transportation & Trading Co. v. United States*, 53 Ct. Cl. 424 (1918) .............38

*Oil Shale Corp. v. Morton*, 370 F.Supp. 108 (D. Colo. 1973) .............................38

*Perego v. Dodge,* 163 U.S. 160 (1896) ..........................................................24, 29

*State of S.D. v. Andrus*, 614 F.2d 1190 (8th Cir. 1980) .......................................36

*Swanson v. Babbitt*, 3 F.3d 1348 (9th Cir. 1993).......................................35, 36, 37, 38

*Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306 (1929) ...........................37

**Statutes**

111 Stat. 1543 ..................................................................................................11, 12

16 U.S.C. § 410hh-1 (2006) ......................................................................................11

28 U.S.C. § 1361 .........................................................................................................7

28 U.S.C. § 2201-2202 ...............................................................................................7

30 U.S.C. § 21 *et seq.* .............................................................................................7, 8

30 U.S.C. § 29 .....................................................................................................17, 25

43 C.F.R. § 3833.0-5(e) (1977) ...............................................................................31

43 C.F.R. § 3833.0-5(e) (1984) ...............................................................................31

43 C.F.R. § 3833.0-5(e) (1996) ...............................................................................31

43 CFR § 4.5(c) ........................................................................................................39

43 U.S.C. § 1701 *et seq.* .............................................................................................7

43 U.S.C. § 1744 ...............................................................................10, 31, 32, 33

5 U.S.C. § 704 .............................................................................................................7

5 U.S.C. § 706 ...........................................................................................................26

5 U.S.C. §§ 701-706 ...................................................................................................7

AS 09.10.030 .............................................................................................................15

AS 09.10.040 .............................................................................................................15

AS 09.10.050 .............................................................................................................15

ASHBURN & MASON p.c.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200

ANCHORAGE, ALASKA 99501

TEL 907.276.4331 · FAX 907.277.8235

OPENING BRIEF OF PAUL SHEARER                                    Page 4 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 4 of 41

Pub. L. No. 103-332 ............................................................................................................. 11
Pub. L. No. 105-83 ............................................................................................................... 11
Pub. L. No. 96-487 ............................................................................................................... 11

**Regulations**
7 Fed. Reg. 7992-93 (Oct. 8, 1942) ...................................................................................... 9
37 Fed. Reg. 5579 (Mar. 16, 1972) ..................................................................................... 10
43 CFR § 3837.30 ................................................................................................................ 20

**Agency Decisions and Policies**
177 IBLA 120 (IBLA April 15, 2009) ................................................................................. 23
180 IBLA 308 (IBLA Jan. 12, 2011) .............................................................................. 21, 22
BLM Manual 3860 ......................................................................................................... 19, 29
BLM Manual 3862 ............................................................................................................... 27

OPENING BRIEF OF PAUL SHEARER                                              Page 5 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 5 of 41

## **INTRODUCTION**

This is an administrative appeal of two decisions issued by the United States Department of the Interior ("DOI") in 2012 that erroneously and unconstitutionally stripped all value from two mining claims owned by Plaintiff-Appellant Paul Shearer, despite DOI's prior certification that the claims were valid and the significant reliance interests that certification had engendered. Shearer brings this appeal to vacate the improper 2012 decisions and finally obtain the patents on his claims that should have issued when they were first certified in 1996.

Shearer's mining claims are within Denali National Park and Preserve ("Denali"), near Kantishna. He and his predecessors-in-interest spent decades, and hundreds of thousands of dollars, perfecting title and seeking a patent from DOI. In 1996, DOI certified the patent application and recommended that the claims be patented—but never issued the patents. Instead, apparently motivated by an interest in converting the area to protected parkland on behalf of the National Park Service ("NPS"), DOI began a multi-year campaign to invalidate the claims, which continues to this day. It attempted to challenge the claims on multiple grounds, in multiple administrative proceedings before the DOI Office of Hearings and Appeals ("OHA") and the Interior Board of Land Appeals ("IBLA"), without success. Shearer and his predecessor-in-interest vigorously defended the claims in those proceedings at significant expense.

DOI's last gambit was its most brazen. *Sixteen years* after DOI staff approved the patent claims, the Secretary in 2012 spontaneously issued two decisions outside the

OPENING BRIEF OF PAUL SHEARER                                    Page 6 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 6 of 41

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

normal administrative process that denied the long-pending patent application and stripped the claims of all value. The decisions were rife with constitutional and legal errors: they were issued without any notice to Shearer and without allowing him any opportunity to be heard, and founded on clear misunderstandings of the law, the patent application, and prior title rulings entered by the Alaska Superior Court.

## JURISDICTIONAL STATEMENT

The 2012 Decisions constitute a final agency action under 5 U.S.C. § 704. Shearer timely filed this appeal. As stated in more detail in the Complaint, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the Mining Law of 1872, 30 U.S.C. § 21 *et seq.*; the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. This Court has authority to issue the relief requested under 28 U.S.C. § 2201-2202 and 5 U.S.C. §§ 701-706. In addition, this Court has authority to enter a writ of mandamus under 28 U.S.C. § 1361.

## ISSUES PRESENTED

1. Whether DOI's 2012 Decisions should be vacated, on one or more of the following grounds:

   a. The decisions were untimely and improper.
   b. The decisions misinterpreted the Alaska Superior Court's title rulings.
   c. The decisions misapplied the requirements of FLPMA.

2. Whether a writ of mandamus should issue requiring the claims to be patented.

3. In the alternative, whether Shearer is entitled to a hearing to establish just compensation for the claims under the Fifth Amendment of the U.S. Constitution or a remand.

OPENING BRIEF OF PAUL SHEARER                                     Page 7 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 7 of 41

## STATEMENT OF THE CASE[1]

### I.    Banjo and Pass Claims and Chain of Title.

This case involves Shearer's interests in two contiguous mining claims located under the Mining Law of 1872: the Banjo and Pass claims (collectively, "Claims"), located in the Kantishna Mining District within Denali National Park and Preserve in Alaska.[2] The Claims shown in U.S Mining Survey 2510 are rectangular, contiguous along strike, and total 35.709 acres.[3]

Like many mining claims in Alaska, the Claims have changed hands numerous times over the decades. Joseph Quigley first discovered the Claims in 1928 and 1929.[4] After Quigley was injured in a mining accident, Quigley and his wife optioned Banjo, Pass, and numerous additional mining claims to E. Fransen and C.M. Hawkins in 1937 via a written contract ("1937 Option Contract" or "Option Contract").[5] Fransen and Hawkins subsequently assigned their option to Red Top Mining Company ("Red Top").[6] From this point on, two parallel chains of title developed. One was the Fransen

---

[1]  The majority of the documents referenced in this brief are included in the Administrative Record that was filed by DOI. Because the decisions on review were not issued in the course of an administrative proceeding, and because Shearer was not allowed an opportunity to be heard before their issuance, the Administrative Record does not contain all essential documents. Certain additional documents are therefore referenced in this brief. Shearer is filing a separate motion requesting that the Court take notice of these documents.

[2] The Mining Law of 1872 is codified at 30 U.S.C. § 21 *et seq*. Banjo is BLM Serial No. F-54240. Pass is BLM Serial No. F-54241.

[3] Answer ¶ 15, 21; R. 168, 462.

[4] R. 322-23.

[5] R. 324-30.

[6] R. 331, 241 (more legible transcription).

OPENING BRIEF OF PAUL SHEARER                                    Page 8 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

and Hawkins/Red Top chain of title—the "Optionee" chain of title. The other was the "Optionor" chain of title, flowing from the Quigleys' remaining interest (if any) in the Option Contract.

