WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PAUL G. SHEARER,                          )
                                         )
                         Plaintiff,       )
                                         )
        vs.                               )
                                         )
DAVID BERNHARDT, UNITED STATES           )
DEPARTMENT OF THE INTERIOR,               )
BUREAU OF LAND MANAGEMENT,                )
and NATIONAL PARK SERVICE,                )          No. 3:18-cv-0035-HRH
                                         )
                         Defendants.      )
_____ )

O R D E R

Judicial Review; Motion for Writ of Mandamus;
Motion for Judicial Notice

In this APA case, plaintiff Paul G. Shearer has timely filed his opening brief[1] in which

he seeks judicial review of two 2012 United States Department of the Interior ("DOI")

decisions involving the Banjo and Pass mining claims.  Defendants David Bernhardt, the

DOI, the Bureau of Land Management ("BLM"), and the National Park Service ("NPS")

have timely responded.[2]  Also pending in this case are plaintiff's motions for judicial notice

and a writ of mandamus.[3]  These motions are opposed.[4]  Oral argument has not been

requested and is not deemed necessary.

---

[1]Docket No. 47.

[2]Docket No. 56.

[3]Docket Nos. 48 and 49.

[4]Docket Nos. 51 and 57.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice          - 1 -

## Statutory and Regulatory Background

"Under the General Mining Act of 1872, 30 U.S.C. §§ 21–54, citizens can enter and use public lands for mining exploration." R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1063 (9th Cir. 1997). "A mining claim on public lands of the United States is initiated by location." Multiple Use, Inc. v. Morton, 353 F. Supp. 184, 189 (D. Ariz. 1972). "The location of a mining claim gives the locator certain rights against rival mining claimants, but . . . [t]he locator obtains no rights against the United States until there has been a discovery of a valuable mineral deposit within the limits of the claim." Id. at 189-90. "If valuable mineral deposits are found, a mining claim may be filed for a lode or placer claim[.]" R.T. Vanderbilt Co., 113 F.3d at 1063. "Possessory interest in a claim can be held indefinitely upon discovery of valuable mineral deposits provided that annual assessment work is performed, all necessary filings and fee payments are made, and the valuable mineral deposit continues to exist." Id. "An individual who possesses a valid mining claim may go through an additional process to obtain a patent, thereby purchasing from the Federal Government the land and minerals and obtaining ultimate title to them." Swanson v. Babbitt, 3 F.3d 1348, 1350 (9th Cir. 1993) (citation omitted). "At any time prior to the issuance of a patent, the government may challenge the validity of the mining claim and, if successful, the claim will be cancelled with all rights forfeited." Id.

A mining patent application is initially submitted to the appropriate BLM state office. The applicant must show "that he has the possessory right to the claim, in virtue of a compliance by himself . . . with the mining rules, regulations, and customs of the mining district or State in which the claim lies, and with the mining laws of Congress[.]" 43 C.F.R. § 3862.1-1(a). This showing must include "the facts constituting such compliance, the origin of his possession, and the basis of his claim to a patent." Id. "The application should contain

a full description of the kind and character of the vein or lode and should state whether ore has been extracted therefrom; and if so, in what amount and of what value." Id. "It should also show the precise place within the limits of each of the locations embraced in the application where the vein or lode has been exposed or discovered and the width thereof." Id. "The showing in these regards should contain sufficient data to enable representatives of the Government to confirm the same by examination in the field and also enable the Bureau of Land Management to determine whether a valuable deposit of mineral actually exists within the limits of each of the locations embraced in the application." Id.

Once the paperwork requirements for a mining patent are complete and the applicant has paid the purchase price,[5] the State BLM director reviews the application and makes recommendations as to whether the "First Half of Mineral Entry Final Certificate" ("FHFC") should issue, which is "DOI's administrative recording of a [patent] applicant's compliance with the initial paperwork requirement of the Mining Law." Independence Min. Co. v. Babbitt, 105 F.3d 502, 506 (9th Cir. 1997). After further review of the patent application by the BLM and officials within the DOI, the patent application package is sent to the Secretary for final action on the FHFC. Id. at 506-97.

After an FHFC is issued, there must be "a determination that the claim is valid." Id. "Before a determination of validity can be made, a mineral examiner must do a field examination; collect and analyze samples; estimate the value of the mineral deposit and the cost of extracting, processing and marketing the minerals, including the costs of complying with any environmental and reclamation laws." Id. at 506-07. "Upon completion of the

---

[5]The purchase price consists of $5 per acre and $5 for each fractional part of an acre. 43 C.F.R. § 3862.4–6.

mineral report, all patent applications undergo legal and secretarial review, and if approved, the patent will issue." Id. at 507.

In 1972, pursuant to the Alaska Native Claims Settlement Act, the DOI withdrew the lands around the Banjo and Pass claims from mineral entry but preserved valid existing mining rights. 37 Fed. Reg. 5579, 5582 (Mar. 16, 1972). In 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA"). Section 314 of FLPMA required owners of unpatented lode mining claims to record their claims with the BLM by October 22, 1979. 43 U.S.C. § 1744(a). Section 314 also requires mine owners to thereafter file an annual affidavit of assessment of work done on the claim or a notice of intent to hold the claim. 43 U.S.C. § 1744(a)(1). Failure to file any of the required documents is deemed an abandonment of the mining claim. 43 U.S.C. § 1744(c).

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act ("ANILCA"). ANILCA expanded Denali National Park and Preserve, which resulted in the mining claims at issue in this action being surrounded by park land. However, preexisting valid mining rights were preserved.

Factual Background

The Banjo and Pass claims are located in the Kantishna Mining District within Denali National Park and Preserve in Alaska. The Banjo and Pass claims are rectangular, contiguous, along strike, and total 35.709 acres.[6] J.B. Quigley discovered the Banjo claim in 1928[7] and the Pass claim in 1929.[8] Quigley executed notices of locating the Banjo and

---

[6]Admin. Rec. at 168, 462.

[7]Admin. Rec. at 322.