Those with the Optionee chain of title initially occupied and developed the claims. Red Top mined the Claims from 1938 to 1942.[7] From 1939 through 1941, Banjo alone produced 6,259.9 troy ounces of gold and 7,113.8 ounces of silver, from 13,653 tons of extracted ore.[8] Red Top ceased operations in 1941 as a result of a federal order closing gold mines as nonessential to the war effort.[9] Red Top transferred some mining interests subject to the 1937 Option Contract to Kantishna Mines, Ltd. ("KML"),[10] but Red Top continued to own and maintain Banjo and Pass until 1988.[11] By 1988, Michael Richard Mark Anthony ("Anthony") had acquired a significant percentage of the shares in Red Top.[12] By 1989, he had acquired 95% ownership of the Claims.[13]

The Optionor interests (if any), however, continued to be tracked throughout this time. Shearer came into the picture in 1992 when he began acquiring Optionor interests in various Denali mining claims in 1992, including the Claims, and sought to quiet

---

[7] R. 124-25.

[8] R. 468.

[9] R. 468; Federal Limitation Order L-208, 7 Fed. Reg. 7992-93 (Oct. 8, 1942), as amended.

[10] Compl. Ex. 15 (confirming title in KML as against Optionor/Quigley interests).

[11] R. 40-97.

[12] R. 99-110; R. 125.

[13] R. 100-101.

OPENING BRIEF OF PAUL SHEARER                                                      Page 9 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

title.[14]  By 1995 he had acquired 100% of the Optionor interests (if any) in the Claims.[15] However, multiple Alaska Superior Court rulings, described *infra*, established that the Claims' "true" chain of title followed the Optionee (Fransen and Hawkins/Red Top) interests, which vested 100% title in Red Top no later than 1976 and subsequently in Anthony.[16] Shearer redirected his efforts toward acquiring the Optionee interest in the Claims, and by 2005, he had acquired 100% of the Optionee interest from Anthony though a series of litigation settlements.[17]

## II.    Federal Laws Affecting the Claims

Since the Claims' discovery, several pieces of federal legislation have affected them.   In 1972, to implement the requirements of the Alaska Native Claims Settlement Act, DOI withdrew the land around the Claims from mineral entry, but preserved valid existing rights.[18]  In 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA"), which required the owners of preexisting mining claims to record their claims with DOI by October 22, 1979.[19]  Section 314 of FLPMA also imposed ongoing reporting requirements for claim owners.[20] If the owners failed to timely file any of the required documents, their claims were considered abandoned.[21]   From September 1,

---

[14] R. 209-13, 453-59.

[15] R. 209-13, 453-59; Compl. ¶ 40, 59.

[16] *Infra* at 12-16.

[17] Compl. Ex. 19, 20, 22.

[18] PLO No. 5178, 37 Fed. Reg. 5579, 5582 (Mar. 16, 1972); Answer ¶ 25.

[19] 43 U.S.C. § 1744.

[20] *Id.*; *see also* Answer ¶ 26.

[21] *Id.*

OPENING BRIEF OF PAUL SHEARER                                    Page 10 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

1977 to December 30, 1988, Red Top timely filed all documents required by FLPMA.[22] From 1988 to 1993, Anthony timely filed all documents required by FLPMA.[23]

On December 2, 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA").[24] ANILCA expanded Denali National Park to include the Kantishna Mining District, thus surrounding the Claims with park land, but preserved the owner's existing rights.[25] On October 18, 1994, Congress passed the Interior and Related Agencies Appropriations Act of 1994.[26] This act grandfathered in the patent application Anthony had submitted for the Claims in 1989,[27] which required BLM to continue to process the application and issue the patent.[28]

On November 14, 1997, Congress passed an Appropriations Act for DOI with a section ("Section 120") that created a mechanism for the United States to take mining claims in Kantishna Mining District from willing sellers.[29] Under Section 120, the owners of patented mining claims and valid unpatented mining claims could consent to

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

---

[22] Answer ¶ 27; R. 1-26, 39-54, 68-71, 94-97.

[23] R. 27-38, 67, 96-97, 110-113, 137-40, 144-49, 165.

[24] Pub. L. No. 96-487.

[25] 16 U.S.C. § 410hh-1 (2006); Answer ¶ 25.

[26] Pub. L. No. 103-332, § 113.

[27] This was patent application number AA-71472 discussed *infra* at 17-20. R. 114-36; Answer ¶ 28.

[28] R. 404-05; Answer ¶ 35.

[29] Pub. L. No. 105-83, the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1998, 111 Stat. 1543, 1564-66.

OPENING BRIEF OF PAUL SHEARER                                  Page 11 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 11 of 41

have their interests taken and receive just compensation in exchange.[30]  Claim owners had 90 days from the enactment of Section 120 to file their consent.[31]

In February 1998, Shearer and Red Top filed written consents to the taking of any interest in mining claims they owned as of 1998.[32]  Shearer owned several mining claims at that time and title to them vested in the United States on February 12, 1998.[33] The Claims were *not*, however, among the interests owned by either Shearer or Red Top at the time the consents were filed in 1998, because Anthony owned the Claims at that time. As Anthony did not consent to the taking of the Claims, his title to them—transferred to Shearer in 2005—was unaffected.[34]

### III. Numerous Fairbanks State Court Rulings Establish that Anthony Acquired Valid Title to the Claims from Red Top, which Had Held Valid Title to Them since at Least 1976.

As noted, two potential chains of title to the Claims developed in parallel from the 1937 Option Contract: (1) the Optionee interest flowing from Fransen, Hawkins, and Red Top: and (2) the Optionor interest flowing from the Quigleys.  The lack of a clear chain of title was likely the result of two significant losses of documents: (1) the loss of all documents from the Kantishna Recording District for the period 1936 to 1940; and (2) the loss of First National Bank's escrow documents in a 1967 flood, which

---

[30] 111 Stat. 1543, 1564-66.

[31] *Id. at* 1565.

[32] Compl. Ex. 8; Answer ¶ 40.  Shearer excluded from his consent two Kantishna mining claims that he owned at that time, 2.5 acres on Rainy #4 and 7 acres on Doherty. Compl. Ex. 8.

[33] Compl. Ex. 8.

[34] Compl. Exs. 19-20.

OPENING BRIEF OF PAUL SHEARER                                    Page 12 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

destroyed any evidence that the 1937 Option Contract may have been satisfied and the escrow deed transferred to and recorded by Optionees.[35] However, title to the Claims is an issue that has been thoroughly litigated *and resolved* in Alaska Superior Court in Fairbanks. Viewed individually and as a whole, the Superior Court rulings and resulting settlements establish that the Optionee chain of title is the "true" one, and vested title in Red Top no later than 1976—well in advance of the FLPMA filings for the Claims.

At the outset, it is important to reiterate that the 1937 Option Contract included numerous other mining claims, including unnamed claims in a catch-all provision, in addition to Banjo and Pass. Over the years, many of these claims were carved out of the Option Contract by settlement or purchase between Optionors, Optionees, and their successors-in-interest. As explained in more detail below, as of 2000, Banjo and Pass were among the claims that had been carved out of the Option Contract, and were thus unaffected by later settlements and orders.

The first court case began in 1979 when Kantishna Mines, Ltd. ("KML") sought to quiet title to certain claims (not including Banjo and Pass) that it had purchased from Red Top, as against the Optionors ("1979 Quiet Title Action").[36] The court denied the Optionors' motion for summary judgment that the Option Contract had expired unexercised, and the parties subsequently reached a settlement that vested title to 18

---

[35] Compl. Ex. 14 at 5 n.7.