[8]Admin. Rec. at 323.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                          - 4 -

Pass claims.[9]  The location notices were recorded on October 2, 1928, and July 3, 1929, respectively.[10]  In August 1937, Quigley and his wife, Fannie Quigley, optioned the Banjo and Pass claims (along with other mining claims) to E. Fransen and C.M. Hawkins.[11]  The Banjo and Pass claims were expressly identified in the Option Agreement.[12]  The Option Agreement gave Fransen and Hawkins the "option to purchase" the Quigleys' mining claims for $100,000, to be paid in yearly installments of $10,000.[13]  The Option Agreement provided that if all the installment payments were made, then the Quigleys would deliver "good and sufficient deed for all of the lode claims" described in the contract to Fransen and Hawkins.[14]  In October 1937, Fransen and Hawkins assigned their interest in the Option Agreement to Red Top Mining Company.[15]  Red Top mined the Banjo and Pass claims from 1938 until 1942, when the federal government closed gold mines as nonessential to the war effort.[16]  From 1942 through 1978, annual assessment affidavits were filed by Red Top as the owner of the claims.[17]

---

[9]Admin. Rec. at 322-323.

[10]Admin. Rec. at 322-323.

[11]Admin. Rec. at 324-330.

[12]Admin. Rec. at 325.

[13]Admin. Rec. at 324-325.

[14]Admin. Rec. at 325.

[15]Admin. Rec. at 5, 331.

[16]Admin. Rec. at 468.

[17]Admin. Rec. at 241-277.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                          - 5 -

On July 3, 1979, Red Top recorded the Banjo and Pass claims with the BLM.[18] Red Top stated that "[t]he title to all these claims passed from Joseph and Fannie Quigley to E. Fransen and C.M. Hawkins by an option-contract agreement dated August 20, 1937" and "[t]hen the title passed from E. Hansen and C.M. Hawkins to Red Top Mining Company."[19]

Red Top submitted annual assessment affidavits for 1979, 1980, 1981, 1982, and 1984.[20] In 1985, the BLM notified Red Top that the Banjo and Pass claims were deemed abandoned and void because no affidavit or notice of intention to hold was filed for 1983.[21] That decision was vacated after Red Top provided proof of assessment work completed in 1983.[22] Red Top thereafter submitted assessment affidavits for 1985, 1986, 1987, and 1988.[23] Beginning in 1989, Mike R. Mark Anthony ("Anthony") began submitting the assessment affidavits for the Banjo and Pass claims.[24]

On March 28, 1989, Anthony recorded an affidavit in which he averred that in July 1988, he gave notice of a claimant lien to the last known shareholders of Red Top and that he also published notice of the claimant lien.[25] Anthony averred that in response, a number of Red Top shareholders, who claimed a total ownership percentage of 4.45%, paid their

---

[18]Admin. Rec. at 2.

[19]Admin. Rec. at 3.

[20]Admin. Rec. at 56.

[21]Admin. Rec. at 58.

[22]Admin. Rec. at 67.

[23]Admin. Rec. at 69, 70, 94, 96.

[24]Admin. Rec. at 139, 144, 148.

[25]Admin. Rec. at 306.

Case 3:18-cv-00035-HRH   Document 63   Filed 06/19/20   Page 6 of 34

proportionate share of the assessment work on the claims.[26]  Anthony further averred that "[n]o other Co-Owners responded to the said Notice, therefore forfeiting whatever interest they may have claimed" in the Banjo and Pass claims.[27]

On April 17, 1989, Anthony submitted a letter to the BLM, in which he stated that he was "the Majority Owner/Manager" of the Banjo and Pass claims.[28]  Attached to the letter was the March 28, 1989, affidavit and other supporting documents.[29]  The BLM case file abstract indicates that there was a "name change/trans of int" on that day.[30]

In July 1989, Anthony applied for a patent for the Banjo and Pass claims.[31]  In the application, Anthony represented that he owned 94.98% of the property, which he had acquired through his interest in Red Top.[32]  Anthony stated that he held "a controlling interest" in Red Top.[33]

In 1990, Anthony began acquiring interests in the Banjo and Pass mining claims by means of quitclaim deeds of various dates between November 1990 and September 1992.[34]

---

[26]Admin. Rec. at 306.

[27]Admin. Rec. at 306.

[28]Admin. Rec. at 99.

[29]Admin. Rec. at 100-109.

[30]Admin. Rec. at 110.

[31]Admin. Rec. at 114.

[32]Admin. Rec. at 115.

[33]Admin. Rec. at 115.

[34]Admin. Rec. at 311, 312, 314, 315, 316, 321.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 7 -

In 1991, Anthony filed a quiet title and partition action in Fairbanks Superior Court (Case No. 2148). The defendants in this action were a number of individuals, some of whom were surviving directors of Red Top[35] or Red Top shareholders named in Anthony's patent application.[36] However, not all of the Red Top shareholders named in the patent application were defendants in Case No. 2148. In particular, none of the Red Top shareholders from whom Anthony had acquired quitclaim deeds were named defendants in Case No. 2148.

On March 3, 1993, the Fairbanks Superior Court granted Anthony's motion for partial summary judgment in the 1991 quiet title action (Case No. 2148) and ordered that "judgment be entered vesting in [him] the title to" the Banjo and Pass claims.[37] The summary judgment was filed with BLM on March 29, 1993.[38]

In March 1993, a BLM geologist advised that the Mineral Patent Report for the Banjo and Pass claims was completed and "that both claims do have a discovery."[39]

On March 31, 1993, Anthony submitted to the BLM an Abstract of Title for the Banjo and Pass claims, which covered the period from "October 2, 1928 to and including the 15th day of March 1993. . . ."[40]

---

[35]Admin. Rec. at 532.

[36]Admin. Rec. at 115.

[37]Admin. Rec. at 532-533.

[38]Admin. Rec. at 533.

[39]Admin. Rec. at 193.

[40]Admin. Rec. at 233-234.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice      - 8 -

On April 20, 1993, Anthony paid the $180.00 purchase price for the Banjo and Pass claims.[41]

In 1993, Anthony filed another quiet title action in Fairbanks Superior Court (Case No. 2045). This action involved the Doherty lode claim,[42] which was another claim that had been included in the 1937 Option Agreement.

On January 5, 1995, the Secretary of the Interior signed the FHFC for the Banjo and Pass claims.[43] The date of entry of the FHFC is listed as April 20, 1993.[44]

On March 10, 1995, "the mineral patent package of Michael R. Mark Anthony" was submitted "for Secretarial review and action."[45]

On June 22, 1995, Anthony's patent application was returned to the NPS because "it was determined the mineral report failed to address the proof of discovery and the economic analysis of the claims as of the date of original withdrawal of the lands by Public Land

---

[41]Admin. Rec. at 342-343.

[42]Anthony v. Jensen, Case No. 4FA-93-2045 Civil, Exhibit 14, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff moves the court to take judicial notice of this state court order. The court may take judicial notice of matters of public record, such as court orders. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The more important question is whether the court can consider this state court order in the administrative appeal given that it is not part of the administrative record. "[D]istrict courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision[.]" Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation omitted). The court finds that this state court document is necessary to determine whether the agency considered all relevant factors in this case. The court would also note that the March 3, 1993, order is mentioned in the administrative record at page 565.