[36] Compl. Exs. 15-16; *Kantishna Mines Ltd. ("KML") vs. Dunkle and Quigleys et al.*, No. 4FA-79-0194.

OPENING BRIEF OF PAUL SHEARER
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Page 13 of 41

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 13 of 41

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501

TEL 907.276.4331  •  FAX 907.277.8235

patented claims in KML.[37]  This settlement removed those 18 claims from the scope of the Option Contract.

In 1991, Anthony filed a quiet title and partition action in Fairbanks Superior Court to establish his 100% ownership of the Claims ("1991 Quiet Title Action").[38]  In 1993, the Superior Court granted summary judgment and entered final judgment "vesting in the Plaintiff [Anthony] the title to BANJO (BLM Serial no. F-54240), PASS (BLM Serial no. F-54242)," and one other unpatented mining claim ("1993 Superior Court Judgment").[39]  This removed the Claims from the scope of the Option Contract and confirmed that Anthony's title had flowed properly via Red Top and the Optionee chain.  The summary judgment was recorded on March 29, 1993.[40]

In 1993, Anthony filed another quiet title action in Fairbanks Superior Court, where the primary issue was ownership of the Doherty Lode Claim in Kantishna ("1993 Quiet Title Action").[41]  The 1993 Quiet Title Action led to a detailed 1996 court decision ("1996 Superior Court Order") that established, among other things, that Optionee Red Top had been the vested owner of *all* mining claims subject to the 1937 Option Contract, including the Doherty Lode Claim, as well as the Banjo and Pass Claims, by no later than September 1, 1976 and potentially earlier, depending on what

---

[37] Compl. Exs. 15-16.

[38] *Anthony vs. Red Top, Red Top shareholders, Quigley et al.*, Case No. 4FA-91-2148.

[39] R.532-33; Compl. Ex. 17, Judgment and Decree, Case No. 4FA-91-02148CI (Alaska Superior Court, Dec. 27, 1993).

[40] R. 532-33.

[41] *Anthony vs. Shearer, Quigley et al.*, Case No. 4FA-93-02045CI.

OPENING BRIEF OF PAUL SHEARER                                      Page 14 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 14 of 41

ASHBURN & MASON p.c.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

legal grounds applied.[42] The court considered whether the Option Contract was a contract for sale or an option, as well as adverse possession theories, and ruled that Red Top's ownership had vested by 1953 at the earliest and 1976 at the latest. Significantly, the court also ruled that the statute of limitations had expired and no party could bring an action to challenge Optionee Red Top's title.[43] This ruling was entered on the merits by a court of competent jurisdiction, after notice and an opportunity to be heard was provided to both Optionor and Optionee interests.

Again, title to the Claims had already been vested in Anthony by the 1993 Superior Court Judgment, so the 1996 Superior Court Order simply confirmed Anthony's current title and Red Top's previous title to the Claims; and its analysis and ruling regarding the Option Contract established the specific timeline of Red Top's and Anthony's ownership through the Optionee chain of title. At this point, any challenge to Anthony's or Red Top's title to the Claims was barred by the statute of limitations.[44]

In 2000, Shearer (who by then held 100% of the *Optionor* interests), Red Top, and Anthony executed a settlement agreement ("2000 Settlement Agreement") in a separate 1998 case[45] ("1998 Quiet Title Action") that had been consolidated with the 1993 Quiet Title Action.[46] In the 2000 Settlement Agreement, they agreed to confirm and quiet Anthony's title to a range of mining interests, including the Claims, as of

---

[42] Compl. Ex. 14 at 16-20.

[43] *Id.*

[44] AS 09.10.030; AS 09.10.040; AS 09.10.050.

[45] Case No. 4FA-98-01250CI.

[46] R. 511-14.

OPENING BRIEF OF PAUL SHEARER
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Page 15 of 41

February 10, 1989.[47] By this time, Anthony's title to the Claims was well-settled under the Superior Court's prior rulings; the 2000 Settlement Agreement merely confirmed his title and ensured that the parties to that case would not challenge it. The 2000 Settlement Agreement also resolved all quiet title issues and superseded the earlier 1937 Option Contract with respect to the named Claims.[48] The Superior Court entered judgment in accordance with the parties' settlement.[49]

In 2005, in the same consolidated 1993 and 1998 quiet title actions, Shearer and Red Top reached another settlement regarding the remaining mining interests (*not* including the Claims) addressed in the 1937 Option Contract ("2005 Settlement Agreement").[50] The 2005 Settlement Agreement expressly noted that issues relating to Banjo and Pass had already been separately addressed in the 2000 Settlement Agreement and that the present agreement was resolving title only to the remaining claims.[51] Specifically, Paragraph 2 acknowledged that the 2000 Settlement had resolved all issues relating to Banjo and Pass; and Paragraph 4 identified a list of other claims included in the Option Contract. And, significantly, Paragraph 5.b. stated "[t]hat the 1937 Option Agreement *only included the mining claims described in Paragraph 4 above*."[52] The 2005 Settlement Agreement thus expressly recognized that the Claims had previously been carved out of the Option Contract, and stated a clear intention that

---

[47] R. 511-12, 522-25, 526-31.

[48] R. 511 ¶ 3,4.

[49] R. 526-31, R. 511-15.

[50] Compl. Ex 22.

[51] *Id*.

[52] *Id*. ¶ 2, 4, 5b (emphasis added).

OPENING BRIEF OF PAUL SHEARER                                           Page 16 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

its terms would apply only to the specific claims enumerated in Paragraph 4. The Superior Court accepted the settlement and issued a corresponding order by stipulation, which ruled that for the remaining claims, the 1937 Option Contract had expired no later than 1979 ("2005 Stipulated Summary Judgment Order").[53]

The 2005 Stipulated Summary Judgment Order thus had no effect on title to the Claims. The controlling court rulings regarding title to the Claims were, and remain, the 1993 and 1996 Superior Court Orders. Under those rulings, Red Top acquired title to the Claims no later than 1976 and held it until title passed to Anthony in 1989. As noted, in 1998, Red Top and Shearer both filed written consents to the United States' taking of certain mining interests. As explained above, as of this date, neither Red Top nor Shearer was the owner of the Claims thus neither was capable of conveying them to the United States. Anthony held title to the Claims at that time and did not consent.

In 2005, Anthony quitclaimed all of his 100% unencumbered interest in the Claims to Shearer.[54]

## IV. As of 1996, DOI Had Confirmed the Claims Were Patentable, Accepted Evidence of Ownership, Issued the FHFC, and Recommended that the Claims Proceed to Patent.

On July 19, 1989, Anthony filed a patent application for the Claims with DOI pursuant to 30 U.S.C. § 29, based on his ownership of all necessary right, title, and interest.[55] This patent application triggered a formal DOI investigation of the Banjo and Pass Claims that resulted in a formal determination that the Claims were valid.

[53] R. 604-83.

[54] Compl. Exs. 19, 20.

[55] R. 114-36.

OPENING BRIEF OF PAUL SHEARER                                    Page 17 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 17 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

Specifically, DOI completed a mineral examination and issued a favorable report in February 1994.[56] The report was accepted by NPS in March 1994 and was supplemented by an additional report in August 1995.[57] Together these reports concluded that a discovery of a valuable mineral deposit had been made upon each of the two Claims, that the application was in conformance with the applicable statutes and case law, and that the Claims qualified for a mineral patent.[58]

As Anthony's title to the Claims had not been partitioned by the time the patent application was filed in 1989, the application was delayed until the 1993 Superior Court Judgment was issued vesting him with 100% title to the Claims.[59] Anthony supplemented the patent application with an abstract of title in 1993 ("Abstract").[60] This Abstract listed the 3 Locations, 73 Affidavits of Annual Labor from 1942 to 1993 (final date of the Abstract), 7 deeds and option, the Claimant's Lien, and the 1993 court order and judgment.[61] The Abstract included the following:

### ABSTRACTOR'S CERTIFICATE

The undersigned certifies that he has examined the indices maintained in the office of the Fairbanks District Recorder, Fourth Judicial District, State of Alaska, and the records of the United States District Court for the District of Alaska in Fairbanks, for matters affecting the title to the premises described in the CAPTION hereto, and further certifies that the foregoing Abstract is a full, true and complete abstract of records title of said premises.