[43]Admin. Rec. at 407.

[44]Admin. Rec. at 407.

[45]Admin. Rec. at 431.

Order 5179 on March 9, 1972."[46]  A supplemental mineral report was completed in August 1995, which "concluded that the subject claims are supported by mineral discovery at the time of withdrawal of lands from mineral entry and thereafter."[47]  The supplemental report recommended that "the Pass and Banjo claims are valid and qualify for issuance of mineral patent."[48]

On August 25, 1995, Anthony's mineral patent package was resubmitted "for Secretarial review and action."[49]

On May 22, 1996, Roger A. Haskins, Certified Review Mineral Examiner, advised BLM's assistant director of Resource Use and Protection, that

> [b]ased upon my review of the mineral reports and accompanying patent documents, I concur with the mineral examiner's findings that a discovery of a valuable mineral deposit has been made upon each of the two lode mining claims, are in conformance with the applicable statute and case law, and qualify for a mineral patent.[[50]]

"On May 29, 1996, the Acting Director for the BLM signed his concurrence with the issuance of the mineral patent" and the "patent package was then forwarded to the Department of the Interior (DOI) Office of the Solicitor for further review and action."[51]

---

[46]Admin. Rec. at 432.

[47]Admin. Rec. at 472-473.

[48]Admin. Rec. at 473.

[49]Admin. Rec. at 462.

[50]Admin. Rec. at 469.

[51]Admin. Rec. at 499.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                        - 10 -

On September 13, 1996, the Fairbanks Superior court issued a decision in the 1993 quiet title action involving the Doherty claim (Case No. 2045).[52] The court found that the 1937 Quitclaim-Option Agreement between the Quigleys and Fransen and Hawkins was a contract for sale and that the terms of that contract were fulfilled.[53] The court concluded that title to the Doherty claim was "vested in Red Top and then vested in Anthony by virtue of the quitclaim deed from Red Top" to Anthony.[54]

In April 1998, the BLM advised the NPS that Anthony's patent application had been "returned" to the BLM a second time "by the Washington Office of the Solicitor" because the "Assistant Solicitor identifie[d] certain legal insufficiencies and legal errors in the mineral validity report. . . ."[55]

In September 1998, the BLM notified Anthony that his patent application was "lacking a full description of the kind and character of the mineralization on the claims" and Anthony was given 120 days to provide more complete information.[56]

In May 1999, Bruce Giffen, an NPS geologist, advised Anthony that "the field portion of the mineral patent examination of your Pass and Banjo lode claims" was scheduled for August 1999.[57]

---

[52]Exhibit 14, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50.

[53]Id. at 10-14.

[54]Id. at 14. Red Top had quitclaimed the Doherty claim to Anthony in 1992. Id. at 8.

[55]Admin. Rec. at 501.

[56]Admin. Rec. at 502-503.

[57]Admin. Rec. at 505.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 11 -

In June 2000, plaintiff, Anthony, Red Top, and four of Red Top's surviving directors entered into a Settlement Agreement in a 1998 quiet title action (Case No. 1250)[58] that had been consolidated with the 1993 quiet title action (Case No. 2045).[59]  Per the terms of the Settlement Agreement, the Banjo and Pass claims were quitclaimed to Anthony.[60]

In October 2000, Giffen sent a memo to Bob Fisk in the BLM's Alaska office, in which he raised questions about Anthony's title to the Banjo and Pass claims.[61]  Giffen mentioned the 1993 Superior Court order in Case No. 2148 and the 2000 Settlement Agreement, and stated that "it appears to me that Mr. Mark Anthony's title to the Banjo and Pass lode claims, at the time the first half of the final certificate was issued, had not been resolved in the courts."[62]

In 2001, another mineral report was prepared for the Banjo and Pass claims.[63]

On April 19, 2002, the NPS submitted the "revised" mineral report to the State Director of the BLM for "technical review and approval."[64]  The revised "report conclude[d] that the Banjo and Pass lode claims are <u>invalid</u> due to the lack of a mineral discovery."[65]

---

[58]There is no information in the record about this 1998 quiet title action other than it was brought by at least one of the surviving directors of Red Top against Anthony.

[59]Admin. Rec. at 511-51t.

[60]Admin. Rec. at 512.

[61]Admin. Rec. at 509-510.

[62]Admin. Rec. at 509-510.

[63]Admin. Rec. at 547-549.

[64]Admin. Rec. at 552.

[65]Admin. Rec. at 552 (emphasis added).

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 12 -

On April 29, 2002, the BLM advised the NPS that the mineral report had "received technical approval by the Bureau of Land Management Certified Review Mineral Examiner. . . ."[66] The mineral report was returned to the NPS for "further action. . . ."[67]

"On July 21, 2003, BLM filed a complaint on behalf of NPS contesting the validity of the Banjo and Pass claims." United States v. Michael R. Mark Anthony, 180 IBLA 308, 318 (Jan. 12, 2011). "The complaint allege[d] that sufficient minerals had not been exposed within the boundaries of the claims to constitute a valid discovery on the date the land was withdrawn from mineral entry under PLO No. 5179." Id.

On January 20, 2005, Anthony assigned any and all rights he had in the Banjo and Pass claims to plaintiff.[68]

On February 23, 2005, plaintiff and Red Top executed a settlement agreement.[69] In this agreement, plaintiff and Red Top confirmed that the June 2000 settlement agreement "resolved all issues that were raised, or that could have been raised, regarding the Doherty Lode Claim, the Pass Lode Claim, the Banjo Lode Claim and the Banjo Mill[.]"[70] Plaintiff and Red Top also stipulated that the 1937 Option Agreement between the Quigleys and

---

[66]Admin. Rec. at 551 (emphasis added).

[67]Admin. Rec. at 551.

[68]Exhibit 20, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff moves for the court to take judicial notice of this document, which has been recorded and thus is a public document. The court will consider this document for the same reason as set out in note 42.

[69]Exhibit 22 at 1-3, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff moves for the court to take judicial notice of this document, which is the basis for the 2005 state court order on which the Secretary relied in issuing the first 2012 decision. The court will consider this document for the same reason as set out in note 42.

[70]Id. at 1.