---

[56] R. 193, 389-91.

[57] R. 432, 462, 472-476.

[58] R. 462, 468-471, 478.

[59] R. 194-95, 499, 532-33.

[60] R. 233-332.

[61] R. 99-109, 306.

OPENING BRIEF OF PAUL SHEARER                                    Page 18 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

A search for unsatisfied judgment liens, tax liens filed either by the Internal Revenue Service of the U.S. Treasury Department or by the Revenue Department of the State of Alaska against the following named persons: **Joseph B. Quigley, Fannie Quigley, E. Fransen, C.M. Hawkins, Red Top Mining Company** . . . [21 additional names] . . ., has been made, and find no unsatisfied judgments or tax liens indexed against said names.[62]

This Abstract referenced the search of the names of the Optionors to the original 1937 Option Contract to Red Top for the Banjo and Pass and included additional copies of the deeds listed in the typed report. The Abstract also disclosed that: "All Kantishna Records for the period between 1936 through 1940 are missing. The Fairbanks recording office is aware of the missing records." Anthony accompanied the Abstract with a copy of the 1993 Superior Court Judgment as proof of his settled title.[63]

BLM could have requested additional materials to prove Anthony's title, but did not.[64] The court order and judgment vesting title were sufficient proof of title per BLM regulations, which specifically state that disputes over a delinquent co-claimant's interest must be resolved in the courts, without BLM involvement.[65] Moreover, it is

---

[62] R. 233 (emphasis added).

[63] R. 194-195, 317-318.

[64] BLM Manual 3860 at § .06.D, Mineral Patent Applications, July 9, 1991, *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3860.pdf (last visited Oct. 23, 2019) (providing process for requesting applicant to cure deficiencies in proof of title). BLM did, however, identify other deficiencies and request that Anthony supplement the patent application with other information. R. 502.

[65] 43 CFR § 3837.30.

OPENING BRIEF OF PAUL SHEARER                                           Page 19 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

DOI's "longstanding practice" to give effect to title determinations issued by courts of competent jurisdiction such as the Alaska Superior Court.[66]

After accepting the purchase price,[67] DOI confirmed the Claims were suitable for patent and approved a First Half Final Certificate ("FHFC") in 1995.[68] By 1996, DOI had confirmed the validity and recommended that the Claims proceed to patent.[69] In 1997, Tom Allen, the BLM State Director for Alaska, stated in a letter to Senator Ted Stevens that the FHFC had been issued only after "matters of title" had been resolved in the courts.[70] In other words, he acknowledged that DOI was aware of the ongoing title contests, and considered Anthony's title to be sufficiently settled for the application to proceed.[71] Allen also stated that on May 29, 1996, BLM's Acting Director had approved issuance of the mining patent.[72]

## V. DOI Launched a Campaign on Behalf of NPS to Challenge the Claims' Patentability via Administrative Process.

Instead of issuing the patents, DOI began a series of attempts to retroactively challenge the Claims' validity. It spent sixteen years arguing in different forums that there had been no valid mineral discovery, despite its own prior acknowledgment that the Claims were valid, and despite the Mining Law's declaration that it was "the continuing policy of the Federal Government in the national interest to foster and

---

[66] R. 621.

[67] R. 340-46, 462.

[68] R. 406-11.

[69] R. 468-71, 478.

[70] R. 496-98, 499.

[71] R. 499.

[72] *Id.*

OPENING BRIEF OF PAUL SHEARER            Page 20 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

encourage private enterprise in" mining.

The seeds of the 2012 Decisions were planted by the National Park Service ("NPS") in 2000. In October of that year, Bruce Giffen—an NPS employee—sent a memo to BLM's Alaska office, alerting it to a potential way BLM could challenge the patentability of the Claims ("NPS Memo").[73]  Although the NPS Memo was founded on a profound misunderstanding of the Claims' chain of title and complex litigation history, it nonetheless had an impact.

NPS then ignored the previous Mineral Reports approved by BLM in 1995, ignored the solicitor's review, ignored all the BLM approvals that had recommended the patent be issued in 1996, and in 2003 initiated through BLM an administrative adjudication of the validity of the Banjo and Pass Claims before the Office of Hearings and Appeals ("OHA").[74]  BLM did not contest any title issues when initiating this proceeding despite being aware of the title litigation referenced in the 1997 letters and 2000 NPS Memo; rather, it alleged—for the first time—that sufficient minerals had not been exposed within the boundaries of the Claims to constitute a valid discovery on the date the land was withdrawn from mineral entry.[75]  Both Anthony and Shearer participated in the administrative contest.[76]

In the middle of the proceeding, BLM attempted to introduce a new argument,

---

[73] R. 509-33.

[74] *Michael R. Mark Anthony*, 180 IBLA 308, 318 (IBLA Jan. 12, 2011) (decision on appeal from *United States v. Michael R. Mark Anthony*, OHA AA-71472 (2008)).

[75] *Id.*

[76] Answer ¶ 44.

OPENING BRIEF OF PAUL SHEARER                                    Page 21 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.

LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

based on the incorrect title theories in the NPS Memo and a misreading of the 2005 Stipulated Summary Judgment Order, that the claims had been abandoned because the wrong party had made filings required under FLPMA.[77]   In 2006, OHA rejected this new argument, stating BLM's request to reopen title and FLPMA compliance issues was "untimely," "without merit," and "would not allow adequate time for response in advance of the [administrative] hearing as would meet basic requirements for fairness and due process."[78] Ultimately, on April 28, 2008, OHA found BLM's complaint to be meritless, and dismissed its claims in a detailed 171-page decision.[79]

BLM appealed the decision on the claims' validity to the IBLA, but did not appeal OHA's rejection of its new FLPMA-based challenge.[80]   In 2008, in the midst of the validity appeal, BLM filed a new protest on behalf of NPS with the BLM Alaska State Office, again attempting to argue that the Claims had been abandoned because of defective FLPMA filings.[81]   It asked the IBLA to remand the case back to BLM to adjudicate the new protest.[82]   In 2009, the IBLA declined to remand the case, ruling that BLM had no authority to adjudicate title after the DOI Secretary had already approved title and signed the FHFC.[83]   The IBLA stated that only the Secretary could revisit that

---

[77] R. 604-613, 560-581, 583-603.

[78] Compl. Ex. 9 at 2.

[79] *United States v. Michael R. Mark Anthony*, OHA AA-71472 (2008).

[80] *Michael R. Mark Anthony*, 180 IBLA 308; Answer ¶ 49.

[81] R. 557-59.

[82] *Id.*

[83] *United States v. Michael R. Mark Anthony*, 177 IBLA 120, 117  (IBLA April 15, 2009) ("BLM has no authority to determine that Mark Anthony did not have title to the

OPENING BRIEF OF PAUL SHEARER                    Page 22 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 22 of 41

ruling.[84] The IBLA subsequently affirmed the OHA's findings and upheld the validity of the Claims on January 12, 2011.[85]

## VI. The Secretary Spontaneously Rescinded the FHFC and Canceled the Patent Applications without Notice or Process.

In February 2012—seventeen years after DOI had issued the FHFC, sixteen years after it had recommended that the Claims proceed to patent, six years after OHA had ruled that BLM's FLPMA challenges were "untimely," and three years after the IBLA had declined to hear the FLPMA arguments—the Secretary suddenly issued a pair of decisions, rescinding the 1995 FHFC and rejecting the patent application.[86] These decisions ("2012 DOI Decisions") were issued outside the normal administrative process, without any notice to Shearer, and without affording Shearer any opportunity to be heard. They constituted a direct reversal of DOI's 1996 recommendation that the Claims proceed to patent.