Fransen/Hawkins "was an option interest and not the interest of a purchaser under a contract for purchase and sale[,]" that the 1937 Option Agreement did not include the Banjo and Pass claims, and "[t]hat the option granted by the 1937 Option Agreement expired no later than November 23, 1979, by operation of the 'wait and see[']' Rule against Perpetuities. . . ."[71]

On March 18, 2005, the Fairbanks Superior Court entered an order in the consolidated 1993 and 1998 quiet title actions (Case Nos. 2045 and 1250), pursuant in large part to the settlement agreement between plaintiff and Red Top set out above.[72] In the order, the court decreed that the 1937 Option Agreement between the Quigleys and Fransen/Hawkins had "expired no later than November 24, 1979, by operation of the 'wait and see' Rule Against Perpetuities. . . ."[73]

On May 25, 2006, the BLM sought to amend its complaint in the contest action that it had initiated in 2003 in order to challenge Anthony's possessory title to the Banjo and Pass claims.[74] The ALJ denied the BLM's motion as "untimely" and "without merit."[75]

On April 29, 2008, an administrative law judge rendered a decision on the complaint initiated by the BLM in 2003. United States v. Anthony, 180 IBLA at 310. The ALJ "concluded that [the Banjo and Pass] claims contained a discovery of a valuable deposit

---

[71]Id. at 2.

[72]Admin. Rec. at 604-605.

[73]Admin. Rec. at 605.

[74]Admin. Rec. at 609-610.

[75]Exhibit 9 at 2, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff moves the court to take judicial notice of this document. The court will consider this document for the same reason as set out in note 42.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice — 14 -

when the subject lands were withdrawn from mineral entry on March 9, 1972, under Public Land Order (PLO) No. 5179[.]" Id. The BLM appealed to the IBLA.

On August 1, 2008, the NPS filed a protest against the issuance of a patent to Anthony for the Banjo and Pass claims.[76] In this protest, the NPS argued that Anthony did not have full or partial title to the claims at the time he filed his patent application.[77] The BLM then asked the IBLA to remand the contest action so that the title issue could be adjudicated. United States v. Michael R. Mark Anthony, 177 IBLA 110, 111-12 (April 15, 2009). On April 15, 2009, the IBLA declined to remand because "the Secretary's issuance of the FHFC necessarily constituted the Secretary's acceptance of the applicant's chain of title." Id. at 116. The IBLA stated that only the Secretary could revisit the issue of Anthony's title to the claims. Id. at 117.

On January 12, 2011, the IBLA affirmed the ALJ's decision, holding that "the Banjo and Pass claims [were] supported by a discovery of a valuable mineral deposit at the time of withdrawal." United States v. Anthony, 2011 WL 1405215, at *36.

On February 9, 2012, the Secretary cancelled the FHFC that had been issued for the Banjo and Pass claims on January 5, 1995.[78] The 1995 FHFC was cancelled because Anthony had not "provide[d] sufficient evidence of title with patent application AA-71472 and because the mining claims in the patent application appear to have been abandoned many years before the patent application was submitted[.]"[79] The Secretary explained that the

---

[76]Admin. Rec. at 557-559.

[77]Admin. Rec. at 557-559.

[78]Admin. Rec. at 620-622.

[79]Admin. Rec. at 622.

Banjo and Pass claims had been recorded by Red Top on July 3, 1979, but that according to the March 18, 2005 order entered by the Fairbanks Superior Court, the 1937 Option Agreement had "expired unexercised no later than November 24, 1979[.]"[80]  The Secretary reasoned that "the Alaska Superior Court's determination that the 'option-contract agreement' expired unexercised" meant "that title to the" Banjo and Pass mining claims "never transferred to Red Top Mining Company" and that "[a]bsent title, Red Top Mining Company . . . did not have authority to record the mining claims with the BLM."[81]  The Secretary thus found that it "appears that the subject mining claims were abandoned by operation of law as of October 22, 1979, because the owner of the claims failed to timely record with the BLM as required by section 314 of FLPMA."[82]  The Secretary acknowledged that "it is possible that Red Top Mining Company may have had legal authority to act on behalf of the owners on the date that the recordation was submitted to the BLM" but that "under the Alaska Superior Court's order, any such authority would not have been in effect the following year when the affidavit of annual assessment work filing required under FLPMA was due."[83]  Because "[t]he BLM's records show that no one other than Red Top Mining Company made the annual assessment work filing for the two mining claims by the December 30, 1980 deadline[,]" the Secretary concluded that "to the extent that the two mining claims were not abandoned and void as of October 22, 1979, the subject mining claims were nevertheless abandoned by operation of law as of December 30, 1980, because

---

[80]Admin. Rec. at 620-621.

[81]Admin. Rec. at 621.

[82]Admin. Rec. at 621.

[83]Admin. Rec. at 621.

Case 3:18-cv-00035-HRH   Document 63   Filed 06/19/20   Page 16 of 34

the owner of the claims failed to timely file the affidavit of annual assessment work."[84]  The Secretary also found that the patent application "did not state how the patent applicant initially acquired his stock or other interest in Red Top Mining Company, which would mean that the patent application was incomplete. . . ."[85]

On April 5, 2012, the acting Assistant Secretary for Lands and Mineral Management issued a decision "declar[ing] the Banjo Lode Claim . . . and the Pass Lode Claim . . . abandoned and void as of October 22, 1979, for failure to comply with the initial recording requirements of section 314 of" FLPMA.[86]  The Assistant Secretary also rejected Anthony's patent application because he was "not the holder of these mining claims as of the date [he] applied for patent."[87]  The April 5, 2012, decision was "a final agency action. . . ."[88]

Plaintiff's Claims

Plaintiff commenced this action on February 7, 2018.  In his complaint, plaintiff asserted six claims.  Plaintiff's Count IV has been dismissed with prejudice.[89]  The five remaining claims are claims seeking declaratory judgment that the 2012 DOI decisions are invalid and that plaintiff holds title to the Banjo and Pass claims (Counts I and II), a claim seeking a declaratory judgment that DOI should issue the patent for the Banjo and Pass claims (Count III), and APA claims in which plaintiff seeks judicial review of the 2012 DOI

---

[84]Admin. Rec. at 621.

[85]Admin. Rec. at 622.

[86]Admin. Rec. at 627.

[87]Admin. Rec. at 628.

[88]Admin. Rec. at 629.

[89]Order re Motion to Dismiss at 21, Docket No. 24.  Count IV involved a Section 120, Pub. L. No. 105-83, claim for compensation for the Banjo and Pass claims.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                                          - 17 -

decisions (Counts V and VI). But, as the court has previously recognized, "[d]espite the labels that plaintiff has put on his claims . . . this case [is] an administrative agency appeal."[90] All of plaintiff's remaining claims raise the issue of whether the 2012 DOI decisions were arbitrary and capricious.