The first decision, issued on February 9, 2012 by Secretary Ken Salazar, relied on the 2005 Stipulated Summary Judgment Order.[87] Secretary Salazar acknowledged that under *Perego v. Dodge*,[88] a U.S. Supreme Court case, it was DOI's "longstanding practice ... to give effect to the determination of a court of competent jurisdiction with

---

subject claims contrary to Secretary Babbitt's acceptance of Mark Anthony's chain of title. Only the Secretary may make such a determination.").

[84] *Id.*

[85] *United States v. Michael R. Mark Anthony*, 180 IBLA at 359.

[86] R. 620-622, 627-29.

[87] R. 619-22.

[88] 163 U.S. 160, 168 (1896).

OPENING BRIEF OF PAUL SHEARER                                  Page 23 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 23 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

respect to the right of possession of a mining claim."[89]  He then referenced only the 2005 Stipulated Summary Judgment Order, which had ruled by stipulation of the parties that the Option Contract had expired no later than 1979, and concluded on that basis that title to the Claims had never passed to Red Top by 1979. He did not acknowledge either the 1993 Superior Court Judgment or 1996 Superior Court Order, which had confirmed Red Top's place in the chain of title with vested title no later than 1976, nor did he acknowledge that the 2005 Stipulated Summary Judgment Order did not in fact address the Claims at all.

In reliance on this fatally flawed foundational assumption, Secretary Salazar went on to identify two alleged defects in the Claims.  *First*, he explained that FLPMA requires the "owner" to record claims and annual assessments, on penalty of abandonment. Because, as he stated, Red Top was not the owner in 1979 or subsequent years, the FLPMA filings were defective, and the Claims had therefore been abandoned. *Second*, he stated that even if Red Top had been an owner, the patent application filed by Anthony was incomplete, because it failed to identify how Anthony had acquired his interest from Red Top.  Despite his statement that DOI would give effect to title rulings from courts of competent jurisdiction, he utterly disregarded the 1996 Superior Court Order vesting title in Red Top no later than 1976, and the 1993 Superior Court Judgment vesting title in Anthony.  On these erroneous grounds, Secretary Salazar canceled the FHFC.

---

[89] R. 621.

OPENING BRIEF OF PAUL SHEARER                                                  Page 24 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Two months later, on April 5, 2012, DOI followed through on the Secretary's action and formally rejected the patent application. Acting Assistant Secretary Marilyn Burke issued a decision that accepted Secretary Salazar's reasoning wholesale, and incorrectly concluded that the patent application was invalid because on the date he submitted the patent application, Anthony was not the "holder" of the Claims, as required by the Mining Law of 1872, 30 U.S.C. § 29.[90]

## SUMMARY OF THE ARGUMENT

The 2012 Decisions must be vacated because: (1) they were issued in defiance of longstanding BLM practice and without any legal authority; (2) DOI committed fundamental errors in interpreting the Alaska Superior Court's rulings establishing Red Top's and Anthony's title to the Claims; (3) DOI misinterpreted FLPMA's filing requirements; and (4) DOI's issuance of the 2012 Decisions seventeen years after issuing the FHFC, without considering Shearer's significant reliance interest as required by law, was untimely and improper; and (5) DOI violated Shearer's due process rights and its own regulations by taking his private property without notice, an opportunity to be heard, or just compensation.

Based on these errors, Shearer requests that the Court vacate the 2012 Decisions, confirm his title to the Claims, and enter a writ of mandamus ordering DOI to sign the patent without further delay, *nunc pro tunc* as of May 29, 1996.[91] In the alternative, if the Court finds that vacation of the decisions and issuance of a writ is not appropriate,

---

[90] R. 627-29.

[91] A Motion for Writ of Mandamus is being filed together with this brief. The unsigned patent, prepared in 1994 and forwarded for signature, is at R. 396.

OPENING BRIEF OF PAUL SHEARER                                    Page 25 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 25 of 41

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501

TEL 907.276.4331 • FAX 907.277.8235

Shearer respectfully requests that the Court confirm the Claims are valued as patentable as of 1996 and hold a hearing to determine just compensation for the Claims under the Fifth Amendment and/or remand to DOI for proceedings consistent with due process.

## ARGUMENT

### I. Standard of Review

When reviewing an agency decision, this Court is to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."[92]  It has authority to "compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside agency action, findings, and conclusions" that it finds to be, *inter alia*, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, unconstitutional, or entered without due process of law.[93]

### II. The 2012 Decisions Violated Longstanding BLM Practice and Were Issued without Authority.

DOI's cancelation of the FHFC and rejection of the patent application in this case was both unlawful and untimely.  In fact, it is in direct defiance of longstanding BLM practice and accepted administrative practice:

> The acceptance of the purchase price vests equitable title in the land to the applicant on the day the BLM accepts it. This is very important. The date BLM accepts the purchase price is the date of-entry shown on the first half of the mineral entry final certificate. (See U. A. Small, supra; United States v. Norman A. Whittaker (On Reconsideration), 102 IBLA 162 (1988)). **After this date, the final certificate cannot be administratively canceled. Cancellation can only be effected by withdrawal of the**

---

[92] 5 U.S.C. § 706.

[93] 5 U.S.C. § 706(1), (2).

OPENING BRIEF OF PAUL SHEARER                                    Page 26 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 26 of 41

ASHBURN & MASON P.C.

LAWYERS

1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501

TEL 907.276.4331  •  FAX 907.277.8235

**application by the applicant, or by a mineral contest action in which an administrative law judge rules against the application**.[94]

BLM accepted the purchase price for the Claims on April 20, 1993, and issued the FHFC on January 5, 1995.[95] After that had occurred, DOI could not merely "administratively cancel" the FHFC; it could only be canceled by withdrawal of the application or in the context of a mineral contest action. DOI had attempted to raise the title issues in its contest action, but OHA declined to hear the challenge, finding that it was "untimely" and "without merit."[96] DOI did not appeal the OHA order to IBLA, and the final IBLA decision upholding the Claims' validity is binding on DOI in these circumstances.

Moreover, even if DOI had authority to revoke the FHFC and relitigate title issues based on the 2005 Settlement Agreement, it was inexcusably dilatory in issuing the 2012 Decisions. DOI became aware of the Optionor interest in 1994, but correctly determined the Optionee interest was superior when it signed the 1995 FHFC. DOI became aware of potential title issues in 2000 via the NPS Memo, but failed to include those issues when it filed its validity contest with OHA in 2003. Rather, DOI waited until *2006 – eleven years after issuing the FHFC –* to first assert any title challenge. DOI then waited until 2008 to ask IBLA for a remand to address title issues, and then waited until 2012 to issue its decisions purporting to cancel the FHFC and invalidate the

---

[94] BLM Manual 3862 at § .62.A, Mining Claim Patent Applications, July 9, 1991, *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3862.pdf (last visited Oct. 23, 2019) (emphasis added).

[95] R. 340-46, 406-11, 462.

[96] Compl. Ex. 9 at 2; R. 609-11.