Plaintiff seeks to have the court vacate the 2012 DOI decisions, confirm his title to the Banjo and Pass claims, and enter a writ of mandamus ordering the DOI to issue the patent for the Banjo and Pass claims without further delay. In the alternative, plaintiff "requests that the [c]ourt confirm the Claims are valued as patentable as of 1996 and hold a hearing to determine just compensation for the Claims under the Fifth Amendment and/or remand to DOI for proceedings consistent with due process."[91]

### Standard of Review

"The APA requires courts to 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 'in excess of statutory jurisdiction,' or 'without observance of procedure required by law.'" Turtle Island Restoration Network v. U.S. Dep't of Commerce, 878 F.3d 725, 732 (9th Cir. 2017) (quoting 5 U.S.C. § 706(2)(A), (C)–(D)). "'The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.'" Id. (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). This standard of review is 'highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" Northwest Ecosystem Alliance v. U.S. Fish and

---

[90]Id. at 12.

[91]Opening Brief of Paul Shearer at 26, Docket No. 47.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                              - 18 -

Wildlife Service, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting Independent Acceptance Co. v. Calif., 204 F.3d 1247, 1251 (9th Cir. 2000)). "While courts review an agency's legal determinations de novo, a court nevertheless must afford substantial deference to an agency's interpretation of its own rules and the laws it is charged to implement." 3B Farms/Fly Creek v. Risk Management Agency, Case No. CV 12–80–BLG–DWM, 2014 WL 12544883, at *2 (D. Mont. Sept. 25, 2014). The agency is required "to 'examine the relevant data and articulate a satisfactory explanation for its action[.]'" Turtle Island Restoration Network, 878 F.3d at 732 (quoting Motor Vehicle Mfs. Ass'n, 463 U.S. at 43). The court

> will strike down agency action as "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or if the agency's decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Id. at 732-733 (quoting Motor Vehicle Mfs. Ass'n, 463 U.S. at 43).

Discussion

Plaintiff first argues that the 2012 DOI decisions should be vacated because they were issued in defiance of longstanding BLM practice and without any legal authority. The BLM Handbook for Lode Mining Patent Applications provides:

> The acceptance of the purchase price vests equitable title in the land to the applicant on the day the BLM accepts it. This is very important. The date BLM accepts the purchase price is the date of entry shown on the first half of the mineral entry final certificate. After this date, the final certificate cannot be administratively cancelled. Cancellation can only be effected by withdrawal of the application by the applicant, or by a mineral contest action in which an administrative law judge rules against the application.[92]

---

[92]BLM Manual 3862 at § .62.A (internal citation omitted), attached to Paul Shearer's
(continued...)

On April 20, 1993, Anthony paid to BLM the purchase price for the Banjo and Pass claims[93] and the FHFC was entered as of April 20, 1993.[94] Plaintiff argues that it is thus clear that the DOI could not administratively cancel the FHFC, which is what it did in 2012. Rather, plaintiff argues that the FHFC could only be cancelled by withdrawal of the application or in the context of a mineral contest action. Plaintiff points out that the BLM attempted to raise the title question in the contest action that it initiated in 2003, but the ALJ denied the BLM's motion to amend in 2006.[95] The BLM did not appeal this decision and thus plaintiff argues that the final IBLA decision upholding the validity of the Banjo and Pass claims is binding on defendants.

Plaintiff also argues that defendants violated the BLM policy that defects in title are curable. BLM Manual 3860 provides that

> [m]ineral patent applicants submitting applications which do not contain the essential title documents, proofs, and affidavits are to be issued a decision within 30 days after the adjudicator receives the application. The decision should ask the applicant to cure the defects in 30 to 60 days.[[96]]

---

[92](...continued)
Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff has moved the court to take judicial notice of this document. The court may take judicial notice of this publically available document.

[93]Admin. Rec. at 342.

[94]Admin. Rec. at 350, 407.

[95]Exhibit 9 at 2, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50.

[96]BLM Manual 3860 § .06D, attached to Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. Plaintiff has moved the court to take judicial notice of this document. The court may take judicial notice of this publically available document.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                        - 20 -

Plaintiff argues that neither he nor Anthony ever received a request to submit additional proof of title for the Banjo and Pass claims, in clear violation of this policy.

The court concludes that BLM Manuals, on which plaintiff relies, are not legally binding, which means that an FHFC can be administratively cancelled. The Secretary has the authority to cancel the FHFC at any time prior to the issuance of a patent. "Until the issuance of the patent, the Secretary of the Interior has authority to 'review, reverse, amend, annul or affirm all proceedings in the Department [of the Interior] having for their ultimate object to secure the alienation of any portion of the public lands. . . .'" Marathon Oil Co. v. Lujan, 937 F.2d 498, 501 n.7 (10th Cir. 1991) (quoting Knight v. United States Land Ass'n, 142 U.S. 161, 178 (1891)). Anthony's payment of the purchase price for the Banjo and Pass claims did not entitle plaintiff to the issuance of a patent if the Secretary lawfully determined that all conditions for the issuance of a patent were not met. McMaster v. United States, 731 F.3d 881, 890 (9th Cir. 2013). The issue here is whether the 2012 DOI decisions cancelling the FHFC and denying Anthony's patent application were arbitrary and capricious; or, to put it another way, the court must decide whether there was a reasonable basis for those decisions or whether those decisions ran counter to the evidence in the record.

There were three bases for the 2012 DOI decisions: (1) that Red Top was not the owner of the Banjo and Pass claims when it recorded the claims with the BLM in 1979, (2) that even if Red Top had owned the Banjo and Pass claims in 1979, those claims were abandoned by operation of law by December 30, 1980, and (3) that Anthony had not provided sufficient information as to his ownership of the Banjo and Pass claims at the time the patent application was filed. Plaintiff argues that none of these provide a reasonable basis for the 2012 DOI decisions.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                      - 21 -