OPENING BRIEF OF PAUL SHEARER                                                   Page 27 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

Banjo and Pass Claims—nearly two decades after DOI first learned of, analyzed, and dismissed as irrelevant the Optionor chain of title.[97]

The 2012 DOI Decisions therefore constitute an impermissible, unauthorized, untimely attempt to re-litigate title issues resolved in the 1991 Quiet Title Action and BLM's own title review of the patent applications by 1995. DOI is bound by the results of the 1993 Superior Court Judgment, and is time-barred and estopped—by its own policies—from revisiting BLM's title determination made prior to accepting the purchase price and issuing the FHFC in 1995.

### III. The 2012 Decisions Were Founded on Legally Erroneous Assumptions Regarding Red Top's and Anthony's Ownership of the Claims.

The 2012 Decisions are founded on several conclusions that are incorrect as a matter of law. *First*, it was legal error to conclude that by operation of the 2005 Stipulated Summary Judgment Order, Red Top did not own the Claims in 1979 or thereafter. As explained in detail above, the 2005 Stipulated Summary Judgment Order had no effect on the Claims' chain of title.[98] The order was entered as a result of the 2005 Settlement Agreement, not an adjudication on the merits, and the 2005 Settlement Agreement *explicitly excluded the Claims from its scope*. The 2005 Superior Court Order in no way altered or nullified the 1996 Superior Court Order, which had been issued on the merits and *did include the Claims in its scope*. That order established that Red Top was the proper owner of the Claims no later than 1976. Under DOI's own longstanding policy—which the 2012 Decisions themselves acknowledge—DOI (which

---

[97] R. 509-10, 609-13, 619-22, 627-29; Compl. Exs. 9, 18.

[98] *Supra* at 16-17.

OPENING BRIEF OF PAUL SHEARER                                    Page 28 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 28 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

has no authority to adjudicate title disputes) is obligated to give effect to the 1996 Superior Court Order.[99]

*Second*, it was legal error to conclude that Anthony had failed to provide sufficient evidence of title with the patent application. DOI was aware of the ongoing state court title actions, and delayed the patent proceeding until it was resolved.[100] Promptly upon receipt of the 1993 Superior Court Judgment, which formally vested 100% title in him, Anthony filed the order with BLM together with his updated Title Abstract.[101] Again, under longstanding DOI practice and precedent, DOI is required to give effect to the title ruling of a court of competent jurisdiction.

Moreover, BLM policy establishes that any defect in Anthony's filing of the title documents was curable. BLM Manual 3860, titled "Mineral Patent Applications," characterizes an application's lack of "essential title documents, proofs, and affidavits" as a "curable defect."[102] If an applicant fails to provide the required documents, BLM is required to issue a decision requesting that the applicant cure the defects within 30 to 60 days.[103] Neither Anthony nor Shearer ever received such a request.

*Third*, it was legal error to conclude that Anthony did not hold title to the Claims

---

[99] R. 621. *Cf. Perego v. Dodge*, 163 U.S. 160, 165 (1896) ("[T]he determination of the right of possession as between the parties is referred to a court of competent jurisdiction[.]").

[100] R. 499.

[101] R. 194-95, 233-332.

[102] BLM Manual 3860 at § .06.D, Mineral Patent Applications, July 9, 199, *available at* https://www.blm.gov/sites/blm.gov/files/uploads/mediacenter_blmpolicymanual3860.pdf (last visited Oct. 23, 2019).

[103] *Id.*

OPENING BRIEF OF PAUL SHEARER                                                    Page 29 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 29 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331   •   FAX 907.277.8235

at the time he filed the patent application. The basis for this conclusion was not clearly explained in the April 5, 2012 decision rejecting the patent application. However, it was presumably based on DOI's erroneous assumption that Red Top, and thus Anthony, never had proper title to the Claims.

Given these errors, the reasoning of the 2012 Decisions is untenable. If Red Top was the owner of the Claims from 1979 to 1989, there is no question that the FLPMA filings submitted on its behalf were proper. If Anthony was the owner of the Claims from 1989 onward, as confirmed by the Superior Court's quiet title rulings, there is no question that the patent application was properly submitted by the "holder" of the Claims, with the 1993 Superior Court Judgment serving as statutorily proper documentation of title. Therefore, these legal errors alone compel vacating the 2012 Decisions.

## IV. The 2012 Decisions Misapplied the Requirements of FLPMA.

Even if the 2012 Decisions' conclusions regarding title were correct, the decisions would still merit reversal because they are founded on a misapplication of FLPMA. Both decisions stated that only the "owner" of a claim can make the filings required by FLPMA.[104] They asserted that because Red Top was not the "owner" of the Claims at the time it made the initial recordation in 1979, or the subsequent annual assessments, the Claims had been abandoned for failure to comply with FLPMA's filing requirements. The 2012 Decisions apply the wrong definition of "owner," and ignore

---

[104] R. 621, 627-28.

OPENING BRIEF OF PAUL SHEARER                                      Page 30 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 30 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

that even if the wrong party made the required filings, this defect is not fatal, but rather simply subject to later correction.

FLPMA provides, in relevant part, that "[t]he owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976 and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection."[105] BLM regulations provide that under FLPMA an "owner" means "the person who is the holder of the right to sell or transfer all or any part of the unpatented mining claim."[106]

Red Top satisfied the FLPMA definition of "owner" in 1977 because it was a party with the authority to sell or transfer an interest in the claims, and was the only party in physical possession of the Claims from 1977-88. This is clear from both the 1993 Superior Court Judgment and the 1996 Superior Court Order, which established Red Top's ownership—whether by sale, option, or adverse possession—as of 1976.[107] DOI had in fact relied upon and previously taken advantage of Red Top's ownership of mining claims under the Option Contract: in 1991 DOI purchased mining interests from

---

[105] 43 U.S.C. § 1744(a)

[106] 43 C.F.R. § 3833.0-5(e) (1996). The language of the definition changed over the years, but its core meaning stayed the same: "owner" was intended to reference any person with a legally cognizable, alienable interest in the claim. *See* 43 C.F.R. § 3833.0-5(e) (1977) ("any person who holds a recorded possessory interest in all or any part of an unpatented lode or placer mining claim, mill site, or tunnel site whether such interest was obtained by location, purchase, gift, inheritance, or other means recognized under law for transfer of the right of possession and enjoyment recognized in the holder of the claim or claims under the General Mining Law of 1872[.]."); 43 C.F.R. § 3833.0-5(e) (1984) ("the person who is the holder of the right to sell or transfer all or any part of the unpatented mining claim, mill or tunnel site. The owner shall be identified in the instruments required by these regulations by a notation on those instruments.").

[107] *Supra* at 14-15.

OPENING BRIEF OF PAUL SHEARER                                      Page 31 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 31 of 41

KML that had been conveyed by Red Top in 1978, and in 2001 DOI purchased certain mining interests Red Top had conveyed to it in 1998 under Section 120.[108]

Even if Red Top did not hold title to the Claims in 1979 and did not otherwise satisfy the definition of "owner", the fact that it—and not the true owner—filed the recordation and annual assessments would only be *a potential defect in the filing, not a failure to record.* FLPMA Section 314 provides that "it shall not be considered a failure to file if the instrument is defective," or "if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim[.]"[109] Here, the instruments required by the statute were timely recorded for the Banjo and Pass Claims. Nothing in Section 314 of FLPMA required the initial filings to capture the correct ownership status of the claims at the time. Rather, Section 314(c) of FLPMA expressly allows for this "defect" to be corrected.[110] DOI never allowed for this opportunity, and certainly cannot invalidate the Claims based on this alleged defect without first allowing for a reasonable opportunity to cure.

Finally, at the time of the recording, Red Top's shareholders included individuals who also held *Optionor* interests.[111] Thus, even if the Optionee chain of title were

---

[108] Answer ¶ 40 (admitting Red Top filed Section 120 consents).