First, plaintiff argues that it was legal error for the DOI to conclude that by operation of the 2005 Superior Court order, Red Top did not own the Banjo and Pass claims when it recorded them with the BLM in 1979. As set out above, in the first 2012 order, the Secretary explained that the Banjo and Pass claims had been recorded by Red Top on July 3, 1979, but that according to the March 18, 2005 order entered by the Fairbanks Superior Court, the 1937 Option Agreement had "expired unexercised no later than November 24, 1979," which would mean that title never passed to Red Top and that Red Top lacked authority to record the claims.[97] Plaintiff argues, however, that the Secretary ignored the Settlement Agreement that was the basis for the 2005 Superior Court order. In the settlement agreement, plaintiff and Red Top confirmed that the earlier June 2000 settlement agreement "resolved all issues that were raised, or that could have been raised, regarding the Doherty Lode Claim, the Pass Lode Claim, the Banjo Lode Claim and the Banjo Mill[.]"[98] They also stipulated that the 1937 Option Agreement between the Quigleys and Fransen/Hawkins "was an option interest and not the interest of a purchaser under a contract for purchase and sale[,]" <u>that the 1937 Option Agreement did not include the Banjo and Pass claims</u>, and "[t]hat the option granted by the 1937 Option Agreement expired no later than November 23, 1979, by operation of the 'wait and see['] Rule against Perpetuities. . . ."[99] Thus, plaintiff argues that the 2005 Superior Court order had no bearing as to the Banjo and Pass claims as those claims had been expressly excluded from the scope of the 1937 Option Agreement as a result of the 2005

---

[97]Admin. Rec. at 620-621.

[98]Exhibit 22 at 1, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50. <u>See</u> <u>also</u> 2000 Settlement Agreement at 1, ¶ 3. Admin. Rec. at 511.

[99]Exhibit 22 at 2, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50 (emphasis added).

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 22 -

settlement agreement. Plaintiff argues that the 2005 Superior Court order in no way altered or nullified the 1996 Superior Court order in the quiet title case involving the Doherty claim. Plaintiff argues that the 1996 Superior Court order included the Banjo and Pass claims in its scope and established that Red Top was the proper owner of the claims no later than 1976. Although the 1996 Superior court order does not mention the Banjo and Pass claims, plaintiff seems to be suggesting that the claims were included in the scope of that order because the court considered the 1937 Option Agreement as a whole. And, in the 1996 order, the court found that the 1937 Quitclaim-Option Agreement between the Quigleys and Fransen and Hawkins was a contract for sale and that the terms of that contract were fulfilled.[100] If the Option Agreement was fulfilled as between the Quigleys and Fransen and Hawkins, then ownership of the claims that were included in the Option Agreement (such as the Banjo and Pass claims) would have passed to Red Top. Because DOI's "longstanding practice is to give effect to the determination of a court of competent jurisdiction with respect to the right of possession of a mining claim[,]"[101] plaintiff argues that defendants should have given effect to the 1996 Superior Court order. In sum, plaintiff argues that DOI committed a legal error by relying on the 2005 Superior Court order to determine that Red Top was not the owner of the Banjo and Pass claims in 1979 when it recorded the claims with the BLM.

The Secretary appropriately looked to the 2005 Fairbanks Superior Court order granting summary judgment with respect to expiration of the 1937 Option Agreement.[102] Indeed, as the Secretary observed, it is DOI's "longstanding practice to give effect to the

---

[100]Exhibit 14 at 10-14, Paul Shearer's Notice of Filing Supplemental Materials Cited in Opening Brief, Docket No. 50.

[101]Admin. Rec. at 621.

[102]Admin. Rec. at 604-5.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 23 -

determination of a court of competent jurisdiction with respect to the right of possession of a mining claim."[103]  Here, the 2005 decision is plainly based upon a 2005 settlement agreement between plaintiff and Red Top.  But the Secretary did not say whether he considered the settlement agreement, which, plaintiff argues, was intended to exclude the Banjo and Pass claims from the effect of the judgment that the 1937 Option Agreement had expired.

If, as plaintiff contends, it was the intent of plaintiff and Red Top to exclude the Banjo and Pass claims from the effect of the 2005 judgment, their effort was at best inept.  Paper title to the Banjo and Pass mining claims is unclear given the multiple quiet title actions concerning those claims and the underlying Option Agreement and subsequent assignment. Indeed, another Fairbanks Superior Court, on September 13, 1996, upheld the validity of the Option Agreement, which it referred to as a "quitclaim option" in favor of Red Top and Anthony.  Although coming almost ten years later, the 2005 Fairbanks Superior Court decision held that the Option Agreement had expired unfulfilled by November 24, 1979.

Given the conflicting court decisions and the obscurity of the 2005 settlement agreement, the court is not convinced that the Secretary erred in looking to the most recent, 2005 Fairbanks Superior Court holding regarding the expiration of the option to acquire the Banjo and Pass claims.  But that does not mean that Red Top was not an owner of these unpatented mining claims for purposes of registering those claims as required by FLPMA in 1979.

Section 314 of FLPMA requires that

> [t]he owner of an unpatented lode or placer mining claim
> located prior to October 21, 1976, shall, within the three-year

---

[103]Admin Rec. at 621 (citing Perego v. Dodge, 163 U.S. 160, 168 (1896)).

period following October 21, 1976 and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection. . . . .

(1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim, . . . an affidavit of assessment work performed thereon, [or] a detailed report provided by section 28-1 of title 30, relating thereto.

(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.

43 U.S.C. § 1744.

The Banjo and Pass claims are lode claims which were located prior to October 21, 1976. Within the three-year period following the latter date, Leo Mark Anthony, on behalf of Red Top, recorded and filed with the BLM on July 3, 1979, a notice of intention to hold the subject mining claims.[104] That filing was supported by the location notices for the Banjo and Pass claims, the affidavit of annual labor for the Banjo and Pass claims, the 1937 Option Agreement, and the Fransen/Hawkins/Red Top assignment.[105] The question is did this July 3, 1979 notice by Red Top comply with the requirements of Section 1744?

FLPMA was enacted to address a land management problem that arose from the fact that under the general mining laws of the United States, prospectors could locate and thereby obtain exclusive possession of public land for purposes of mining. Patenting was not required, and "unpatented mining claim[s] remain[ed] a fully recognized possessory interest. United States v. Locke, 471 U.S. 84, 86 (1985). As the court in Locke observed, "[m]any

---

[104]Admin. Rec. at 2-3.

[105]Admin. Red. at 3.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                              - 25 -

of these claims had been dormant for decades, and many were invalid for other reasons, but in the absence of a federal recording system, no simple way existed for determining which public lands were subject to mining locations, and whether those locations were valid or invalid." Id. at 87. "Section 314 of the Act establishes a federal recording system that is designed both to rid federal lands of stale mining claims and to provide federal land managers with up-to-date information that allows them to make informed land management decisions." Id.