[109] 43 U.S.C. § 1744(c).

[110] *See, e.g.*, *Jackson, et al. v. Robertson, et al.,* 763 F.2d 1176, 1180 (10th Cir. 1985) (FLPMA filing on behalf of unnamed co-owners constituted filing on behalf of all interest owners and avoided abandonment of those interests); *Gammelgaard v. Hillis Peak Enter., Inc.*, 842 P.2d 457, 459-60 (Or. App. 1992) (omission of owners' name on affidavit of assessment filed within annual deadline set by FLPMA was not abandonment of claim).

[111] R. 99-110; Compl. Ex. 16.

OPENING BRIEF OF PAUL SHEARER
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Page 32 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

invalid, the FLPMA filings were still made by or on behalf of Optionor interest-holders—in satisfaction of Section 314's provision that "it shall not be considered a failure to file . . . if the instrument is filed for record by or on behalf of some but not all of the owners of the mining claim[.]"[112]  Thus, regardless of which chain of title is the "true" one—Optionor or Optionee—the FLPMA filings made by Red Top were valid because at the time of filing, Red Top's makeup included both Optionor and Optionee interest-holders.[113]

V.     **DOI's Revocation of the FHFC Is Fatally Flawed Because It Was Untimely and Failed to Take into Account Shearer's Legitimate Reliance on the FHFC.**

The Ninth Circuit has held that administrative agencies "may not impose undue hardship by suddenly changing direction, to the detriment of those who have relied on past policy."[114] Similarly, the United States Supreme Court has held that when an agency's prior policy "has engendered serious reliance interests . . . it would be arbitrary or capricious to ignore such matters."[115]

DOI's unlawful and dilatory actions have caused significant harm to Shearer. The facts set forth above show significant and unquestionable reliance on the FLPMA

---

[112] 43 U.S.C. § 1744(c).

[113] Moreover, these Optionor Red Top shareholders, who DOI now claims in its 2012 Decisions were the correct "owners" in 1979, were listed the 1989 BLM records with the patent application; therefore BLM knew that some of the correct owners were represented on the 1977 to 1988 FLPMA instruments.

[114] *Cities of Anaheim, Riverside, Banning, Colton & Azusa, Cal. v. F.E.R.C.*, 723 F.2d 656, 659 (9th Cir. 1984) (quoting *Ruangswang v. Immigration & Naturalization Serv.*, 591 F.2d 39 (9th Cir. 1978)).

[115] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009) (citing *Smiley v. Citibank (South Dakota), N. A.,* 517 U.S. 735, 742 (1996)).

OPENING BRIEF OF PAUL SHEARER                                    Page 33 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

filings since 1979 and the FHFC by Shearer and his predecessor-in-interest since 1995, when the FHFC was issued. Anthony expended labor and funds to maintain the Claims with BLM, litigate title issues, and defend against the second mineral report and contest.[116] Shearer purchased his interest in the Claims and continued to expend labor and funds to prevail on the contest for validity before OHA and the IBLA.[117] It is obvious that Anthony and Shearer expended substantial amounts of time, effort, and money to legitimize and defend the Claims in direct reliance on DOI's previous issuance of the FHFC and recommendation that they proceed to patent. Without the approved Mineral Reports and FHFC, the Claims cannot be patented or mined, and thus have been stripped of all value.

Judge Burgess summarized DOI's actions succinctly in his 2012 order in the Section 120 case:

> [T]he Secretary's decision to cancel the certificate for the Banjo and Pass claims comes fully seventeen years after the FHFC was originally granted. It comes over eight years since the Government filed an administrative challenge to the claims, almost three years since the IBLA relied on the original FHFC to uphold Shearer's chain of title, and over a year since the IBLA issued its final decision that the mining claims themselves were valid."[118]

Judge Burgess questioned whether the "unilateral government decision to 'cancel' its certification of Shearer's chain of title, after title has already vested in him and been upheld in a final administrative appeal, comports with due process." The answer, of

---

[116] R. 41-406; R. 409-555.

[117] R. 511-31.

[118] Order Re Pending Motions at 2-3, Case No. 3:03-cv-00263-TMB (D. Alaska Mar. 23, 2012) (case renumbered from A03-cv-00263-JKS).

OPENING BRIEF OF PAUL SHEARER                                    Page 34 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331   •   FAX 907.277.8235

course, is that it does not. The 2012 Decisions failed to acknowledge any reliance interest upended or hardship imposed by their reversal of the FHFC. This alone is enough to render them arbitrary and capricious.[119]

## VI.  Issuance of a Writ of Mandamus Is Appropriate.

The Court can compel an agency official to act with a writ of mandamus "if (1) the individual's claim is clear and certain; (2) the official's duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available."[120] All three prongs of this test have been met here.

With regard to the first prong, Shearer's right to patent the Claims is "clear and certain." As noted, "vested patent rights constitute property," and "the divestment of a vested right to a patent is tantamount to divestment of the patent itself, i.e. a divestment of 'property.'"[121] As soon as a valid application has been made, "the holder of a valid mining claim has an absolute right to a patent[.]"[122]  DOI, and the IBLA, repeatedly found that the Claims were appropriate to patent. The only purported defects in the application were those identified in the 2012 Decisions, which—as explained above—were factually and legally unfounded.  Shearer therefore has a clear, certain right to patent the Claims.

---

[119] *F.C.C.*, 556 U.S. 502 at 515–16; *Cities of Anaheim*, 723 F.2d at 659 (9th Cir. 1984).

[120] *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

[121] *Swanson v. Babbitt*, 3 F.3d 1348, 1353 (9th Cir. 1993) (quoting *Freese v. United States*, 639 F.2d 754, 758 (Ct. Cl. 1981)).

[122] *Id.* (quoting *South Dakota v. Andrus*, 614 F.2d 1190, 1193 n.3  (8th Cir.), *cert. denied,* 449 U.S. 822 (1980)).

OPENING BRIEF OF PAUL SHEARER                                                    Page 35 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 35 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

With regard to the second prong of the standard, it is well established under U.S. Supreme Court precedent that the Secretary's issuance of a patent is a purely ministerial act.[123] In line with this precedent, the Ninth Circuit has confirmed that "the actions taken by the Secretary of the Interior in processing an application for patent ... are not discretionary; issuance of a patent can be compelled by court order."[124] There is thus no question that, as a matter of law, the Secretary's issuance of a patent is ministerial, plainly prescribed, and, in this case, mandated by law.

With regard to the third prong, the history of the patent application for the Claims makes clear that there is no other adequate remedy. The FHFC was issued in 1995. DOI approved the Claims for patent in 1996. Numerous lengthy and expensive administrative proceedings followed, which confirmed the patentability of the Claims. After the IBLA stated it lacked jurisdiction to hear DOI's final challenge to the Claims' patentability (i.e., the purported FLPMA and application defects), the Secretary issued the 2012 Decisions outside the normal administrative process. By now—fully *twenty-four years after the FHFC was issued*—all administrative remedies have been exhausted, and Shearer has no ability to obtain the patents absent a direct court order.

---

[123] *State of S.D. v. Andrus*, 614 F.2d 1190, 1193 (8th Cir. 1980) (citing line of cases, including *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 318-19 (1929); *Cameron v. United States*, 252 U.S. 450, 454 (1920); *Roberts v. United States*, 176 U.S. 221, 231 (1900)).