In this case, the obvious statutory purpose of FLPMA has been achieved. As of July 3, 1979, Red Top Mining had an unchallenged paper title to the Banjo and Pass claims by virtue of the Quigley location, Quigleys' assignment of the claims to Fransen and Hawkins by means of the 1937 Option Agreement, and Fransen and Hawkins' assignment of the option to Red Top. The Banjo and Pass claims were not invalid for lack of a mineral discovery. The NPS endeavored multiple times to challenge the validity of these claims for lack of a mineral discovery, but each time the BLM examiners determined that Banjo and Pass were valid discoveries. The Banjo and Pass claims were not dormant. They were actively mined until 1942 when gold mining was suspended by order of the United States as a part of the World War II effort. The 1942 through 1980 (and beyond) annual proofs of labor were filed by Red Top. Those affidavits demonstrated that annual assessment work was actually performed on the claims, which in turn means that Red Top remained in active possession of the claims.

As argued by plaintiff, in 1979, BLM regulations defined "owner" for purposes of FLPMA as

> any person who holds a recorded possessory interest in all or any part of an unpatented lode or placer mining claim, mill site, or tunnel site, whether such interest was obtained by location,

> purchase, gift, inheritance, or other means recognized under law
> for the transfer of the right of possession and enjoyment
> recognized in the holder of the claim or claims under the
> General [M]ining Law of 1872[.]

43 C.F.R. § 3833.0-5(e) (1977). Although the validity of the Option Agreement has been called into question, the fact remains that Red Top held a recorded possessory interest in the Banjo and Pass claims by virtue of documentation reflecting the transfer of the right of possession to those claims from the Quigleys to Fransen and Hawkins to Red Top and the recorded annual assessment affidavits.

The court concludes that the Secretary's finding that Red Top was not the owner of the Banjo and Pass claims for purposes of FLPMA when it recorded the claims with the BLM in 1979 was unreasonable. That finding was contradicted by the administrative record and was therefore arbitrary and capricious.

Because the Secretary's finding as to Red Top's ownership of the Banjo and Pass claims for purposes of FLPMA was not reasonable, it follows that the second basis for the 2012 DOI decisions was also unreasonable. The Secretary found that "to the extent that the two mining claims were not abandoned and void as of October 22, 1979, the subject mining claims were nevertheless abandoned by operation of law as of December 30, 1980, because the owner of the claims failed to timely file the affidavit of annual assessment work."[106] But if the Secretary's finding that title to the claims never transferred to Red Top was flawed, which it was, then the finding that the claims were abandoned by operation of law by December 30, 1980, is also flawed.

---

[106]Admin. Rec. at 621.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                    - 27 -

The court turns now to the Secretary's finding that Anthony had not shown that he was the owner of the Banjo and Pass claims at the time he filed the patent application. That application was filed with the BLM on July 14, 1989.

BLM regulations require that "[e]ach patent application . . . be supported by either a certificate of title or an abstract of title certified to by the legal custodian of the records of locations and transfers of mining claims or by an abstracter of titles." 43 C.F.R. § 3862.1–3(a). The regulations further provide that each patent application must contain a statement of the facts "constituting . . . the origin of [the applicant's] possession" of the claim. 43 C.F.R. § 3862.1–1(a).

The patent application filed by Anthony included information concerning Anthony's ownership of the Banjo and Pass claims. The application states that

> for the last 15 years, my family and I have been doing the assessment work on the claims. I began acquiring Red Top Mining Stock in 1983 and I presently hold a controlling interest in Red Top Mining Company. Title to the property was recently cleared by a [quiet] title action.[]  I am the majority owner/manager of the property and I own 94.98 percent of the property.[107]

The "quiet title action" to which Anthony refers in his patent application was before the Secretary.[108] Were the foregoing all that was before the Secretary, one could understand his having doubt as to the propriety of Anthony's patent application regarding ownership of the claims. However, there is a lot more in the record which the Secretary could have considered if he deemed Anthony's ownership statement to be insufficient.

---

[107]Admin. Rec. at 115.

[108]Admin. Rec. at 306.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice

- 28 -

As required by BLM regulations, Anthony filed an abstract of title in support of his patent application on March 31, 1993.[109] The abstract of title was found sufficient for purposes of the issuance of the FHFC. The abstract of title reflects Anthony having obtained quitclaim deeds to the Banjo and Pass claims between 1990 and 1992. Most important, the record contains the result of Anthony's 1991 quiet title action which resulted in the March 3, 1993 Fairbanks Superior Court judgment in favor of Anthony, confirming his title to the Banjo and Pass claims.[110] The defendants in that action were various named individuals – apparently Red Top shareholders – as well as "all other persons unknown to Plaintiff who may claim some right, title, and interest in the [Banjo and Pass claims]."[111]

As a result of the 1991 quiet title action, Anthony became an owner of the Banjo and Pass claims. To the extent that Anthony's statement of ownership in the patent application itself was deficient, that deficiency was plainly cured through the 1991 quiet title action. In the quiet title action, Anthony did exactly what 30 U.S.C. § 30 requires, which is to litigate the issue in the courts and, upon a resolution, file a certified copy of the judgment. The abstract of title which Anthony filed with the BLM includes the abstractor's reporting of the superior court order, including its recordation on March 9, 1993.[112] A certified copy of that order was filed with the BLM on March 29, 1993.[113] Yet, the Secretary failed to give effect to this state court decision regarding Anthony's title to the Banjo and Pass claims, instead

---

[109]Admin. Rec. at 233.

[110]Admin. Rec. at 532-533.

[111]Admin. Rec. at 533.

[112]Admin. Rec. at 317.

[113]Admin. Rec. at 532.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                    - 29 -

finding that Anthony had not provided sufficient evidence of title to the Banjo and Pass claims.[114]

Plainly, Anthony was the owner of the Banjo and Pass claims as to which he sought a patent. The Secretary's contrary finding was unreasonable, arbitrary, and capricious.

In sum, none of the bases for the 2012 DOI decisions were reasonable, thereby making the 2012 DOI decisions cancelling the FHFC and denying Anthony's patent application were unreasonable, arbitrary, and capricious.[115] Thus, the 2012 DOI decisions must be set aside. The court turns now to the question of what relief plaintiff should receive. "[T]he ordinary remedy when a decision is set aside" because it was arbitrary and capricious "is remand to the agency for further proceedings." Bonnichsen v. United States, 217 F. Supp. 2d 1116, 1164 (D. Or. 2002). Here, however, plaintiff argues that he is entitled to a writ of mandamus ordering DOI to issue the patent for the Banjo and Pass claims without delay.[116]

"In the context of [mining] patent claims, the Ninth Circuit has determined that, because the relief sought under a claim seeking mandamus and one seeking relief under the APA 'is essentially the same,' a plaintiff's entitlement to relief should be analyzed under the APA." Sims v. Ellis, 972 F. Supp. 2d 1196, 1204 (D. Idaho 2013) (quoting Independence

---

[114]Admin. Rec. at 622.