[124] *Swanson*, 3 F.3d at 1353 (quoting *South Dakota*, 614 F.2d at 1193 n.3; *id.* at 1353 ("The right to a patent accrues when the claimant has filed a proper patent application and has paid his fee, regardless of when the Department of the Interior fulfills its purely administerial function of issuing the patent."); *see also Marathon Oil Co. v. Lujan*, 751 F. Supp. 1454, 1458 n. 10 (D. Colo. 1990) ("right to a patent immediately arises" when purchase price is paid) (quoting *Benson Mining Co. v. Alta Mining Co.*, 145 U.S. 428, 431-32 (1891)) (collecting cases).

OPENING BRIEF OF PAUL SHEARER                                                    Page 36 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 36 of 41

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 · FAX 907.277.8235

Although mandamus is an extraordinary remedy, it is well within this Court's discretion to grant it.[125] Shearer's request for a writ of mandamus requiring DOI to issue a patent is not unique. Courts, including the U.S. Supreme Court, have approved the use of mandamus in similar circumstances in other cases.[126]

## VII. In the Alternative, the Court Should Award Shearer Just Compensation for DOI's Unconstitutional Taking of His Property Rights.

If the Court determines that vacating the 2012 Decisions is not appropriate, and allows the cancelation of the FHFC and rejection of the patent application to stand, Shearer requests, in the alternative, that the Court set a hearing to determine the amount of just compensation due to Shearer for the Claims, based on patented value and other reliance expenses.

It is well-settled that as soon as a valid patent application has been made, "the holder of a valid mining claim has an absolute right to a patent[.]"[127] "[V]ested patent rights constitute property,"[128] and "the divestment of a vested right to a patent is tantamount to divestment of the patent itself, i.e. a divestment of 'property.'"[129] Where an applicant has a vested right to a patent, and that right is taken away, the applicant has

---

[125] *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986) ("The extraordinary remedy of mandamus traditionally lies within the trial court's discretion.") (citing *Hayakawa v. Brown*, 415 U.S. 1304, 1305 (1974)).

[126] *Wilbur,* 280 U.S. at 319 (holding writ of mandamus should issue directing issuance of patent), *unrelated dicta disapproved of by Hickel v. Oil Shale Corp*., 400 U.S. 48 (1970)*; Barrick Goldstrike Mines, Inc. v. Babbitt*, No. CV-N-93-550 HDM (PHA), 1995 WL 408667, at *1 (D. Nev. Mar. 21, 1994) (granting writ of mandamus relating to gold mining patent application).

[127] *Swanson*, 3 F.3d at 1353 (quoting *South Dakota*, 614 F.2d at 1193 n.3).

[128] *Id.*

[129] *Id.* (quoting *Freese*, 639 F.2d at 758).

OPENING BRIEF OF PAUL SHEARER                                          Page 37 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

a right to just compensation under the Fifth Amendment.[130]

The 2012 Decisions, by stripping Shearer of his vested right to a patent, deprived him of a valuable property interest. The fact that the decisions were issued without any notice to Shearer, and without affording him any opportunity to be heard, violated his right to due process. Where a plaintiff has "suffered an uncompensated divestment of his federal mining claims, [there is] a clear constitutional violation."[131]

There is no question that the Claims have significant value; Red Top's success mining them in the 1930s and 1940s establishes this, as confirmed by the mineral reports. A money judgment will not make Shearer whole, however, because mining claims are notoriously difficult to value.[132] For this reason, vacating the 2012 Decisions and issuing a writ of mandamus is the better remedy.

**VIII.  In the Alternative, this Matter Should Be Remanded Because the 2012 Decisions Violated Shearer's Due Process Rights.**

It is a basic principle of constitutional law that "some form of hearing is required before an individual is finally deprived of a property interest."[133]  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a

---

[130] *Id.* ("Federal mining claims are "private property" which enjoy the full protection of the Fifth Amendment.") (citing *Freese*, 639 F.2d at 757; *Oil Shale Corp. v. Morton*, 370 F.Supp. 108, 124 (D. Colo. 1973)).

[131] *Freese*, 639 F.2d at 757 (cited with approval in *Swanson v. Babbitt*, 3 F.3d 1348, 1353 (9th Cir. 1993)).

[132] *N. Am. Transportation & Trading Co. v. United States*, 53 Ct. Cl. 424, 429 (1918) ("It is always more or less difficult to determine the value of mining property."), *aff'd*, 253 U.S. 330 (1920).

[133] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).

OPENING BRIEF OF PAUL SHEARER                                        Page 38 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 38 of 41

ASHBURN & MASON p.c.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331  •  FAX 907.277.8235

meaningful manner."[134] There can be no dispute that the 2012 Decisions violated Shearer's right to due process. He was afforded no advance notice, and no opportunity to be heard before his vested right to patent the Claims was taken from him. DOI itself has acknowledged that no administrative proceeding accompanied the 2012 Decisions.[135]

This failure would be inexcusable in any case, but is especially egregious here, where DOI was well aware of Shearer's interest in the Claims, his commitment to defending them, and the extent of his reliance on the issuance of the FHFC. Indeed, DOI was actively involved in litigation against Shearer at the time the 2012 Decisions were issued, and was well aware of Shearer's numerous statements, on the record, that he intended to aggressively defend his rights if DOI attempted to revive the protest rejected by IBLA or attempted to tender a petition to vacate to the Secretary. DOI ignored Shearer's requests and rights to be heard. Instead, DOI unilaterally issued the 2012 Decisions with no prior notice, based on no appropriate record, no proceeding, no FLPMA required hearing, and no input from Shearer. The fact that the 2012 Decisions were issued in direct contradiction of BLM's own longstanding practices and precedent stating that the FHFC could not be "administratively canceled" without a contest

---

[134] *Id.* (citation omitted).

[135] Answer ¶ 52, 55. *Cf.* 43 CFR § 4.5(c); 43 CFR § 4.5(a)(1). Elsewhere, DOI denied that the decisions were issued without notice to Shearer, but its explanation made clear that notice was provided only *after* the decisions were issued—not before, as required by law. *E.g.*, Answer ¶ 19.

OPENING BRIEF OF PAUL SHEARER                                              Page 39 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

ASHBURN & MASON p.c.
LAWYERS
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501
Tel 907.276.4331 • Fax 907.277.8235

proceeding confirms the unlawfulness of the manner in which the decisions were issued.[136]

**CONCLUSION**

For the foregoing reasons, Shearer requests that the Court vacate the 2012 Decisions, confirm his title to the Claims, and enter a writ of mandamus ordering DOI to issue the patents without further delay. If the Court declines to grant that relief, Shearer requests in the alternative that the Court either set a hearing to establish just compensation for DOI's unconstitutional taking of the Claims, or remand this case to DOI for further proceedings.

<br>

ASHBURN & MASON, P.C.
Attorneys for Paul G. Shearer

DATED: <u>October 25, 2019</u>       By: <u>s/Matthew T. Findley</u>
                                               Matthew T. Findley
                                               Alaska Bar No. 0504009
                                               matt@anchorlaw.com
                                               Eva R. Gardner
                                               Alaska Bar No. 1305017
                                               eva@anchorlaw.com

**CERTIFICATE OF SERVICE**

---

[136] *See discussion supra* at 26-28.

OPENING BRIEF OF PAUL SHEARER                           Page 40 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 40 of 41

I hereby certify that on October 25, 2019, I filed a true and correct copy of the foregoing document with the Clerk of Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case 3:18-cv-00035-HRH who are registered CM/ECF users will be served by the CM/ECF system.

ASHBURN & MASON, P.C.

s/Julia A. Kentch

OPENING BRIEF OF PAUL SHEARER                                                                 Page 41 of 41
*Shearer v. Bernhardt et al.*, No. 3:18-cv-00035-HRH.

Case 3:18-cv-00035-HRH   Document 47   Filed 10/25/19   Page 41 of 41