[115]Plaintiff advances two additional arguments as to why the 2012 DOI decisions were arbitrary and capricious. Plaintiff contends that the DOI failed to consider his legitimate reliance on the FHFC. Plaintiff also argues that his due process rights were violated because he was not provided with any notice or given any opportunity to be heard before the DOI issued the 2012 decisions. The court is troubled by the fact that the DOI seems to have acted unilaterally in response to an NPS protest. However, in light of the court's foregoing decisions, it need not reach these arguments.

[116]A copy of the unsigned patent that was prepared in the 1990s can be found at page 396 of the Administrative Record.

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice

Min. Co., 105 F.3d at 507). "Under the APA, the reviewing court 'shall' 'compel agency

action unlawfully withheld or unreasonably delayed.'" Id. (quoting 5 U.S.C. § 706(1)). The

court "look[s] to the so-called TRAC factors in assessing whether relief under" Section

706(1) of "the APA is appropriate." Independence Min. Co., 105 F.3d at 507. These factors

are:

> (1) the time agencies take to make decisions must be governed
> by a "rule of reason"[;] (2) where Congress has provided a
> timetable or other indication of the speed with which it expects
> the agency to proceed in the enabling statute, that statutory
> scheme may supply content for this rule of reason[;] (3) delays
> that might be reasonable in the sphere of economic regulation
> are less tolerable when human health and welfare are at stake[;]
> (4) the court should consider the effect of expediting delayed
> action on agency activities of a higher or competing priority[;]
> (5) the court should also take into account the nature and extent
> of the interests prejudiced by the delay[;] and (6) the court need
> not find any impropriety lurking behind agency lassitude in
> order to hold that agency action is unreasonably delayed.

Id. at n.7 (quoting TRAC, 750 F.2d at 80). Although the parties have not made any argument

as to the TRAC factors, the court concludes that plaintiff's entitlement to relief should be

analyzed pursuant to these factors.

Factors 1 and 2: Rule of Reason and Congressional Timetable. "Under the first

TRAC factor, the timeliness of an agency's actions is governed by a 'rule of reason.'" Id.

at 507. "[T]he General Mining Law provided no express timetable or deadline for the

issuance of the patents. At most, the statute implies that the issuance must be completed

within a reasonable time, or . . . 'expeditiously' under the circumstances." Id. Defendants

have not acted expeditiously in this case. As the judge in plaintiff's Section 120 compensa-

tion case observed, more than four years ago, in a March 2012 order:

> [T]he Secretary's decision to cancel the certificate for the Banjo
> and Pass claims comes fully seventeen years after the FHFC was
> originally granted. It comes over eight years since the Govern-

> ment filed an administrative challenge to the claims, almost three years since the IBLA relied on the original FHFC to uphold Shearer's chain of title, and over a year since the IBLA issued its final decision that the mining claims themselves were valid.[117]

This court would add that the DOI decision to deny Anthony's patent application came twenty-three years after that application was filed and nineteen years after Anthony filed with the BLM the 1993 state court judgment vesting title to the Banjo and Pass claims in him. Factors 1 and 2 weigh strongly in favor of compelling the Secretary to issue the patent for the Banjo and Pass claims.

Factors 3 and 5: Serious Economic Harm and the Public Welfare. These factors require the court to consider that "'delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake'" and to "'take into account the nature and extent of the interests prejudiced by delay[.]'" Id. at 509 (quoting TRAC, 750 F.2d at 80). "While the harm involved here is 'primarily economic harm, rather than harm affecting the public health and welfare,' [plaintiff] has a possessory interest in the property, and he 'has a right to fair administration by the BLM and the Department of his rights under the mining law.'" Sims, 972 F. Supp. 2d at 1207 (quoting Byrd v. Jossie, Case No. CV 08–3054–CL, 2009 WL 348733, at *10 (D. Or. Feb. 11, 2009)). "While these factors do not strongly support a finding of unreasonable delay, they do not detract from such a finding." Byrd, 2009 WL 348733, at *10.

Factors 4 and 6: Intentional Delay and Bad Faith. "The fourth TRAC factor provides that the court may consider the agency's competing priorities. The sixth TRAC factor states that 'the court need not find any impropriety lurking behind agency lassitude in order to hold

---

[117]Order re Pending Motions at 2-3, Docket No. 191 in Case No. 3:03-cv-0263-TMB.

that agency action is unreasonably delayed.'" Independence Min. Co., 105 F.3d at 510 (quoting TRAC, 750 F.2d at 80). As noted above, the court is troubled by what appears to be DOI's unilateral action in this case, which at least suggests that the agency may have improperly singled out Anthony's patent application. These two factors weigh slightly in favor of compelling the Secretary to issue a patent for the Banjo and Pass claims.

"In the final analysis," the court "weigh[s] all the relevant factors and determine whether they point in favor of court intervention." Id. at 512. Here, having weighed all the relevant factors, the court finds that the delay in this case has been unreasonable. Thus, plaintiff is entitled to relief pursuant to Section 706(1) of the APA.

Conclusion

Plaintiff's motion for judicial notice is granted in part and denied in part. The court has noted which documents it has taken judicial notice of and the motion is granted as to those documents. The motion is otherwise denied.

Plaintiff's motion for a writ of mandamus is denied because plaintiff is entitled to relief pursuant to Section 706(1) of the APA.

The DOI's 2012 decisions cancelling the FHFC as to the Banjo and Pass claims and rejecting Anthony's patent application are arbitrary and capricious and are set aside.

The clerk of court shall enter judgment

1)      declaring that the 2012 decision cancelling the FHFC as to the Banjo and Pass claims is invalid and set aside;

2)      declaring that the 2012 decision rejecting Anthony's patent application for the Banjo and Pass claims is invalid and set aside;

3)       ordering the Secretary of the Interior to issue a patent for the Banjo and Pass claims under application AA-71472, effective as of May 29, 1996; and

Order – Judicial Review; Motion for Writ
of Mandamus; Motion for Judicial Notice                                             - 33 -

4)      declaring that the patent to be issued under application AA-71472 to applicant

Michael R. Mark Anthony inure to the benefit of and be held in trust for the

current owner of the Banjo and Pass claims, plaintiff Paul G. Shearer.


DATED at Anchorage, Alaska, this 19th day of June, 2020.

/s/ H. Russel Holland          
United States District Judge